UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD       )
          )
         Plaintiff,    )    CIVIL ACTION NO. 1:05CV02082
          )    (ESH)
     v.       )
          )
SECRETARY OF THE NAVY     )
          )
        Defendant.   )
          )

## DEFENDANT'S MOTION TO DISMISS,
## OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim upon

which relief can be granted. Alternatively, Defendant moves for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any

material fact and Defendant is entitled to judgment as a matter of law.

In support of this motion, Defendant respectfully submits the attached memorandum of

points and authorities, the Administrative Record filed contemporaneously with this motion, the

attached exhibits, a statement of material facts not in genuine dispute, and a proposed order.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

1

_____

R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney

_____

KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Major Louis Birdsong
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

2

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD         )
                                    )
                  Plaintiff,     )         CIVIL ACTION
                                    )         CASE NO. 1:05CV02082 (ESH)
         v.                )
                                    )
SECRETARY OF THE NAVY      )
                                    )
                 Defendant.    )
                                    )

<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>

<u>INTRODUCTION</u>

Plaintiff, Gunnery Sergeant (Retired) Maurice B. Pettiford, brings this suit seeking to set aside the decision of the Board of Corrections for Naval Records (BCNR). In its decision the BCNR found the evidence insufficient to establish material error or injustice in the Enlisted Remedial Selection Board's (ERSB) decision not to select plaintiff for remedial promotion to the next higher pay-grade (Master Sergeant, E-8).

The Complaint requests this Court review a decision by the Secretary of the Navy under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. It alleges that the BCNR's decision to affirm the ERSB's decision not to select plaintiff for remedial promotion was arbitrary and capricious, unsupported by substantial evidence, and contrary to law. It seeks to have the decisions of both the BCNR and the ERSB set aside with instructions to have the ERSB and BCNR review plaintiff's record again with a view towards remedial selection.

1

## SUMMARY OF ARGUMENT

Plaintiff fails to state a claim for which relief can be granted under the APA and his complaint must be dismissed because it improperly attempts to impose duties and obligations upon the BCNR that are not required by law or regulation, and it seeks to have this court invade the confidentiality of the selection board proceedings. Plaintiff alleges that the BCNR did not explain how it dealt with submissions made after the release of the advisory opinions relied on by the board. However, these new submissions did not contain any new allegations relevant to plaintiff's case before the BCNR and the BCNR is not required to explain in painstaking detail how it dealt with each piece of paper submitted by plaintiff.

Plaintiff claims that the BCNR did not compare his record to those he submitted to the board. The BCNR has no obligation to compare plaintiff's personnel records with sanitized personnel records submitted by plaintiff. Navy and Marine Corps regulations establish procedures for conducting remedial promotion boards and the BCNR is not required to alter those procedures based on records obtained by plaintiff through the Freedom of Information Act. The BCNR's decision must be upheld and the complaint dismissed because these actions are not required by law or service regulation.

Plaintiff's third claim is that the Administrative Record (AR) does not show that the ERSB that denied plaintiff a remedial promotion compared plaintiff's personnel record with the records of those against whom he would have competed. The claim fails because plaintiff does not and cannot show a requirement for such a comparison for all three boards. Marine Corps instructions did not require a records comparison until 2000, prior to that a "comparison index" was used. Additionally, summary judgment is appropriate for defendant on this count because the

2

record clearly indicates that the required comparisons were done. Plaintiff's argument that responses to his FOIA requests do not satisfy his desire for clarity as to who he was compared against are irrelevant. The administrative record amply demonstrates that plaintiff's record was in fact compared at the ERSB with a representative sample of those against whom he competed for promotion for the calendar year (CY) 2000 and 2001 regular promotion boards, and against a performance index for the CY 1999.

Plaintiff's final claim is that the Marine Corps did not make the changes necessary to reflect the fact that plaintiff's records changed between the various periods. Plaintiff fails to state a claim because even if this allegation were true, plaintiff would not be able to demonstrate any prejudice from this omission. Additionally the AR confirms that the ERSB, in accordance with the applicable service directives and regulations, reconstructed plaintiff's record and the comparison records to accurately reflect their contents as they existed for each of the three relevant time periods. And finally, the presumption of regularity which attaches to the government's decision and upon which the BCNR is entitled to rely, in the absence of substantial evidence to the contrary, allows no other conclusion than the BCNR made a decision that was not arbitrary and capricious, was supported by substantial evidence, and was not contrary to law.

