UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MAURICE B. PETTIFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-2082 (ESH) |
| | ) | |
| SECRETARY OF THE NAVY, | ) | |
| | ) | |
| Defendant. | ) | Judge Huvelle |

PLAINTIFF'S STATEMENT OF MATERIALS FACTS

1. In 1994, GySgt Pettiford—a Staff Sergeant (E-6) at the time—applied to the Board for Correction of Naval Records ("BCNR") for removal of an unjust record of "office hours" or nonjudicial punishment. A.R. 320.[1]

2. The BCNR recommended a grant of relief in 1995, and this was approved by the Secretary's delegate in 1996. A.R. 251-57, 273-79, 322-28.

3. GySgt Pettiford's record was considered by an Enlisted Remedial Selection Board ("ERSB"), A.R. 316, but he was still not advanced to GySgt. A.R. 249, 300, 303.

4. Nonetheless, he was promoted to GySgt on July 1, 1996, having been selected by the regular selection board. A.R. 304.

5. Later in 1996, GySgt Pettiford reapplied to the BCNR when he learned

---

[1] The Administrative Record includes multiple copies of many documents. We have not attempted to include references in this Statement to each place a particular document appears in the A.R.

that his record had not been correctly constituted when he came up for promotion to GySgt in 1993, 1994 and 1995. A.R. 301, 303-13.

6. He asked to have his date of rank as an E-7 made retroactive on the basis that he should have been selected earlier. A.R. 308, 313.

7. The BCNR denied the request on the basis that the ERSB had considered his record and refused remedial promotion even though the office hours document had been removed from his record. A.R. 280, 290-91.

8. In 2001, GySgt Pettiford was considered for promotion to Master Sergeant. A.R. 268.

9. He learned that, contrary to prior representations to him, the office hours document that had been ordered removed from his record was still there, years later, in electronic form—where it was accessible to selection board members. A.R. 268-69, 282.

10. GySgt Pettiford was not selected for promotion by the 2001 Master Sergeant selection board. A.R. 269.

11. Based on this disclosure, GySgt Pettiford returned to the BCNR, and suggested that the BCNR's 1997 denial of relief was based on an incomplete or inaccurate advisory opinion from the Marine Corps, and that the decision should have been to grant the relief he had sought. He asked that, rather than requiring further resort to the ERSB or other internal Marine Corps remedies, the BCNR should simply grant make-whole relief itself, correcting his date of rank as a GySgt to July 1, 1993, with consequent promotion to Master Sergeant effective July 1,

1998, the fifth anniversary of the date on which he should have been promoted to GySgt in the first place. A.R. 266-70.

12. The Marine Corps thereupon advised that it had removed the office hours record from GySgt Pettiford's file, A.R. 189, and that he could request remedial consideration for all selection boards that may have been affected by it. A.R. 260-61.

13. On July 2, 2001, GySgt Pettiford requested ERSB consideration, A.R. 157, and on July 6, 2001, his commanding officer favorably endorsed his request, stating: "Approval of this will correct an unfortunate injustice. GySgt Pettiford is fully qualified to be a Master Sergeant of Marines." A.R. 156; *see also* A.R. 160, 161, 163, 165, 283.

14. In September 2001, the ERSB agreed that GySgt Pettiford's promotion to GySgt should be made retroactive to November 1, 1994. A.R. 7.

15. Thereafter, he applied to the BCNR for back pay, since the period of retroactivity exceeded that for which the Marine Corps can give back pay on its own. A.R. 7.

16. The BCNR granted that request in November 2001. A.R. 7.

17. The ERSB did not rule, at first, on GySgt Pettiford's request for remedial promotion to Master Sergeant at the regular 1999, 2000 and 2001 selection boards. It finally did so on or about November 16, 2001, when it decided he should *not* be remedially promoted to Master Sergeant. A.R. 7, 19, 32, 338.

18. On November 23, 2001, having exhausted all of his remedies within the Marine Corps, GySgt Pettiford renewed his request for such relief from the BCNR.

