UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD,             )
                                  )
    Plaintiff,                    )
                                  )
v.                                )   Civil No. 05-2082 (ESH)
                                  )
SECRETARY OF THE NAVY,            )
                                  )
    Defendant.                    )   Judge Huvelle


AMENDED AND SUPPLEMENTAL COMPLAINT
(APA Review of Decision of the
Board for Correction of Naval Records)

This Amended and Supplemental Complaint is respectfully submitted in accordance with Fed. R. Civ. P. 15 for the purpose of addressing the decision of the Board for Correction of Naval Records ("BCNR") following the remand granted at the Secretary's request on April 19, 2006.

*Jurisdiction*

1. This Court has federal question jurisdiction pursuant to the military record-correction statute (10 U.S.C. § 1552) and 28 U.S.C. § 1331.

*Parties*

2. Plaintiff is a citizen of the United States and a retired Gunnery Sergeant (E-7) ("GySgt") in the United States Marine Corps. He is assigned to the Fleet Marine Corps Reserve, a status held by enlisted Marines who so desire from the time they complete 20 years' service until they are transferred to the retired list upon completion of 30 years' service. 10 U.S.C. §§ 6330-31. He is currently a civilian employee of the Department of State.

3. Defendant is the Secretary of the Navy. The Marine Corps is part of the Department of the Navy.

*Facts*

4. In 1994, GySgt Pettiford—a Staff Sergeant (E-6) at the time—applied to the BCNR when he learned that his record had not been correctly constituted when he came up for promotion to GySgt in 1993, 1994 and 1995. His record contained an unjust reference to nonjudicial punishment, known in the Marine Corps as "office hours."

5. In 1996, the BCNR granted relief and directed that the office hours document that caused his failures of selection to be removed from his record.

6. His record was considered by an Enlisted Remedial Selection Board ("ERSB"), but he was still not advanced to GySgt.

7. Nonetheless, he was promoted to GySgt on July 1, 1996, having been selected by the regular selection board.

8. GySgt Pettiford thereupon reapplied to the BCNR to have his date of rank as an E-7 made retroactive on the basis that he should have been selected earlier.

9. The BCNR denied the request on the basis that the ERSB had considered his record and refused remedial promotion even though the office hours document had been removed from his record.

10. In 2001, GySgt Pettiford was considered for promotion to Master Sergeant.

11. He learned that, contrary to prior representations to him, the office hours document that had been ordered removed from his record was still there, years later, in electronic form—where it was accessible to selection board members.

12. GySgt Pettiford was not selected for promotion by the 2000 Master Sergeant selection board.

13. Based on this disclosure, GySgt Pettiford returned to the BCNR, and suggested that the BCNR's 1997 denial of relief was based on an incomplete or inaccurate advisory opinion from the Marine Corps, and that the decision should have been to grant the relief he had sought. He asked that, rather than requiring further resort to the ERSB or other internal Marine Corps remedies, the BCNR should simply grant make-whole relief itself, correcting his date of rank as a GySgt to July 1, 1993, with consequent promotion to Master Sergeant effective July 1, 1998, the fifth anniversary of the date on which he should have been promoted to GySgt in the first place.

14. The Marine Corps thereupon advised that it had removed the office hours record from GySgt Pettiford's file, and that he could request remedial consideration for all selection boards that may have been affected by it.

15. On July 2, 2001, GySgt Pettiford requested ERSB consideration, and on July 6, 2001, his commanding officer favorably endorsed his request, stating: "Approval of this will correct an unfortunate injustice. GySgt Pettiford is fully qualified to be a Master Sergeant of Marines."

16. In September 2001, the ERSB agreed that GySgt Pettiford's promotion to GySgt should be made retroactive to November 1, 1994.

17. Thereafter, he applied to the BCNR for back pay, since the period of retroactivity exceeded that for which the Marine Corps can give backpay on its own.

18. The BCNR granted that request in November 2001.

19. The ERSB did not rule, at first, on GySgt Pettiford's request for remedial promotion to Master Sergeant at the 1999, 2000 and 2001 regular selection boards. It finally did so on or about November 16, 2001, when it decided he should *not* be remedially promoted to Master Sergeant.