## STATEMENT OF FACTS

When Plaintiff was a Staff Sergeant (E-6) he was not selected for promotion to the next higher rank, Gunnery Sergeant (E-7), for the calendar year (CY) 1993, CY 1994, and CY 1995 selection boards. Subsequently, he successfully petitioned the BCNR to remove references to a disciplinary infraction from June, 1992 that was in his personnel record. He was considered for

remedial promotion, purportedly without the disciplinary infraction, and was again not selected. In 1996, the Marine Corps selected him for promotion to Gunnery Sergeant by a regular selection board.  In 1997, the BCNR denied his request to backdate his promotion.  He was considered, but not selected, for Master Sergeant (E-8) in 2000 and 2001.  Plaintiff petitioned BCNR again and was granted relief based on the fact that the disciplinary infraction that was supposed to have been removed from his record was still reflected in the electronic version of his personnel record. The BCNR directed that the reference to his disciplinary infraction be removed from the electronic version of his record, and invited Pettiford to petition for an ERSB.  In September, 2001 the ERSB backdated his promotion to Gunnery Sergeant to November 1, 1994.  Upon his petition to BCNR, they granted him back pay.  Finally, with his backdated date of rank,  he was considered for remedial promotion to Master Sergeant by the ERSB for CY1999, CY2000, and CY2001.  He was not selected for promotion by any of the three boards.

Marine Corps Order (MCO) P1610.7D dated March 3, 1995 published the policies, procedures and standards of the Marine Corps Performance Evaluation System.  It was replaced by MCO P1610.7E dated December 3, 1998, effective January 1, 1999.  MCO P1610.7E which completely changed the way performance evaluations (fitness reports) are written and stored in the Marine Corps.  This marked the change from "microfiche" to digital storage.  The new order also directed significant policy and administrative changes.  The new fitness reports allow for a more complete description of a Marine's performance.

MCO 5420.16C of July 21, 2000 sets forth the procedures for the ERSB.  This order governed the procedures for the 2000 and 2001 ERSB's.  It replaced MCO 5420.16B dated January 31, 1995, which governed the 1999 ERSB.  The ERSB is an advisory board that provides

4

advice to the Commandant of the Marine Corps on Staff Noncommissioned Officer remedial

promotion cases. Both versions of the order mandate that the ERSB be guided in their decision

by the precept[1], procedural rules, policies and regulations in effect when the respective regularly

scheduled promotion selection board was in session. Those orders were made readily available

to the ERSB and are attached as Defendant's Exhibit 1 and 2 (hereinafter DEX #). The primary

difference between the two versions is that the current version prescribes that: "The primary

consideration of the ERSB will be a comparison of the record of the Marine granted remedial

consideration to the records of the Marines selected by the regularly scheduled board before

which the Marine has been granted remedial consideration." The earlier version contains no such

guidance, relying instead on the experience of the Marines on the board to evaluate the

candidates to determine if the candidates merit promotion. Both versions state that Marines must

receive a majority vote of the members of the ERSB to be selected. The report of the ERSB lists

both those Marines they recommend for selection and those that are not recommended. There is

no explanation included of why a Marine was selected or not selected.

The Precept (that has previously been provided to Plaintiff and is attached at AR 329-31)

dated November 15, 2001, that convened the ERSB in question reflected the difference. The

pertinent section sets forth:

> The remedial selection board shall consider the official military
> personnel records of the Marines as their records would have
> appeared before the regularly scheduled selection board. That
> record can be compared with the records of those Marines of the
> same competitive category who were recommended for promotion,
> using the performance index. For CY 2000 and CY 2001 selection

---

[1] A Precept is the document that assigns members to the board and instructs them on selection criteria.

5

boards, the record will be compared to the record of the selected
Marine who received the lowest number of votes among those who
were selected in the same competitive category, which will be
furnished along with the record of the Marine who is considered by
the remedial board.  Based upon the record and other information
submitted, the board shall recommend for promotion Marines who
are fully qualified for promotion and capable of assuming the
duties of the next higher grade.

AR at 330.