A.R. 6. His letter to the BCNR stated in pertinent part:

> There are two basic reasons the BCNR should grant remedial promotion to MSgt. *First*, the ERSB's proceedings were procedurally defective. *Second*, even if its procedures were valid, the result was arbitrary and capricious. We address each of these in turn.
>
> 1
>
> **The ERSB's Decision was Procedurally Flawed**
>
> The ERSB failed to follow the required procedures. As explained in my May 25, 2001 letter [A.R. 186], including the enclosures, the Marine Corps does not conduct ERSBs in the proper, required manner. It does not in fact compare the records of Marines who are being considered for remedial promotion with records of those Marines with whom they would have competed before the regular selection boards. For example, when conducting a remedial review of the regular 1999 MSgt selection board, the ERSB should have reconstituted GySgt Pettiford's record to show his corrected GySgt date of rank (as per its September 2001 decision), and by removing any documents that did not exist as part of his record as of the date the regular 1999 MSgt board convened. Similarly, it had a duty to compare that record with the records of other GySgts with whom GySgt Pettiford would have competed before the regular 1999 MSgt board. And those records in turn would have had to be reconstituted to remove any documents that did not exist as part of the concerned Marines' records on the date they met the regular 1999 MSgt board. The process would then have to be repeated, if he was not selected for 1999 remedial promotion, with appropriate reconstitution of GySgt Pettiford's record and those of a sample of Marines who in fact were considered by the regular 2000 and 2001 MSgt boards.
>
> The documents furnished to us by the Marine Corps indicate that the Corps does not conduct ERSBs in this fashion. We have, for your information, addressed a further FOIA request to Headquarters, U.S. Marine Corps, in this regard, but we have done so only out of an abundance of caution, since there is no indication that the Corps altered the process followed by the ERSB between the time of our earlier FOIA request [*see* A.R. 243] and the time the ERSB considered GySgt Pettiford's latest request. As additional documentation is received from the Marine Corps, we will forward it to you. A copy of our latest FOIA request [A.R. 104] is enclosed for your convenience.
>
> There is no evidence that GySgt Pettiford's record was considered

4

separately as to each of the three regular MSgt promotion boards with respect to which remedial consideration was required. This represents an error in itself, but the error is compounded by the fact that his record changed between the time of the 1999, 2000 and 2001 regular MSgt boards. There is no reason to believe that the ERSB had his record reconstituted to the condition it would have been in, separately, for each of those years. Among other things, additional fitness reports and a graduate certificate for telecommunications would have been added at various time[s] over the course of those years.

For these reasons and those previously stated, the ERSB's consideration of GySgt Pettiford for remedial promotion to MSgt must be voided.

2

### The ERSB's Decision was Arbitrary and Capricious

In any event, the BCNR has the power and duty to review the merits of ERSB decisions. Here, the ERSB's decision is arbitrary and capricious in light of (a) this Marine's overall record (including two meritorious promotions, one to SSgt while on recruiting duty); (b) his earned B.S. degree while on active duty (an infrequent achievement for an enlisted Marine); (c) his progress toward an earned Master's degree (an even rarer achievement); and (d) the Commandant's repeated instruction to selection boards concerning the presumption that those who have completed a tour in recruiting are highly qualified (GySgt Pettiford has had two tours as a recruiter). [*E.g.*, A.R. 213 (¶ 8a), 222 (¶ 9a)]

Certainly nothing in GySgt Pettiford's record, as corrected, precluded his selection for MSgt, and while of course there was competition for promotion in 1999, 2000 and 2001, it was not so extraordinary as to render him noncompetitive. For example, according to the enclosed data for FY01, the selection rate was 62.8%. [A.R. 141, 172] Particularly since, under MCO 5420.16C, "the ERSB is not constrained by the selection allocations in effect as the time of the regularly scheduled board," [A.R. 149, 184] it is disturbing, giving the regular boards' actual selection rates, that the November 2001 ERSB selected none of the four [*sic*; should read "three"; *see* A.R. 12 (¶ 5)] GySgt's seeking remedial promotion to MSgt or 1stSgt. [A.R. 336-37]

Accordingly, the BCNR should now direct that GySgt Pettiford be promoted to Master Sergeant retroactive to MSgt effective November 1,

>    1998, since that is the date we believe he would have been promoted given his newly-established November 1, 1994 date of rank as a Gunnery Sergeant.