20. On November 23, 2001, having exhausted all of his remedies within the Marine Corps, GySgt Pettiford renewed his request for such relief from the BCNR. His letter to the BCNR stated in pertinent part:

> There are two basic reasons the BCNR should grant remedial promotion to MSgt. *First*, the ERSB's proceedings were procedurally defective. *Second*, even if its procedures were valid, the result was arbitrary and capricious. We address each of these in turn.
>
> 1
>
> *The ERSB's Decision was Procedurally Flawed*
>
> The ERSB failed to follow the required procedures. As explained in my May 25, 2001 letter, including the enclosures, the Marine Corps does not conduct ERSBs in the proper, required manner. It does not in fact compare the records of Marines who are being considered for remedial promotion with records of those Marines with whom they would have competed before the regular selection boards. For example, when conducting a remedial review of the regular 1999 MSgt selection board, the ERSB should have reconstituted GySgt Pettiford's record to show his corrected GySgt date of rank (as per its September 2001 decision), and by removing any documents that did not exist as part of his record as of the date the regular 1999 MSgt board convened. Similarly, it had a duty to compare that record with the records of other GySgts with whom GySgt Pettiford would have competed before the regular 1999 MSgt board. And those records in turn would have had to be reconstituted to remove any documents that did not exist as part of the concerned Marines' records on the date they met the regular 1999 MSgt board. The process would then have to be repeated, if he was not selected for 1999 remedial promotion, with appropriate reconstitution of GySgt Pettiford's record and those of a sample of Marines who in fact were considered by the regular 2000 and 2001 MSgt boards.
>
> The documents furnished to us by the Marine Corps indicate that the Corps does not conduct ERSBs in this fashion. We have, for your information, addressed a further FOIA request to Headquarters, U.S. Marine Corps, in this regard, but we have done so only out of an abundance of caution,

4

since there is no indication that the Corps altered the process followed by the ERSB between the time of our earlier FOIA request and the time the ERSB considered GySgt Pettiford's latest request. As additional documentation is received from the Marine Corps, we will forward it to you. A copy of our latest FOIA request is enclosed for your convenience.

There is no evidence that GySgt Pettiford's record was considered separately as to each of the three regular MSgt promotion boards with respect to which remedial consideration was required. This represents an error in itself, but the error is compounded by the fact that his record changed between the time of the 1999, 2000 and 2001 regular MSgt boards. There is no reason to believe that the ERSB had his record reconstituted to the condition it would have been in, separately, for each of those years. Among other things, additional fitness reports and a graduate certificate for telecommunications would have been added at various time[s] over the course of those years.

For these reasons and those previously stated, the ERSB's consideration of GySgt Pettiford for remedial promotion to MSgt must be voided.

2

*The ERSB's Decision was Arbitrary and Capricious*

In any event, the BCNR has the power and duty to review the merits of ERSB decisions. Here, the ERSB's decision is arbitrary and capricious in light of (a) this Marine's overall record (including two meritorious promotions, one to SSgt while on recruiting duty); (b) his earned B.S. degree while on active duty (an infrequent achievement for an enlisted Marine); (c) his progress toward an earned Master's degree (an even rarer achievement); and (d) the Commandant's repeated instruction to selection boards concerning the presumption that those who have completed a tour in recruiting are highly qualified (GySgt Pettiford has had two tours as a recruiter).

Certainly nothing in GySgt Pettiford's record, as corrected, precluded his selection for MSgt, and while of course there was competition for promotion in 1999, 2000 and 2001, it was not so extraordinary as to render him noncompetitive. For example, according to the enclosed data for FY01, the selection rate was 62.8%. Particularly since, under MCO 5420.16C, "the ERSB is not constrained by the selection allocations in effect as the time of the regularly scheduled board," it is disturbing, giving the regular boards' actual selection rates, that the November 2001 ERSB selected none of the four GySgt's seeking remedial promotion to MSgt or 1stSgt.