The Marine Corps involuntarily retired Plaintiff when he reached service limitations for

his rank in June, 2002.  He now challenges the BCNR's findings that there was neither injustice

nor error in the ERSB's proceedings.

The Cause of Action set forth in the Complaint alleges:

The decision of the BCNR is arbitrary and capricious, unsupported by substantial
evidence, and contrary to law because—

(a) it fails to explain how it was dealing with submissions made by GySgt
Pettiford after the Marine Corps' final advisory opinion;

(b) it fails to compare GySgt Pettiford's record with other Marines' service
records that he submitted;

(c) the administrative record does not confirm that the Marine Corps actually
compared GySgt Pettiford's record with those of persons against whom he
competed for promotion at each of the ERSBs that was supposed to have
considered him for remedial promotion; and

(d) the Marine Corps did not make the changes necessary to reflect the fact that
GySgt Pettiford's record changed between the various regular promotion boards
the ERSB was supposed to replicate.

Complaint at 10.

**Purpose and Authority of the BCNR.**

The BCNR is established and composed under 10 U.S.C. §§ 1034 and 1552.  See 32

C.F.R. § 723.2.  The Secretary of the Navy is governed, in the correction of military records, by

6

10 U.S.C. § 1552, which states in pertinent part:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

10 U.S.C. § 1552(a)(1) (2005). And:

> Corrections under this section shall be made under procedures established by the Secretary concerned.

10 U.S.C. § 1552(a)(3) (2005).

The BCNR's powers are delineated, by 32 C.F.R. §§ 723.1-.11. The Code of Federal Regulations sets up procedures for correction of Naval and Marine records by the Secretary of the Navy acting through the BCNR to remedy error or injustice. 32 C.F.R. § 723.1.

The Secretary of the Navy has promulgated procedures for making application and the consideration of applications for correction of military records through the BCNR. These procedures are set forth in Secretary of the Navy Instruction ("SECNAVINST") 5420.193 (November 19, 1997)[2]. The BCNR's function is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized. Id. at Enclosure (1).

## ARGUMENT

**Standard of Review-Failure to State a Claim.**

A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the

_____

[2] Attached at DEX 3.

7

merits, but instead whether the plaintiff has properly stated a claim. See Fed. R. Civ. P. 12(b)(6);

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Thus, the court may dismiss a complaint for

failure to state a claim only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73

(1984); Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996). In deciding such a

motion, the court must accept all the complaint's well-pled factual allegations as true and draw

all reasonable inferences in the nonmovant's favor. See Scheuer, 416 U.S. at 236. The court

need not accept legal conclusions cast in the form of factual allegations. Lowal v. MCI

Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Secretary's denial of an

application for correction of naval records is a final agency action subject to review under the

standards of the Administrative Procedure Act. Miller v. Lehman, 801 F.2d 492, 496 (D.C. Cir.

1986).

**Standard of Review-Summary Judgment.**

Summary judgment shall be granted to the moving party if "there is no genuine issue as to

any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). The moving party bears the initial responsibility of demonstrating to the court the

absence of a genuine issue of any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). Therefore, "only disputes over facts that might affect the outcome of the suit . . . will

properly preclude the entry of summary judgment." Id.

Judicial review of military personnel decisions is not a *de novo* review of the underlying

issues. The court must consider whether the Secretary acted arbitrarily and capriciously in

applying his "broad grant of discretion" to correct military records under 10 U.S.C. § 1552.

8

Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989).  The Secretary or

his designee "may correct any military record" when "the Secretary considers it necessary to

correct an error or remove an injustice."  10 U.S.C. § 1552(a).  The Secretary may rely on a

"presumption of regularity to support the official actions of public officers and, in the absence of

substantial evidence to the contrary, will presume that they have properly discharged their official

duties."  See 32 C.F.R. § 723.3(e)(2).  Strong policies compel the court to allow the widest

possible latitude to the armed services in their administration of personnel matters.  See Orloff v.

Willoughby, 345 U.S. 83 (1953).