A.R. 7-9 (A.R. citations in brackets added).

19. The case took several more years for the BCNR to resolve, largely because it had to be placed in suspense, A.R. 24, 96, 102, while GySgt Pettiford struggled to extract pertinent documents and straight answers from the Marine Corps. A.R. 30-31, 33, 49-51, 54-58, 61-62, 73, 85-90.

20. On June 1, 2002, GySgt Pettiford was transferred to the Fleet Marine Corps Reserve. A.R. 77-78.

21. In an October 16, 2002 advisory opinion to the BCNR, the Marine Corps claimed that it had compared GySgt Pettiford's record with those of other Marines within his military occupational specialty who were considered by the original Sergeant Major (E-9) through Master Sergeant selection boards in 1999, 2000 and 2001. It asserted that "[t]his is accomplished by the use of comparison records maintained on file for each board held per calendar year." A.R. 23.

22. By letter dated September 26, 2002, however, the Marine Corps had advised GySgt Pettiford that comparisons were made as to only two of the three annual cycles at issue in the case (2000 and 2001). A.R. 32.

23. On December 29, 2003, in a final submission to the BCNR, GySgt Pettiford filed the 10 comparison service records he had succeeded in prying out of

the Marine Corps as those which the ERSB allegedly considered. A.R. 24.[2] His submission stated in pertinent part:

> On October 29, 2002 I wrote to you [A.R. 14] in response to the Marine Corps' October 16, 2002 memorandum in GySgt Pettiford's case. [A.R. 23] Since that time we have continued to press the Marine Corps for the information we have been seeking for so very long. [A.R. 30-31, 33] It now appears that we have received everything we are likely to get—unless the BCNR directs the Marine Corps to make a further submission. I therefore request that you terminate the suspension of these proceedings.
>
> On July 16, 2003, the Marine Corps released to us five sanitized OMPFs against which GySgt Pettiford's record was apparently compared by the Enlisted Remedial Separation Board ("ERSB"). Months later, five additional sanitized OMPFs [Official Military Personnel Files] were released to us in digital form. Copies of these 10 records are enclosed. We have the following comments:
>
> 1. It remains unknown how the Marine Corps actually conducted the ERSB proceedings. As explained in my October 29, 2002 letter to you [A.R. 14], a September 26, 2002 letter from Major J.A. Popielec, Head, Enlisted Promotion Section, asserts that comparisons were made as to only two of the three annual cycles that are at issue in this case (CY 2000 and CY 2001). [A.R. 32] On the other hand, his October 16, 2002 memorandum to the BCNR [A.R. 23] appears to claim that comparisons were performed by the ERSB in respect of all three regular boards, *i.e.*, CY 1999-2001, as opposed to the two boards as to which he made such a claim three weeks earlier. This inconsistency remains unexplained.[3]
>
> 2. Maj Popielec's October 16, 2002 memorandum also claims that comparisons are "accomplished by the use of comparison records maintained on file for each board held per calendar year." It follows that there would be no problem retrieving the comparison records on a per-

---

[2] Defendant neglected to include those documents in the Administrative Record. We have asked that a Supplemental Administrative Record be promptly filed and served.

[3] In fact, GySgt Pettiford was supposed to be considered for remedial promotion in respect of *six* regular promotion boards—1999 IZ [In Zone] 1st Sgt and MSgt, 2000 IZ 1st Sgt, 2000 AZ [Above Zone] MSgt, 2001 IZ 1st Sgt, and 2001 AZ MSgt. [Footnote in original; bracketed explanations added.]

calendar-year basis. But only 10 OMPFs were furnished to us. The clear implication is that they were the only comparison records the 2001 ERSB relied on. If so, then either (a) Maj Popielec's description of the Marine Corps' comparison-record maintenance practices is inaccurate, or (b) the ERSB took a short cut and made multiple-year comparisons against a single set of records, or (c) the Marine Corps failed to furnish us all of the comparison records that were actually used. The records furnished to us do not distinguish between the various regular selection boards the ERSB was supposed to replicate using a corrected OMPF for GySgt Pettiford.