Accordingly, the BCNR should now direct that GySgt Pettiford be promoted to Master Sergeant retroactive to MSgt effective November 1,

1998, since that is the date we believe he would have been promoted given his newly-established November 1, 1994 date of rank as a Gunnery Sergeant.

21. The case took several more years for the BCNR to resolve, largely because it had to be placed in suspense while GySgt Pettiford struggled to extract pertinent documents and straight answers out of the Marine Corps.

22. On June 1, 2002, GySgt Pettiford was transferred to the Fleet Marine Corps Reserve.

23. In an October 16, 2002 advisory opinion to the BCNR, the Marine Corps claimed that it had compared GySgt Pettiford's record with those of other Marines within his Military Occupational Specialty ("MOS") who were considered by the original Sergeant Major (E-9) through Master Sergeant selection boards in 1999, 2000 and 2001. It asserted that "[t]his is accomplished by the use of comparison records maintained on file for each board held per calendar year."

24. By letter dated September 26, 2002, however, the Marine Corps had advised GySgt Pettiford that comparisons were made as to only two of the three annual cycles at issue in the case (2000 and 2001).

25. On December 29, 2003, GySgt Pettiford filed with the BCNR the 10 comparison service records he had succeeded in prying out of the Marine Corps as those which the ERSB allegedly considered. His submission stated in pertinent part:

> On October 29, 2002 I wrote to you in response to the Marine Corps' October 16, 2002 memorandum in GySgt Pettiford's case. Since that time we have continued to press the Marine Corps for the information we have been seeking for so very long. It now appears that we have received everything we are likely to get—unless the BCNR directs the Marine Corps to make a further submission. I therefore request that you terminate the suspension of these proceedings.

6

On July 16, 2003, the Marine Corps released to us five sanitized OMPFs against which GySgt Pettiford's record was apparently compared by the Enlisted Remedial Separation Board ("ERSB"). Months later, five additional sanitized OMPFs [Official Military Personnel Files] were released to us in digital form. Copies of these 10 records are enclosed. We have the following comments:

1. It remains unknown how the Marine Corps actually conducted the ERSB proceedings. As explained in my October 29, 2002 letter to you, a September 26, 2002 letter from Major J.A. Popielec, Head, Enlisted Promotion Section, asserts that comparisons were made as to only two of the three annual cycles that are at issue in this case (CY 2000 and CY 2001). On the other hand, his October 16, 2002 memorandum to the BCNR appears to claim that comparisons were performed by the ERSB in respect of all three regular boards, *i.e.*, CY 1999-2001, as opposed to the two boards as to which he made such a claim three weeks earlier. This inconsistency remains unexplained.[1]

2. Maj Popielec's October 16, 2002 memorandum also claims that comparisons are "accomplished by the use of comparison records maintained on file for each board held per calendar year." It follows that there would be no problem retrieving the comparison records on a per-calendar-year basis. But only 10 OMPFs were furnished to us. The clear implication is that they were the only comparison records the 2001 ERSB relied on. If so, then either (a) Maj Popielec's description of the Marine Corps' comparison-record maintenance practices is inaccurate, or (b) the ERSB took a short cut and made multiple-year comparisons against a single set of records, or (c) the Marine Corps failed to furnish us all of the comparison records that were actually used. The records furnished to us do not distinguish between the various regular selection boards the ERSB was supposed to replicate using a corrected OMPF for GySgt Pettiford.

3. The conclusion is inescapable that the ERSB did not, in fact, replicate the various regular boards separately, as it was required to, but instead—at best—performed a single review covering a number of years and pay grades. This corner-cutting may have saved time, but it means—fatally—that neither GySgt Pettiford's OMPF nor those with which the Marine Corps claims to have compared it were adjusted to take account of the changes that would have had to be made with the passage of time between the CY 1999 regular board, the CY 2000 regular board, and the CY 2001 regular board. See my letter of Mar. 27, 2002, at 3 (¶ 4). The June 20, 2002 advisory opinion claims (at 3 (¶ 4g)) that we are merely speculating in this

---

[1] In fact, GySgt Pettiford was supposed to be considered for remedial promotion in respect of *six* regular promotion boards—1999 IZ [In Zone] 1st Sgt and MSgt, 2000 IZ 1st Sgt, 2000 AZ [Above Zone] MSgt, 2001 IZ 1st Sgt, and 2001 AZ MSgt. [Footnote in original; bracketed explanations added.]