      To recover for failure to correct an alleged injustice, such as perhaps based on gross

material error of fact or an action contrary to all evidence, it must be proved that such failure was

arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously

prejudicial to plaintiff, and with monetary consequences.  Sanders v. United States, 594 F.2d

804, 813 (Ct.Cl. 1979).  In such event, the abuse of administrative discretion rises to the level of

legal error which merits judicial relief.  Id.  These are comparatively rare cases. . . . Perhaps they

are infrequent because the proof must overcome the strong, but rebuttable, presumption that

administrators of the military, like other public officers, discharge their duties correctly, lawfully,

and in good faith.  Id.; Viles v. Ball, 872 F.2d 491, 495(D.C. Cir. 1989).

      Military personnel decisions are entitled to an "unusually deferential standard of review."

Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting Kreis, 866 F.2d at 1513-14).

Moreover, once the Secretary fairly considers all the evidence in the record, he is "free to draw

his own reasonable inferences and conclusions from the evidence before him."  See Mudd v.

Caldera, 134 F. Supp. 2d 138, 143 (D.D.C. 2001) (citing Mail Order Ass'n of America v. United

9

States Postal Serv., 2 F.3d 408, 421 (D.C. Cir. 1993)).  All the Secretary must do is provide a rational explanation for the decision based on the administrative record.  See 5 U.S.C. §§ 706(2)(A), 706(2)(E); Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983); Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Kreis, 866 F.2d at 1514-15; Miller, 801 F.2d at 497.

In short, the Court's task in reviewing military personnel decisions under the APA is to determine whether "the decision making process was deficient, not whether [the] decision was correct."  Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) (quoting Kreis, 866 F.2d at 1511).  "The Secretary may . . . have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice."  Kreis, 866 F.2d at 1514.

The BCNR may deny a petition without a hearing if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice.  32 C.F.R. § 723.3(e)(1)&(2).  In making that decision, the BCNR may rely on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties.  32 C.F.R. § 723.3(e)(2).  In this case, after a full review of the entire record, including all of Plaintiff's submissions, the BCNR denied Plaintiff's petition without a hearing.  This was because the evidence before it was insufficient to establish the existence of probable material error or injustice.  AR at 2.

When an application is denied without a hearing, the BCNR's determination shall be made in writing and include a brief statement of the grounds for denial.  32 C.F.R. § 723.3(e)(3).

10

The statement is to include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based.  32 C.F.R. § 723.3(e)(4).  This Court is required to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Miller v. Lehman, 801 F.2d at 497, citing Bowman Transportation, Inc. v. Arkansas-Best Motor Freight System, Inc., 419 U.S. 281, 286, (1974).  In addition, "if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference."  Id., (citing Environmental Defense Fund, Inc. v. EPA, 465 F.2d 528, 537 (D.C. Cir. 1972)).  An "extensive exegesis" of the underlying reasoning is not required by law, merely an explanation of the basis for the decision.  Neal v. Secretary of Navy & Commandant of Marine Corps, 639 F.2d 1029 (3d Cir. 1981).  If the record contains such evidence that a reasonable mind might accept as adequate to support a conclusion, the Court must accept the Board's findings.  Smith v. Dalton, 927 F. Supp. 1, 5 (D.D.C. 1996).

Judicial review of an administrative agency decision is authorized under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based upon substantial evidence."  The plaintiff has the burden of satisfying this standard by providing "cogent and clearly convincing evidence" and must "overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith."  Swann v. Sec. of the Navy, 811 F. Supp. 1336, 1339 (N.D.Ind. 1992); see also Sanders v. United States, 594 F.2d 804, 813, 219 Ct. Cl. 285 (1979).

11

**The BCNR Was Not Required by Law or Regulation to "explain how it was dealing with submissions made by GySgt Pettiford after the Marine Corps' final advisory opinion."**

In reviewing agency action under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharmaceutical, Inc. v. Drug Enforcement Administration, 133 F.3d 8, 16 (D.C. Cir. 1998) (*quoting* Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43). The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge. A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Dickson v. Secretary of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995)(*quoting* Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys., 419 U.S. 281, 286 (1974)). The Board is required to respond to **arguments** raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition. See Calloway v. Brownlee 366 F. Supp. 2d 43 (D.D.C. 2005). However, plaintiff does not allege that he raised any new arguments after the advisory opinions, only that the board did not address his submissions. These submissions do not raise new allegations or arguments, but rather reiterate arguments previously made.