   3. The conclusion is inescapable that the ERSB did not, in fact, replicate the various regular boards separately, as it was required to, but instead—at best—performed a single review covering a number of years and pay grades. This corner-cutting may have saved time, but it means—fatally—that neither GySgt Pettiford's OMPF nor those with which the Marine Corps claims to have compared it were adjusted to take account of the changes that would have had to be made with the passage of time between the CY 1999 regular board, the CY 2000 regular board, and the CY 2001 regular board. See my letter of Mar. 27, 2002, at 3 (¶ 4). The June 20, 2002 advisory opinion claims (at 3 (¶ 4g)) that we are merely speculating in this regard. [A.R. 19] There are two answers to this assertion: the actual practice followed by the ERSB staff is a matter peculiarly within the Marine Corps' knowledge, and nothing has prevented the Marine Corps from refuting the point directly if the facts were other than as we have inferred. Second, nothing in the 10 sanitized OMPFs furnished to us gives the slightest reason to believe any such adjustments were made. The corner-cutting referred to above also means that GySgt Pettiford's record was not compared with a proper sample of those against whom he actually competed before the original boards, in light of the fact that the pool of staff NCOs actually considered for promotion obviously changes from, year to year.

   4. Finally, and even if the BCNR could disregard all of the foregoing defects, the 10 sanitized OMPFs provide no rational basis on which to conclude that GySgt Pettiford would have been found in the do-not-promote category for each and every one of the promotion cycles the ERSB was supposed to replicate based on his corrected OMPF. They are not identified in any way that would permit a reader to determine which of the 10 were selected (and by which regular board for which pay grade) and which were not selected. Are the 10 records really applicable to all six of the regular boards the ERSB was required to replicate? If so, how many of those 10 Marines were selected, and for which grade in which

year? If any of them were selected, that would mean they would not have been considered for the next annual cycle? See my letter of Mar. 27, 2002, at 3 n.2. [A.R. 12 n.2] Were no others substituted? In any event, the Marine Corps has not drawn our attention to anything that would justify the decision of the ERSB, and the achievements of GySgt Pettiford make his failures of selection by the ERSB for each and every one of the six affected promotion cycles, one after another, profoundly improbable. We encourage the BCNR to secure *complete* copies of his OMPF and those against which he was in fact compared by the ERSB (with indication as to who was selected and who was not, and by which regular board) to see if it can determine any better than we can whether there is in fact a substantial basis for the ERSB's decision.

24. On May 6, 2004, the BCNR voted to deny GySgt Pettiford's application. A.R. 1, 4.

25. In a brief letter decision sent the following day, the BCNR stated that it "substantially concurred with the comments contained in the advisory opinions." A.R. 2.

26. The advisory opinions referred to by the BCNR did not address matter that was submitted on GySgt Pettiford's behalf after they were written. *Compare* A.R. 17 (Jan. 16, 2002), 19 (June 20, 2002), 23 (Oct. 16, 2002) (advisory opinions) *with* A.R. 14 (Oct. 29, 2002), 24 (Dec. 29, 2003) (GySgt Pettiford's subsequent submissions).

27. The BCNR gave no indication of how it viewed GySgt Pettiford's responses to the advisory opinions or why it was not accepting his arguments. A.R. 2.

28. The BCNR gave no indication that it had compared GySgt Pettiford's record with any of the service records he had submitted, after having obtained them

9

from the Marine Corps, much less that it had found him less qualified than others against whom he had allegedly been compared by the ERSB. A.R. 2.

>Respectfully submitted,
>
>*Eugene R Fidell*
>Eugene R. Fidell (112003)
>Matthew S. Freedus (475887)
>Charlotte E. Cluverius (493655)
>Feldesman Tucker Leifer Fidell LLP
>2001 L Street, N.W., Second Floor
>Washington, DC 20036
>(202) 466-8960
>
>*Attorneys for Plaintiff*

February 9, 2006

10