7

regard. There are two answers to this assertion: the actual practice followed by the ERSB staff is a matter peculiarly within the Marine Corps' knowledge, and nothing has prevented the Marine Corps from refuting the point directly if the facts were other than as we have inferred. Second, nothing in the 10 sanitized OMPFs furnished to us gives the slightest reason to believe any such adjustments were made. The corner-cutting referred to above also means that GySgt Pettiford's record was not compared with a proper sample of those against whom he actually competed before the original boards, in light of the fact that the pool of staff NCOs actually considered for promotion obviously changes from, year to year.

4. Finally, and even if the BCNR could disregard all of the foregoing defects, the 10 sanitized OMPFs provide no rational basis on which to conclude that GySgt Pettiford would have been found in the do-not-promote category for each and every one of the promotion cycles the ERSB was supposed to replicate based on his corrected OMPF. They are not identified in any way that would permit a reader to determine which of the 10 were selected (and by which regular board for which pay grade) and which were not selected. Are the 10 records really applicable to all six of the regular boards the ERSB was required to replicate? If so, how many of those 10 Marines were selected, and for which grade in which year? If any of them were selected, that would mean they would not have been considered for the next annual cycle? See my letter of Mar. 27, 2002, at 3 n.2. Were no others substituted? In any event, the Marine Corps has not drawn our attention to anything that would justify the decision of the ERSB, and the achievements of GySgt Pettiford make his failures of selection by the ERSB for each and every one of the six affected promotion cycles, one after another, profoundly improbable. We encourage the BCNR to secure *complete* copies of his OMPF and those against which he was in fact compared by the ERSB (with indication as to who was selected and who was not, and by which regular board) to see if it can determine any better than we can whether there is in fact a substantial basis for the ERSB's decision.

26. On May 6, 2004, the BCNR voted to deny GySgt Pettiford's application.

27. In a brief letter decision sent the following day, the BCNR stated that it "substantially concurred with the comments contained in the advisory opinions."

28. The advisory opinions referred to by the BCNR necessarily did not address matter that was submitted on GySgt Pettiford's behalf after they were written.

29. The BCNR's 2004 decision gave no indication of how it viewed GySgt Pettiford's responses to the advisory opinions or why it was not accepting his arguments.

8

30. The BCNR's 2004 decision gave no indication that it had compared GySgt Pettiford's record with any of the service records he had submitted, after having obtained them from the Marine Corps, much less that it had found him less qualified than others against whom he had allegedly been compared by the ERSB.

31. On April 19, 2006, at the Secretary's request after GySgt Pettiford cross-moved for summary judgment, the Court remanded the case to the BCNR for further proceedings, and denied the parties' dispositive motions without prejudice.

32. On April 11 and August 2, 2006, the Enlisted Program Section of Headquarters Marine Corps submitted advisory opinions to the BCNR purporting to further explain the process employed by the ERSB when it considered GySgt Pettiford's case.

33. For 1999, the ERSB used the PI to compare GySgt Pettiford's performance against that of his peers.

34. For 1999, the ERSB first considered GySgt Pettiford for promotion to First Sergeant and then to Master Sergeant.

34. The upper limit for PIs is 9.00.

35. GySgt Pettiford's PI was 8.95.

36. In the two pertinent MOSs, 199 Marines who were promoted to First Sergeant and Master Sergeant by the 1999 regular selection board had PIs between 8.80 and 9.00.

37. One Marine in the same MOSs who was promoted to First Sergeant by the 1999 regular selection board had a PI between 8.59 and 8.40.

38. The ERSB did not refer to the OMPF of that or any other Marine when deciding not to remedially promote GySgt Pettiford as of 1999.

39. For 2000 and 2001, the August 2, 2006 advisory opinion claimed that GySgt Pettiford's record was compared only with that of the Marines who were selected for promotion to First Sergeant and Master Sergeant with the fewest votes.