Plaintiff's post advisory board submissions reiterate three arguments. First plaintiff complains that the advisory opinion says that plaintiff's records were compared to the records of other Marines in all three boards, while an earlier letter from the same officer says that comparisons were made for only two boards. Compl ¶ 25. This argument was also contained in plaintiff's November 23rd 2001 letter to the BCNR. Compl ¶ 20. Both the January 16, 2002 and

12

the October 16, 2002 advisory opinions addressed this claim. Both advisory opinions noted that Plaintiff's records were compared with other Marines with the same Military Occupational Specialty (MOS) by use of comparison records maintained on file for each board. Undoubtedly, it would have been clearer had the advisory opinion or the BCNR explained that the nature of the records used for comparison had changed between 1999 and 2000. Prior to the effective date of MCO 5420.16C on July 21, 2000, there was no explicit requirement to compare the record of an applicant before an ERSB with those of the Marines selected by the board. DEX 1. Instead the Marine Corps relied on the experience and judgment of the Marines on the board to make the determination of whether the applicant or applicants were qualified for promotion. DEX 1. While not required, the ERSB did perform a comparison with the Marines selected by the original board, however this was done using a comparison index, rather than the files of the individual Marines selected. AR 330.

Plaintiff's second argument raised in his post board submissions is that the ERSB did not alter the records of plaintiff and those he was compared against to reflect the state the record would have been at the time of the board. Compl. ¶ 25. This exact claim was also raised in plaintiff's November 23, 2001 submission. Compl. ¶ 20. The June 20, 2002 advisory opinion from Marine Corps Headquarters addressed this allegation and concluded it was based on pure speculation, and that while they could not release un-redacted records of those Marines plaintiff was compared against, a review of those records showed the claim to be baseless. AR 21. Plaintiff's post advisory board opinion merely reiterates this discredited claim.

Finally, plaintiff's post advisory opinion submission reiterated plaintiff's contention that the ten sanitized Official Military Personnel Files (OMPF) did not provide a rational basis for

13

plaintiff's non-selection for promotion. Both the advisory opinions and the BCNR opinion addressed plaintiff's claim that his record merited promotion. The Jan 16, 2002 advisory opinion states that the confidentiality of board deliberation prevents knowing the exact reason for non-selection. However, it can be inferred that based on a majority vote of board members plaintiff's record was not competitive with the Marines selected for Promotion. AR 17. The BCNR found no injustice based on plaintiff's non-selection. AR 2. This claim, like the other two, were addressed by the BCNR and the advisory opinions relied on by it.

> **The BCNR is Not Required by Law or Regulation to Compare GySgt Pettiford's record with other Marines' service records that he submitted. There is No Evidence that the ERSB Did Not Make the Necessary Comparisons.**

Plaintiff submitted ten sanitized records of Marines selected for promotion to Master Sergeant and First Sergeant by the CY 2000 and CY 2001 boards. The names of Marines selected for promotion by each board are available to the public on the Headquarters Marine Corps web-page. If plaintiff did not believe he received everything to which he was entitled under the FOIA, he could have filed suit under that statute. It is irrelevant to the BCNR's determination what sanitized records plaintiff submitted. The CY 1999 board was not required to compare records of individual Marines. Further, the "sanitized" versions contain no substantive comparison value. They simply list duty assignments and other administrative minutia. The sanitized records would not provide the BCNR with a basis to determine that the ERSB's decision resulted in an injustice.

Although couched in an allegation of an arbitrary and capricious decision by BCNR, paragraph 32(a) of Plaintiff's complaint is no more than an impermissible attempt to have this Court invade the confidential deliberative session of the ERSB and dissect its protected decision

14

not to select him for remedial promotion. The members of the ERSB take a solemn oath not to disclose the proceedings or recommendations of the board pertaining to the selection or non-selection of individual staff noncommissioned officers. See, Marine Corps Order P1400.32B, ¶3604.3a, (October 30, 2000) (Marine Corps Promotion Manual); Marine Corps Order 5420.16C, Enclosure 1, ¶ 1c(1) (July 21, 2000) (Enlisted Remedial Selection Board); see generally, In re England, 363 U.S. App. D.C. 29 (D.C. Cir. 2004) (protecting the confidentiality of commissioned officer promotion selection board proceedings from disclosure for civil litigation purposes). Therefore, the ERSB and the BCNR are prohibited from disclosing the exact reason for non-selection other than the fact that an impartial panel after swearing an oath to perform its duty without prejudice or partiality, having in mind the special fitness of staff non commissioned officers, considered plaintiff unqualified for promotion to the next higher rank.