40. GySgt Pettiford responded to the two 2006 advisory opinions as follows, in pertinent part:

1

**Failure to Review GySgt Pettiford's Naval Record**

Paragraph 2 of the Board's June 23, 2006 letter advised the Enlisted Promotions Section that, among other things, it "needs to re-evaluate [GySgt Pettiford's] naval record . . . ." As I assume you noticed, the advisory opinion gives no indication, directly or by implication, that the Marine Corps did so.

2

**The 1999 ERSB**

The advisory opinion makes it clear that the 1999 ERSB was invalid. No effort was made to compare GySgt Pettiford's record with any other Marine's record—a question the Board specifically (and properly) asked in ¶ 3a of its June 23, 2006 letter. That the ERSB process even then was required to be comparative is clear from evidence we previously submitted—a Marine Corps website posting on this subject, a copy of which appears in the administrative record ("A.R.") that was filed with the District Court. *See* A.R. 191-92 (board weighs Marine's overall performance "against the performance of those originally selected for promotion").

The Board can make no informed judgment about the 1999 ERSB without more information about the Performance Index ("PI"). Precisely how are PIs calculated? What was GySgt Pettiford's PI? What PI was needed to be promoted? Paragraph 3a of the Board's June 23, 2006 letter made it clear that it needed details concerning the PI. The Marine Corps has not provided any. Simply to assert, as the advisory opinion does in ¶ 1, that the PI "is a statistics rating system" the intent of which was "to provide board members with a tool to statistically measure the performance of Marine being considered for promotion" adds nothing to the conversation. (The last sentence of ¶ 1 of the advisory opinion simply parrots back the leading question posed by the Board in the last sentence of ¶ 3a of the June 23, 2006 letter. Answers that do so are without probative value, and

10

leading questions such as the one cited suggest that the case is in fact not being afforded a fresh look.)

3

**The 2000-2001 ERSBs**

These boards were plainly invalid. They are examples of the Zen question, "What is the sound of one hand clapping?" As we read ¶ 4 of Major McLaughlin's memorandum, GySgt Pettiford's record was compared against only one Marine in respect of each of these years for First Sergeant and only one other Marine in respect of each of these years for Master Sergeant.[2] That makes a total of four comparison records. If so, why were we sent *10* Marines' records in 2004 when we asked for the records against which his was compared? *See* Letter from Teresa D. Ross, Head, Freedom of Information/Privacy Act Sections, Security Programs and Information Management Branch, to Eugene R. Fidell, July 11, 2003 (enclosed) (transmitting first five records; "We have *verified* that GySgt Pettiford was rated against *10* other Marines" during the ERSB held on or about November 16, 2001) (emphases added); *see also* A.R. 32 (copies of comparison records used in ERSB case of GySgt Pettiford "were already provided to Freedom of Information Act office at Headquarters Marine Corps"). This discrepancy with respect to a material fact is neither acknowledged nor resolved in the latest advisory opinion.

I request that the Board obtain from the Marine Corps and provide to us sanitized copies of the records of the Marines against which GySgt Pettiford's record was specifically compared in 2000 and 2001. I ask that the Board and we receive them in the form in which they were considered by the ERSB, and that they be labeled clearly so the Board and we can tell which were the comparison records for each of the 2000 reconsiderations (First Sergeant and Master Sergeant) and which were the comparison records for each of the 2001 reconsiderations (First Sergeant and Master Sergeant). Also, please have the Marine Corps submit separate copies of GySgt Pettiford's own record in the precise form in which it was considered by the 1999, 2000 and 2001 ERSBs.

Do I correctly understand the last sentence of ¶ 4 of the advisory opinion to state that every single Marine considered by the regular 2000

---

[2] For Major McLaughlin's account to be accurate, there would have been *two* different Marines' records for each year. This is because, according to him, the comparison records were those of Marines who had been selected. If a Marine had been selected for First Sergeant, he or she would not have even been considered for Master Sergeant, and hence his or her record would not have met Major McLaughlin's description for the comparison record used. [Footnote in original; renumbered.]