There is no numerical or arithmetic formula for selection to the next higher rank. While a plain faced reading of the sanitized comparison records by someone with a vested interest may not clearly establish the reason plaintiff was not qualified for promotion, neither does it establish that the BCNR's decision to uphold the confidential ERSB proceeding was arbitrary and capricious or contrary to law. The sanitized versions of the comparison records that were released to Plaintiff do not contain the fitness reports of the other Marines, due to privacy concerns. See AR 21. The fitness reports contain the essence of the Marines' military performance. The ERSB compared the fitness reports because that is what reflects a Marines character of service. Whether the Marine Corps' response to plaintiff's FOIA request was adequate is irrelevant to the case at bar. The Marine Corps was prohibited from releasing those parts of the records which are the most crucial in determining the basis for promotion.

15

The BCNR is not tasked with conducting *a de novo* comparison of Plaintiff's record with any other Marine's record. BCNR is solely tasked with review of the ERSB's decisions not to select Plaintiff for promotion to ensure procedural propriety and to ensure that no manifest injustice occurred. The ERSB is composed of experienced Marine officers and non-comissioned officers tasked with exercising their judgment in determining the suitability for promotion of each candidate. AR at 329. The BCNR is tasked with reviewing the procedures followed by the ERSB in conjunction with the relevant materials and regulations it used in its decision. In that light, the Board considered all the materials before it, submitted by both parties in accord with service regulations and found the evidence insufficient to establish the existence of probable material error or injustice. AR at 2.

The BCNR presumes that the ERSB followed the directions of the precept in the absence of evidence to the contrary. The precept for the ERSB mandates that the board "shall consider the official military personnel records of the Marines as their records would have appeared before the regularly scheduled selection board." AR at 330. In regards to the comparison of records, the precept states that the record being screened "can be compared with the records of those Marines of the same competitive category who were recommended for promotion." Id. The precept only mandates the following comparison: "For CY 2000 and CY 2001 selection boards, the record will be compared to the record of the selected Marine who received the lowest number of votes among those who were selected in the same competitive category, which will be furnished along with the record of the Marine who is considered by the remedial board." Id.

The presumption of regularity that attaches to the ERSB, in conjunction with the

16

confidential nature of the ERSB's deliberations combine to provide a rational basis for the

BCNR's finding that there was no probable error or injustice.  Plaintiff supplied the BCNR with

ten records that he obtained from the Marine Corps through the Freedom of Information Act

(FOIA) process.  According to the Precept for the ERSB in question, the remedial selection board

was informed that Plaintiff's record "can be compared with the records of those Marines of the

same competitive category who were recommended for promotion, using the performance index.

For CY 2000 and CY 2001 selection boards, the record will be compared to the record of the

selected Marine who received the lowest number of votes among those who were selected in the

same competitive category, which will be furnished along with the record of the Marine who is

considered by the remedial board."  AR at 330.  Plaintiff's submission of ten sanitized records

did not provide a basis for the BCNR to overturn the ERSB's decision.

The administrative record demonstrates that the ERSB followed the required procedures.

Plaintiff submitted nothing that would overcome the presumption of regularity under which the

BCNR reviews the ERSB's actions.  Based on the record in this case, the only possible

conclusion for the BCNR is that the evidence is insufficient to establish that Plaintiff's record

was not compared with the performance index for CY 1999 and the appropriate comparison

records for CY 2000 and CY 2001.

### The Board Found No Evidence to Support Plaintiff's Claim That His Record and Those Against Whom He Was Compared Were Not Changed Appropriately for Each Selection Board

Plaintiff alleges that the Marine Corps did not make the changes necessary to reflect the

changes that would have occurred between the various regular promotion boards the ERSB was

supposed to replicate.  The June 20, 2002 advisory opinion from the Marine Corps' headquarters

17

reviewed this allegation and found it to be pure speculation.  AR 21.  Although unable to release

the comparison records used by the board for privacy reason, the Commandant of the Marine

Corps found no basis in the record to support the allegation and absent evidence to the contrary,

appropriately presumed that the ERSB performed its duties correctly, lawfully and in good faith.