11

and 2001 First Sergeant and Master Sergeant Boards *was* selected? That cannot be correct, since data already in the record indicate that the FY01 selection rate was 62.8%. A.R. 141, 172. If the cited sentence was intended to refer to the records of Marines being afforded remedial consideration in respect of the 2000 and 2001 boards, then it appears to suggest that GySgt Pettiford's record was compared not with those of staff NCOs against whom he competed at the regular 2000 and 2001 boards, but with those of staff NCOs whose cases were also receiving *remedial* consideration by the very same ERSB—which would make the entire exercise circular. The comparison had to be with those whose records *were* properly considered by the original boards, not among those receiving remedial consideration.

But let us assume that the advisory opinion means what it seems to say in this respect. That would mean that, notwithstanding a 100% selection rate, GySgt Pettiford was still not selected. If that is the case, surely the Marine Corps should be required to furnish some explanation.

Alternatively, does the cited sentence of the advisory opinion mean only that there were some non-selects, but GySgt Pettiford's record was not compared with any non-select's record in either 2000 or 2001 for either First Sergeant or Master Sergeant?

Paragraph 2 of the advisory opinion asserts that an ERSB is not confined to any particular number of allocations. If so, the fact that the ERSB ranked GySgt Pettiford below the selectee with the lowest number of favorable votes was in fact the imposition of a limit. That is, if the comparison was indeed with the promoted Marine with the fewest favorable votes, and if the Marine receiving remedial consideration is deemed below that person, then the procedure by definition imposes a limit: the number previously selected by the regular board. Whether a Marine undergoing ERSB consideration is Fully Qualified is not a function of whether he or she ranked below the lowest-ranked selectee under the Best and Fully Qualified criterion. The methodology described by the advisory opinion was therefore at war with a central assertion in the advisory opinion: that there was no limit on how many ERSB candidates could be promoted, as the limit was literally built in. . . .

*Conclusion*

Based on the advisory opinion, the ERSB's decisions not to promote GySgt Pettiford cannot be sustained. Given the extreme passage of time, the continuing inadequacy or and discrepancies in the Marine Corps' submissions, and the defects that are already clear, the time has come for the BCNR either to direct a new ERSB for the 1999, 2000 and 2001 promotion boards or to recommend that the Secretary promote GySgt Petti-

12

ford to Master Sergeant effective November 1, 1998 without further delay. As indicated in ¶ 4 of my letter to you dated December 29, 2003, A.R. 24, 26, there is no rational basis, based on the comparison records previously furnished to us and supplied by us to the BCNR, on which to conclude that GySgt Pettiford would have been found in the do-not-promote category for each of the boards the ERSB was to have replicated based on his correct record. . . .

41. On November 16, 2006, without notice to GySgt Pettiford, the BCNR asked agency counsel handling the litigation in this Court whether Navy Litigation would support affording GySgt Pettiford another remedial consideration for promotion to pay grade E-8, and was told that Navy Litigation would not do so.

42. On November 20, 2006, counsel for GySgt Pettiford responded in depth to the last of the Marine Corps' advisory opinions, pointing out, among other things—

(a) "it would be amazing" if every one of the 199 Marines who was selected by the 1999 regular selection board with a PI between 8.80 and 9.00 ranked above him (with an 8.95 PI), "given anything approaching a normal distribution"; and

(b) as to the 2000 and 2001 regular selection boards—

(i) it was impossible to find a rational basis for distinguishing GySgt Pettiford's record from those of Marines who were promoted; and

(ii) the ERSB failed to examine the fitness reports—the key document in competitive military promotions—of the Marines with whom GySgt Pettiford was compared;

43. On July 16, 2007, the BCNR again denied GySgt Pettiford's application. Its decision recited:

> The Board found it unobjectionable that a performance index (PI) was used for the CY 1999 ERSB, noting the PI was not used alone, but in conjunction with your Official Military Personnel File. The Board found the information MMPR-2 provided about the use of the PI was sufficient. The Board found the MMPR-2 advisory opinion dated 2 August 2006 was correct as to the number of Marines with whom you were compared, despite the