Even if true that plaintiff's record was not changed for each board there would have been

no prejudice to plaintiff.  In fact Plaintiff would have enjoyed an unfair advantage over the

Marines he was competing against.  The fact that he would have one, two or more extra fitness

reports in his record along with whatever commendatory remarks and awards that would have

been present would have enured to his benefit and therefore the complaint fails to establish a

cause of action on which to base a claim.

Alternatively, summary judgement should be granted because the presumption of

regularity was not rebutted.  The BCNR could therefore, have come to no other conclusion than

the ERSB followed the directive language of the precept and considered Plaintiff's official

military personnel record as it would have appeared before the regularly scheduled selection

board.

## CONCLUSION.

A three-member panel of the Board for Correction of Naval Records (BCNR)considered

Plaintiff's application on May 6, 2004.  AR at 2.  The BCNR reviewed Plaintiff's personnel

record based on his allegation of error and injustice, in accordance with applicable administrative

regulations and procedures.  Id.  The BCNR considered Plaintiff's application, together with all

material submitted in support thereof, his personnel record, applicable statutes, regulations and

18

policies.  Id.  The BCNR also considered the advisory opinions furnished by Headquarters

Marine Corps, dated: January 16, 2002 (AR 17); June 20, 2002 (AR 19); and October 16 2002

(AR 23).  Id.  Further, the BCNR considered letters submitted by Plaintiff's counsel with

enclosures dated: November 23, 2001 (AR 6); March 27, 2002 (AR 10); October 29, 2002 (AR

14); and, December 29, 2003 (AR 24).  Id.

      The BCNR found that the evidence submitted was insufficient to establish the existence

of probable material error or injustice.  Id.  The BCNR's determination that the evidence

submitted was insufficient to establish the existence of probable material error or injustice was

well supported by the record, was not arbitrary and capricious, and was not contrary to the law.

Further, the information conveyed to Plaintiff was sufficient for him to discern why the BCNR

did not agree with his position. The board explained that they substantially concurred with the

advisory opinions.  Id.  The advisory opinions explain the propriety of the ERSB's proceedings.

      Plaintiff has offered nothing but speculative allegations that are plainly contrary to

the evidence contained in the administrative record.  The presumption of regularity under which

the BCNR must operate has not been rebutted by anything but hollow assertions that have

absolutely no substance.    For the foregoing reasons, the complaint should be dismissed for

failure to state a claim, or in the alternative, summary judgement should be granted in favor of

the defendant.

      Respectfully submitted,

      _____
      KENNETH L. WAINSTEIN., D.C.  Bar #451058
      United States Attorney

 

_____

R. CRAIG  LAWRENCE, D.C.  Bar #171538
Assistant United States Attorney


_____

KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C.  20530
202-353-9895  / FAX 202-514-8780

OF COUNSEL:
Anthony C. Williams
Major, U. S. Marine Corps
Office of the Judge Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard, Washington, DC
Telephone: (202) 685 - 4596

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD       )
                                  )
                Plaintiff,      )     CIVIL ACTION NO. 1:05CV02082
                                  )     (ESH)
        v.                     )
                                  )
SECRETARY OF THE NAVY   )
                                  )
             Defendant.   )
                                  )

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
<u>WHICH ARE NOT IN GENUINE DISPUTE</u>**

Pursuant to LCvR 7(h) and in support of Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there are no genuine disputes.

1.  When Plaintiff was a Staff Sergeant (E-6) he was not selected for promotion to the next higher rank, Gunnery Sergeant (E-7), for the calendar year (CY) 1993, CY 1994, and CY 1995 selection boards.  Compl. ¶ 4.

2.  Subsequently, Plaintiff successfully petitioned the BCNR to remove references to a disciplinary infraction from June, 1992 that was in his personnel record.  He was considered for remedial promotion, purportedly without the disciplinary infraction, and was again not selected. Compl. ¶ 5 and 6.

3.  In 1996, the Marine Corps selected Plaintiff for promotion to Gunnery Sergeant by a regular selection board. Compl. ¶ 7

1

4. In 1997, the BCNR denied Plaintiff's request to backdate his promotion. He was considered, but not selected, for Master Sergeant (E-8) in 2000 and 2001. Compl. ¶ 9.