13

indications, in the enclosure to your counsel's letter of 17 August 2006, that the CY 2001 ERSB rated you against 10 other Marines. In this regard, the Board considered MMPR-2 a more reliable source within HQMC, for this purpose, than the Head, Freedom of Information/Privacy Act Sections, who provided the enclosure to counsel's letter. Further, the Board considered it unlikely that MMP_R-2 would have understated the number of records with whom yours was compared, when asserting a larger number could have bolstered the validity of the proceedings in question. The Board found that every Marine considered by the regular CY 2000 and 2001 First Sergeant and Master Sergeant Selection Boards who was in your military occupational specialty was selected for promotion, whereas the overall selection rate was much lower. The Board did not agree with your argument that your not having been selected by the ERSB's was inconsistent with the principle that ERSB's are not limited to a particular number of allocations.

Finally, the Board found your record for all three ERSB's in question included the following substantial information supporting their determination not to select you for promotion: service record page 11 ("Administrative Remarks (1070)") counseling entries dated 12 October 1984 and 9 December 1985; derogatory fitness reports for 19 October to 20 December 1982 and 1 April to 29 October 1983; and nine fitness reports showing peers ranked above you (20 January to 31 March 1983, 16 December 1983 to 13 April 1984, 14 April to 28 August 1984, 1 April to 7 August 1985, 31 July to 31 October 1987, 17 June to 31 December 1989, 1 January to 31 December 1990, 1 January to 3 August 1993 and 1 November 1997 to 30 September 1998).

## *Cause of Action*

44. The averments of ¶¶ 1-43 are incorporated herein.

45. The BCNR's 2007 decision is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law because—

(a) it sustains the ERSB's decision with respect to the 1999 regular selection board even though—

(i) not having the records of any other Marines before it, the only comparative information the ERSB relied on PIs and GySgt Pettiford's PI was higher than that of a Marine who was selected by the 1999 regular selection board; and

(ii) numerous Marines with PIs as low as 8.80 were selected;

14

(b) it sustains the ERSB's decision with respect to the 2000 and 2001 regular selection boards based on matter in GySgt Pettiford's fitness reports even though neither the ERSB nor the BCNR conducted a comparison between those fitness reports and other records and the fitness reports of other Marines who were selected by the regular selection boards;

(c) it relies on the overall promotion rate in GySgt Pettiford's MOS, even though the overall promotion rate is irrelevant;

(d) it fails to resolve on the basis of substantial evidence a dispute between two Marine Corps offices as to how many Marines' records the ERSB actually compared with GySgt Pettiford's;

(e) it approves the ERSB's comparison of GySgt Pettiford with the successful candidates with the fewest votes for promotion, even though that practice violates the core ERSB criterion that a Marine need only be Fully Qualified in order to be remedially promoted; and

(f) the BCNR abdicated its statutory responsibility by deferring, without notice to GySgt Pettiford, to the Navy's uniformed litigation counsel on the central issue of whether to require the ERSB to reconsider GySgt Pettiford's case.

*Prayer*

WHEREFORE GySgt Pettiford prays that the Court set aside the decisions of the ERSB and BCNR and direct the Secretary to correct his record to show that he was promoted to Master Sergeant as of the date he would have been promoted if selected by the 1999 regular selection board.

If for any reason the Court does not grant the principle relief for which GySgt

15

Pettiford prays in the preceding paragraph, then it should remand with instructions that the ERSB and BCNR reconsider this case in accordance with the law and without committing the errors noted in ¶ 45 above, and that the Secretary complete the proceedings on and file with the Court the results of such a remand no later than 90 days from the date of judgment.

                Respectfully submitted,

                /s/
                EUGENE R. FIDELL (112003)
                MATTHEW S. FREEDUS (475887)
                FELDESMAN TUCKER LEIFER
                  FIDELL LLP
                2001 L Street, N.W., 2d Floor
                Washington, D.C. 20036
                Tel    (202) 466-8960
                Fax   (202) 293-8103

                *Attorneys for Plaintiff*

January 23, 2008