5. Plaintiff petitioned the BCNR again and was granted relief based on the fact that the disciplinary infraction that was supposed to have been removed from his record was still reflected in the electronic version of his personnel record. The BCNR directed that the reference to his disciplinary infraction be removed from the electronic version of his record, and invited Pettiford to petition for an ERSB. In September, 2001 the ERSB backdated his promotion to Gunnery Sergeant to November 1, 1994. Compl. ¶ 16

6. Based on plaintiff's petition, the BCNR granted him back pay. Compl. ¶ 18.

7. With his backdated date of rank, Plaintiff was considered for remedial promotion to Master Sergeant by the ERSB for CY1999, CY2000, and CY2001. He was not selected for promotion by any of the three boards. Compl. ¶ 19.

8. Marine Corps Order (MCO) P1610.7D dated March 3, 1995 published the policies, procedures and standards of the Marine Corps Performance Evaluation System. It was replaced by MCO P1610.7E dated December 3, 1998, effective January 1, 1999. MCO P1610.7E which completely changed the way performance evaluations (fitness reports) are written and stored in the Marine Corps. This marked the change from "microfiche" to digital storage. The new order also directed significant policy and administrative changes. The new fitness reports allow for a more complete description of a Marine's performance.

9. MCO 5420.16C of July 21, 2000 sets forth the procedures for the ERSB. This order governed the procedures for the 2000 and 2001 ERSB's. It replaced MCO 5420.16B dated January 31, 1995, which governed the 1999 ERSB. Defendant's Exhibit 1 and 2 (hereinafter

DEX #).

10.  The ERSB is an advisory board that provides advice to the Commandant of the Marine Corps on Staff Noncommissioned Officer remedial promotion cases.  Both versions of the order mandate that the ERSB be guided in their decision by the precept[3], procedural rules, policies and regulations in effect when the respective regularly scheduled promotion selection board was in session. DEX 1 and 2.

11.  The primary difference between the two versions is that the current version prescribes that: "The primary consideration of the ERSB will be a comparison of the record of the Marine granted remedial consideration to the records of the Marines selected by the regularly scheduled board before which the Marine has been granted remedial consideration."  The earlier version contains no such guidance, relying instead on the experience of the Marines on the board to evaluate the candidates to determine if the candidates merit promotion.  DEX 1 and 2.

12.  Both versions state that Marines must receive a majority vote of the members of the ERSB to be selected.  The report of the ERSB lists both those Marines they recommend for selection and those that are not recommended.  There is no explanation included of why a Marine was selected or not selected. DEX 1 and 2.

13.  The Precept dated November 15, 2001, that convened the ERSB in question reflected the difference.  The pertinent section sets forth:

> The remedial selection board shall consider the official military personnel records of the Marines as their records would have appeared before the regularly scheduled selection board.  That record can be compared with the records of those Marines of the

---

[3] A Precept is the document that assigns members to the board and instructs them on selection criteria.

3

same competitive category who were recommended for promotion, using the performance index.  For CY 2000 and CY 2001 selection boards, the record will be compared to the record of the selected Marine who received the lowest number of votes among those who were selected in the same competitive category, which will be furnished along with the record of the Marine who is considered by the remedial board.  Based upon the record and other information submitted, the board shall recommend for promotion Marines who are fully qualified for promotion and capable of assuming the duties of the next higher grade.

AR at 330.

14.  The Marine Corps involuntarily retired Plaintiff when he reached service limitations for his rank in June, 2002.  Compl ¶ 22.

15.  Plaintiff petitioned the BCNR for remedial promotion to MSgt on November 23, 2001.  Compl ¶ 20.

16.  The BCNR received three advisory opinions from Marine Corps' Head Quarters dated January 16, 2002, June 20, 2002 and October 16, 2002.  AR 17-23.

18.  On May 6, 2004 the BCNR voted to deny plaintiff relief finding no material error or injustice and substantially adopting the reasoning of the advisory opinions.  Compl ¶26 and 27. AR 2.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney


KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 353-9895

OF COUNSEL:
Anthony C. Williams
Major, U. S. Marine Corps
Office of the Judge Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard, Washington, DC
Telephone: (202) 685 - 4596