# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD )
                                )
             Plaintiff, )
                                )
            v. )           Civil Action No: 05-2082 (ESH)
                                )
SECRETARY OF THE NAVY )
                                )
             Defendant. )
                                )

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. Alternatively, Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

In support of this Motion, Defendant respectfully submits the attached memorandum of points and authorities, the Administrative Record filed contemporaneously with this motion, the attached exhibits, a statement of material facts not in genuine dispute, and a proposed order.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C.  Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
BRIAN C. BALDRATE,
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895


*Attorneys for Defendants*

Of Counsel:
LCDR MARC S. BREWEN
Navy General Litigation Division
Washington Navy Yard, Washington, DC

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD          )
                              )
          Plaintiff,          )
                              )
     v.                       )          Civil Action No: 05-2082 (ESH)
                              )
SECRETARY OF THE NAVY         )
                              )
          Defendant.          )
                              )

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Since 1994, Plaintiff, Gunnery Sergeant (Retired) Maurice B. Pettiford, United States Marine Corps ("Plaintiff") has initiated numerous administrative challenges pertaining to his failure to be selected for promotion in the enlisted ranks of the U.S. Marine Corps. Plaintiff's current challenge, now judicial in nature, relates to the sixth time that the Board of Corrections for Naval Records ("BCNR" or "Board") has reviewed and made determinations related to Plaintiff's service record, requests for promotion, and corresponding increases in pay. More specifically, Plaintiff brings this suit seeking to set aside the July 16, 2007 decision of the BCNR. In this decision, after careful review of the evidence, the BCNR found the evidence insufficient to establish material error or injustice in the Enlisted Remedial Selection Board's ("ERSB") decision not to select Plaintiff for remedial promotion to Master Sergeant, (E-8).

This Complaint alleges that the BCNR's July 16, 2007 decision to affirm the ERSB's decisions not to select Plaintiff for remedial promotion was arbitrary and capricious, unsupported by substantial evidence, and contrary to law (Amend. Compl. at 14, ¶ 45.) Plaintiff seeks to have

the decisions of both the BCNR and the ERSB set aside with instructions to have the ERSB and

BCNR review Plaintiff's record again with a view towards remedial selection. (Id. at 15-16.)

Plaintiff's involvement with the BCNR began when Plaintiff failed to be selected for

regular promotion to Gunnery Sergeant (E-7), for the calendar years (CY) 1993, CY 1994, and

CY 1995 selection boards. (Amended Compl. ¶ 4.) Plaintiff then filed a petition with BCNR

requesting the removal from his Official Military Performance Record ("OMPF") all records

pertaining to a non-judicial punishment ("NJP") he received in 1992. (Compl. ¶ 5); see also (AR

at 303.) On April 16, 1996, the BCNR granted Plaintiff's relief and allegedly removed all

documents referring to the 1992 disciplinary action from his OMPF. (AR at 321.) In 1996, the

Marine Corps selected Plaintiff for promotion to Gunnery Sergeant (E-7) by a regular selection

board. (Amended Compl. ¶ 7.) In 2000 and 2001 Plaintiff was considered, but not selected, for

regular promotion to Master Sergeant (E-8). (Amended Compl. ¶ 9.) During that time Plaintiff

discovered that an electronic document incorrectly remained in his record reflecting the

disciplinary action that the BCNR previously attempted to delete from his OMPF. (AR at 268.)

Responding to an additional request from Plaintiff, the BCNR again directed that the reference to

his disciplinary infraction be removed from the electronic version of his record, but refused

Plaintiff's request that his promotion to Gunnery Sergeant (E-7) be backdated to 1993. (AR at

260, 321.) However, pursuant to a subsequent request from Plaintiff, an ERSB backdated

Plaintiff's promotion date to Gunnery Sergeant (E-7) to 1994 and the BCNR granted him

backpay. (Amended Compl. ¶ 16, 18.) With his backdated date of rank, Plaintiff was considered

for remedial promotion to Master Sergeant (E-8) by ERSBs for CY1999, CY2000, and CY2001.

(Amended Compl. ¶ 19.) At the E-8 paygrade, two positions are available for a Marine to be

promoted, Master Sergeant and First Sergeant.  Both positions are the same paygrade.  Although

Plaintiff indicated a preference for Master Sergeant, to ensure equity, Plaintiff was first

considered for First Sergeant, then Master Sergeant, before each of the three ERSBs. (Supp AR

at 19.)  Although Plaintiff was considered for promotion to First Sergeant (E-8) and to Master

Sergeant (E-8) before the CY 1999, CY 2000, and CY 2001 ERSBs, Plaintiff failed to be

selected for promotion by any of these boards. (Amended Compl.¶ 19).  After unsuccessfully

appealing to the BCNR for remedial promotion to Master Sergeant (E-8)  (Amended Compl ¶¶

26 27) Plaintiff filed his initial Complaint before this Court.  In April 2006, this Court granted

Defendant's Motion to Voluntarily Remand Plaintiff's case back to the BCNR.  On July 16,

2007, a three-member panel at BCNR denied Plaintiff's application  (Suppl AR at 3-5) and

Plaintif renewed his Complaint in this Court.

## SUMMARY OF ARGUMENT

In its simplest form this case involves Plaintiff's refusal to accept that the Marine Corps

selection process has determined him unqualified for promotion to serve as a Master Sergeant

(E-8) in the United States Marines.  Plaintiff continues to refuse to accept the BCNR's reasoned

and informed decision to not promote Plaintiff to Master Sergeant (E-8).  Plaintiff, through his

Amended Complaint, is essentially asking this Court to invade the province of the Agency and

its employment practices.  Plaintiff fails to state a claim for which relief can be granted under the

APA and his Amended Complaint must be dismissed because it improperly attempts to impose

duties and obligations upon the BCNR that are not required by law or regulation, and it seeks to

have this Court invade the confidentiality of the selection board proceedings.  The July 16, 2007

decision of the BCNR demonstrates that the Board carefully considered all prevailing facts and

relevant documentation.  Likewise, the decision provided a detailed explanation for BCNR's

action, including a reasoned connection between those facts and the ultimate decision that there

was no material error or injustice related to the Marine Corps' promotion decisions involving

Plaintiff.  Specifically, the BCNR upheld the Navy's CY 1999 ESRB decision not to promote

Plaintiff in 1999 despite the fact that Plaintiff's Performance Index ("PI") was higher than that of

some of the other Marines who were selected for promotion because in addition to the PI, the

ERSB was required (and did in fact) consider Plaintiff's properly constituted OMPF in non-

selecting Plaintiff for promotion.  After reviewing those materials as a whole, in conjunction

with the PI, the CY 1999 ERSB concluded, and the BCNR sustained the finding, that Plaintiff

was not "fully qualified" to be promoted to Master Sergeant (E-8). Similarly, the BCNR upheld

the ESRB's CY 2000 and CY 2001 decisions based on evidence that the ERSB followed he

proper procedures including the precept. The sworn ERSB decisions, and the presumption of

regularity of these government decisions in the absence of evidence to the contrary, demonstrates

that BCNR's conclusion was rational and supported by the record, and not arbitrary and

capricious, or contrary to law or regulation.

## STATEMENT OF FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material

Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## ARGUMENT AND LEGAL ANALYSIS

**A**.    **Plaintiff's Amended and Supplemental Complaint Fails to State a Claim Upon Which Relief Can be Granted.**

**1.**    **Standard of Review for Dismissal**

On a motion to dismiss for failure to state a claim upon which relief can be granted

4

pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead

"enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355

U.S. 41, 47 (1957)); see also In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing

Twombly).  Hence, the focus is on the language in the complaint, and whether that language sets

forth sufficient factual allegations to support plaintiff's claims for relief.

This Court must construe the factual allegations in Plaintiff's Complaint in the light most

favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived

from the facts as they are alleged in the complaint.  Barr v. Clinton, 370 F.3d 1196, 1199 (D.C.

Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

However, the Court need not accept any inferences or conclusory allegations that are

unsupported by the facts pleaded in the Complaint.  Kowal, 16 F.3d at 1276.  Moreover, the

Court need not "accept legal conclusions cast in the form of factual allegations."  Id.

## 2.    The Relief Sought by Plaintiff is not Justiciable and Plaintiff's Claims should be Dismissed

Plaintiff's claims are subject to dismissal.  Plaintiff specifically requests this Court "to

correct his record to show that he was promoted to Master Sergeant as of the date he would have

been promoted if selected by the 1999 regular selection board."  (Amend Compl. at 15.)  In

essence Plaintiff seeks this Court to take action that the military, after extensive review and

consideration, sincerely concluded was not warranted.  Plaintiff's challenge to this military

personnel decision is not justiciable, and Plaintiff's Amended and Supplemental Complaint

should be dismissed.

5

Over 50 years ago, the United States Supreme Court aptly noted:

> Judges are not given the task of running the Army. The
> responsibility for setting up channels through which [complaints of
> discrimination, favoritism, and other objectionable conduct] can be
> considered and fairly settled rests upon the Congress and upon the
> President of the United States and his subordinates. The military
> constitutes a specialized community governed by a separate
> discipline from that of a civilian. Orderly government requires that
> the judiciary be as scrupulous not to interfere with legitimate Army
> matters as the Army must be scrupulous not to intervene in judicial
> matters.

Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953). "The Constitution vests 'the complex, subtle,

and professional decisions as to the composition, training, equipping, and control of a military

force' exclusively in the legislative and executive branches." Kreis v. Secretary of the Air Force,

866 F.2d 1508 (D.C. Cir. 1989)(quoting Gilligan v. Morgan, 413 U.S. 1, 10 (1973)). Based upon

these principles, the Court of Appeals for this Circuit has held that a request for a retroactive

promotion is not justiciable because it would require a court to "second-guess the Secretary's

decision about how best to allocate military personnel in order to serve the security needs of the

Nation." Id.

Plaintiff seeks for this Court to direct the Secretary of the Navy to retroactively promote

Plaintiff to Master Sergeant. Such relief is not available to Plaintiff. Indeed, a request for

retroactive promotion "falls squarely within the realm of non-justiciable military personnel

decisions." Kreis, 866 F.2d at 1511. Thus, the Court is powerless to act insofar as Plaintiff asks

the Court to order his promotion to the rank of Master Sergeant. The authority to make that

decision lies exclusively with the Department of the Navy. Accordingly, Plaintiff's claims

should be dismissed.

6

### B.    Plaintiff's Challenge of the BCNR's July 16, 2007 Decision does not Survive Summary Judgment

#### 1.    Summary Judgment Standard

Under Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted. Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Because this case challenges a final administrative action, the Court's review is limited to the administrative record. Doyle v. England, 193 F. Supp. 2d 202, 206 (D.D.C. 2002) (citing Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended, 967 F. Supp. 6 (D.D.C. 1997)). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." Id. (citing Richards v. I.N.S., 554 F.2d 1173, 1177 n. 28 (D.C. Cir. 1977)). Judgment upon the administrative record is appropriate when there is "no genuine issue as to a material fact" so that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

#### 2.    The Administrative Procedure Act and Judicial Review of a Military Correction Board

Judicial review of military personnel decisions is not a *de novo* review of the underlying

7

issues.  Pursuant to the Administrative Procedural Act, 5 U.S.C. §706(2)(2000), "judicial review of the final decision of a military correction board is limited to a determination of whether the board's decision is 'arbitrary and capricious, contrary to law, or unsupported by substantial evidence.'" Roberts v. Harvey, 441 F. Supp.2d 111, 118 (D.D.C. 2006) (quoting Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997)).  The final decisions of military correction boards are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (citations omitted). "This high degree of deference arises from the statutory language authorizing a Secretary of a military department - acting through civilian boards - to correct military records 'when the Secretary considers it necessary to correct an error or remove an injustice.'" Roberts, 441 F. Supp. 2d at 119 (quoting 10 U.S.C. §1552(a)(1)(2000)).  Even more specifically, when it comes to review of the decisions by civilian boards of the military, the Kreis court reasoned:

> It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act 'when he considers it necessary to correct an error or remove an injustice,' 10 U.S.C. §1552(a), than it is if he is required to act whenever a court determines that certain objective conditions are met, i.e., that there has been an error or injustice.

Kreis, 866 F.2d at 1514.  Accordingly, policy considerations weigh heavily in favor of the Court giving the widest possible latitude to the armed services in the administration of personnel matters.  Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979).  Only the most egregious board decisions will fail this deferential standard of review.

When challenging a Secretary's decision not to change a record, a plaintiff has the burden of showing "by cogent and clearly convincing evidence" that the decision was the result of a material legal error or injustice.  See McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C.

8

1998);  Sanders v. United States, 594 F.2d at 813.  In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief.  "A party seeking review of a board decision bears the burden of overcoming 'the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correct, lawfully and in good faith.'" Roberts, 441 F. Supp. 2d at 118 (quoting Frizelle, 111 F.3d at 177).  Even more specifically, a party challenging the decision of a board must establish that the board did not consider or respond to an argument that did not appear to "frivolous on its face and could affect the board's ultimate disposition."  Roberts, 441 F. Supp.2d at 119 (D.D.C. 2006) (quoting Frizelle, 111 F.3d at 177).

In short, the Court's task in reviewing military personnel decisions under the APA is to determine whether "the decision making process was deficient, not whether [the] decision was correct." Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) (quoting Kreis, 866 F.2d at 1511).  Upon careful review of the BCNR's July 16, 2007 decision, the actions of the BCNR were in accordance with law and not deficient in any respect; thus, the July 16, 2007 decision should be upheld and summary judgment should be granted against Plaintiff.

### 3.    The Board of Correction of Naval Records and Decision-Making

### (a)    Purpose and Authority

The BCNR is established and composed under 10 U.S.C. §§ 1034 and 1552.  See 32 C.F.R. § 723.2.  The Secretary of the Navy is governed, in the correction of military records, by 10 U.S.C. § 1552, which states in pertinent part:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.  Except as provided in paragraph (2), such corrections shall be made by the

> Secretary acting through boards of civilians of the executive part
> of that military department.

10 U.S.C. § 1552(a)(1) (2005).  And:

> Corrections under this section shall be made under procedures
> established by the Secretary concerned.

10 U.S.C. § 1552(a)(3) (2005).  The BCNR's powers are delineated by 32 C.F.R. §§ 723.1-.11.

The Code of Federal Regulations sets up procedures for correction of Naval and Marine records

by the Secretary of the Navy acting through the BCNR to remedy error or injustice. 32 C.F.R. §

723.1.

### (b)    General Procedures of the BCNR

The Secretary of the Navy has promulgated procedures for making application and the

consideration of applications for correction of military records through the BCNR.  These

procedures are set forth in Secretary of the Navy Instruction ("SECNAVINST") 5420.193

(November 19, 1997)[1].  The BCNR's function is to consider applications properly before it for

the purpose of determining the existence of error or injustice in the naval records of current and

former members of the Navy and Marine Corps, to make recommendations to the Secretary or to

take corrective action on the Secretary's behalf when authorized.  Id. at Enclosure (1).

Once the Secretary fairly considers all the evidence in the record, he is "free to draw his

own reasonable inferences and conclusions from the evidence before him."  See Mudd v.

Caldera, 134 F. Supp. 2d 138, 143 (D.D.C. 2001) (citing Mail Order Ass'n of America v. United

---

[1] See Defense Ex. 3.  Defendant's initial Motion to Dismiss, or in the alternative, for Summary Judgment, R#6, contained three Defense Exhibits (and a proposed order improperly labeled Defense Ex. 4). For clarity, Defendant re-attaches those three exhibits previously filed in the initial Motion to this Motion as Defense Exs. 1, 2, and 3, respectively.  Exhibits originating with this current Motion begin at Defense Ex. 4, and proceed sequentially.

States Postal Serv., 2 F.3d 408, 421 (D.C. Cir. 1993)).  All the Secretary must do is provide a

rational explanation for the decision based on the administrative record.  See 5 U.S.C. §§

706(2)(A), 706(2)(E); Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43

(1983); Frizelle, 111 F.3d at 176; Kreis, 866 F.2d at 1514-15; Miller v. Lehman, 801 F.2d 492,

497 (D.C. Cir. 1986).

<b>(c)    Specific Action of the BCNR and Decision Requirements</b>

Where, like the case at bar, the Secretary denies relief, federal regulations require that the

Secretary put that decision in writing.  Moreover, unless a Secretary expressly adopts, in whole

or in part, the findings, conclusions, and recommendations of the board then he or she must

include a "brief statement of the grounds for denial." 32 C.F.R. § 723.7.  That statement:

> shall include the reasons for the determination that relief should not be granted,
> including the applicant's claims of constitutional, statutory and/or regulatory
> violations that were rejected, together with all the essential facts upon which the
> denial is based, including, if applicable, factors required by regulation to be
> considered for determination of the character of and reason for discharge.
> 32 C.F.R. § 723.3(e)(4).

The Board is required to respond to arguments raised by a plaintiff, which do not appear

frivolous on their face and could affect the Board's ultimate disposition.  See Calloway v.

Brownlee 366 F. Supp. 2d 43 (D.D.C. 2005).

A reviewing court should "uphold a decision of less than ideal clarity if the agency's path

may reasonably be discerned."  Miller v. Lehman, 801 F.2d at 497 (citing Bowman Transp., Inc.

v. Arkansas-Best Motor Freight System, 419 U.S. 281, 286 (1974)).  All that is required is that

the agency's decision "minimally contain a rational connection between the facts found and the

choice made."  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (1983); Fluellen v. United States, 44

Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir. 2000).  In addition, "if the necessary

11

articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, [the court] will make the reference." Miller, 801 F.2d at 497 (quoting Environmental Defense Fund, Inc. v. EPA, 465 F.2d 528, 537 (D.C. Cir. 1972)).

The BCNR may deny a petition without a hearing if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice. 32 C.F.R. § 723.3(e)(1)&(2). In making that decision, the BCNR may rely on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. 32 C.F.R. § 723.3(e)(2).

### (d)    The BCNR Acted Properly in Reviewing Plaintiff's Petition

Plaintiff claims that the BCNR's action was arbitrary and capricious because Plaintiff mistakenly believes that the Marine Corps' review of his record for promotion, which was reviewed and accepted by BCNR, was not in accordance with applicable law and regulation. In this case, after a full review of the entire record, including all of Plaintiff's submissions, the BCNR denied Plaintiff's petition without a hearing. The BCNR provided a detailed rationale for its decision and the BCNR responded to the various items raised by Plaintiff that could have affected the disposition. The BCNR ultimately denied Plaintiff's petition because the evidence before it was insufficient to establish the existence of probable material error or injustice. (Supp. AR at 4.)

The extensive administrative record, including a substantial amount of information obtained by the BCNR from Headquarters Marine Corps (HQMC) Enlisted Promotion Section

12

(MMPR-2), validates the BCNR's decision.  The BCNR's methodical request for information

and careful review of such information reflects that BCNR sought to understand the Marine

Corps' decision and to consider relevant factors in ruling upon Plaintiff's petition.  This Court

has previously favorably endorsed such action by the BCNR.  In finding that the decision of the

BCNR pertaining to the promotion and corresponding fitness reports of a naval officer was not

arbitrary, capricious, or an abuse of discretion, the Court reasoned:

> [p]rior to making its decision, BCNR solicited opinions from
> Head of the Performance Evaluation Branch of the Navy
> Personnel Command and the Director, Officer Promotions,
> Appointments and Enlisted Advancements Branch of the Navy
> Personnel Command, both of whom found no fault with the
> fitness reports in question. [Citation omitted.] This solicitation
> of opinions demonstrates that BCNR considered relevant
> factors in arriving at its decision and the court cannot discern a
> clear error in BCNR's application of Navy regulations, as
> permissibly interpreted.  Further, the plaintiff does not point to
> any procedural error by BCNR, nor does he list any previous
> BCNR decision which contradicts BCNR's decision in the
> present case.  Without these, the court cannot justifiably
> conclude that BCNR's decision is arbitrary, capricious or an
> abuse of discretion. [Citation omitted.]

Stem v. England, 191 F. Supp.2d 1, 5 (D.D.C. 2001); see also Lassalle v. Geren, 2007 U.S. Dist.

LEXIS 31056 at *13-14 (D.D.C. April 27, 2007) (upholding decision of the Army Board for

Correction of Military Records after board conducted extensive review of previous action);

Smith v. Peters, 2007 U.S. Dist. LEXIS 6980 at *12-13 (D.D.C. May 5, 1999) (upholding

decision of Air Force Board for Correction of Military Records after board carefully considered

recommendations of the Chief, Appeals and Analysis Branch pertaining to criticism of the

plaintiff's performance by raters).

Likewise, nothing supports a finding in the case at bar that the BCNR acted improperly

or that its decision is not supported by the evidence. Plaintiff sought and obtained various levels of extensive review. Plaintiff even engaged in extensive and substantive dialogue with Department of the Navy officials during BCNR's review of his latest petition and before the BCNR's July 16, 2007 decision. The record confirms that Plaintiff was accurately considered for promotion to Master Sergeant for CY 1999, CY 2000, and CY 2001 and that the BCNR provided a detailed review in affirming that promotion process. As such, Plaintiff's claims fail and are subject to summary judgment.

### 4. Plaintiff's Specific Challenges Fail

On April 16, 2006, this Honorable Court granted Defendant's Motion to remand this case to the BCNR. In turn, the BCNR requested advisory opinions from Headquarters Marine Corps, Manpower and Reserve Affairs Department (MMPR-2) to properly conduct its review of Plaintiff's application. MMPR-2 is tasked with conducting Marine Corps ERSBs and specifically was in charge of Plaintiff's CY 1999, CY 2000, and CY 2001 ERSBs.

An ERSB is an advisory board that provides advice to the Commandant of the Marine Corps on Noncommissioned Officer remedial promotion cases. In January 1999, the Marines made significant changes in the Marine Corps Performance Evaluation System. These changes allowed fitness reports to provide a more complete description of a Marine's performance. (Supp. AR 17.) As a result the process for all ERSBs conducted after CY 1999 changed to require ERSB board members to compare the OMPF of the Marine being considered against those who competed for performance with his respective speciality. (Id.). MCO 5420.16C, (Defense Ex. 2), is a Marine Corps order that set forth the procedures governing Plaintiff's CY 1999, 2000, and 2001 ERSBs. This order mandates that the ERSBs be guided in their decision

14

by the Precept[2], procedural rules, policies and regulations in effect when the respective regularly scheduled promotion selection board was in session. (Defense Ex. 2, Encl. 1.)  The order further states that Marines must receive a majority vote of the members of the ERSB to be selected, and requires that the ERSB complete a written report signed by all the members stating that the board complied with all instructions and guidance furnished to the board. (Id.)  The order does not require the ERSB to provide  an explanation of specifically why a Marine was selected or non-selected and prohibits board members from disclosing the proceedings. (Id.)

An August 2, 2006 Advisory Opinion from MMPR-2 discussed in great detail Plaintiff's CY 1999, CY 2000 and CY 2001 ERSBs. (Supp. AR 18-20.)  This Advisory Opinion explained how and why Plaintiff was reviewed for First Sergeant and Master Sergeant in all three calender years.  The opinion also described how Plaintiff's OMPF was adjusted to reflect only the contents that existed during each of the years for which he was considered in direct contrast to Plaintiff's repeated allegations and conjecture that this administrative task was impossible. (Supp. AR at 19.)  It also discussed the comparison process Plaintiff's record received before the different ERSBs.

The Precept, dated November 15, 2001, that convened all three ERSBs in question reflected the difference between the procedurs of the CY 1999 ERSB with that of the ERSBs for CY 2000 and CY 2001.  The pertinent section states:

> The remedial selection board shall consider the official military personnel records of the Marines as their records would have appeared before the regularly scheduled selection board.  That

---

2

 A Precept is the document that assigns members to the board and instructs them on selection criteria. The Precept followed in Plaintiff's CY 1999, CY 2000, and Cy 2000 ERSBs is found at AR 329-31.

record can be compared with the records of those Marines of the same competitive category who were recommended for promotion, using the performance index.  For CY 2000 and CY 2001 selection boards, the record will be compared to the record of the selected Marine who received the lowest number of votes among those who were selected in the same competitive category, which will be furnished along with the record of the Marine who is considered by the remedial board.  Based upon the record and other information submitted, the board shall recommend for promotion Marines who are fully qualified for promotion and capable of assuming the duties of the next higher grade.

(AR at 330.)

### a. The BCNR's Sustainment of  the CY 1999 ERSB Decision was not arbitrary or capricious.

The relevant language from the Precept for the CY 1999 ERSB states that "the remedial selection board **shall** consider the **official military personnel records** of the Marines as their records would have appeared before the regularly scheduled selection board.  That record can be compared with the records of those Marines of the same competitive category who were recommended for promotion, **using the performance index".** (AR at 330) (emphasis added). Plaintiff argues a PI was the only comparative measurement used by the CY 1999 ERSB and since Plaintiff had a higher PI than some who were selected, he should have also been selected. (Amended Compl. ¶ 45(a).)  Plaintiff's argument stubbornly ignores the July 16, 2007 BCNR opinion and the April 11, 2006 and August 2, 2006 Advisory Opinions issued by MMPR-2. (Supp. AR at 3-5, 16-20.)  Plaintiff suggests that because he had a PI in the range of 8.80-9.00 and was not promoted, and another Marine was promoted with a lower PI, the ERSB's results must be irrational. (Amended. Compl. ¶¶ 34-38, 42(a).)  Yet, despite Plaintiff's repeated statements to the contrary, the PI was not the only factor considered by the CY 1999 ERSB.

16

(Supp. AR at 4.)  Rather, as spelled out in great detail, Plaintiff's OMPF was also relied upon by selection board members in determining Plaintiff's fitness for promotion.  Though ignored by Plaintiff, a Marine's service record is of great importance as it reflects his entire career performance. The advisory opinions considered and relied upon by BCNR support such a conclusion.

> When Gunnery Sergeant Pettiford received remedial consideration for the CY 1999 SgtMaj through Master Sergeant Selection Board, his Official Military Personnel File (OMPF) was the official record used by the board members to determine promotion selection.

(Suppl. AR at 16.)

> Prior to CY 2000 ERSBs, the only OMPF the board was privileged to view was the Marine being considered.  Therefore, the focus of effort by board members to make a decision to promote a Marine to the next higher grade would have been based on the Marine's OMPF and leadership experience in their respective roles as senior Marines.

(Suppl. AR at 18). If Plaintiff's argument were correct and PI's were the only thing that mattered for promotion, than there would be no need for a promotion selection board at all as the Marines with the highest PIs would simply be selected for promotion.  Plaintiff's mistaken belief that a PI is the sole criteria for promotion is refuted by the actual promotion numbers for the regular promotion boards for CY 1999.  For the CY 1999 First Sergeant Board, 1002 Marines had PIs between the range of 9.00- 8.80.  However, only 179 Marines were selected, less than a 20% selection rate. (See Defense Ex. 4).  Similarly, of the 34 Marines eligible for Master Sergeant in Plaintiff's specialty in CY 1999 with a PI of 9.00-8.80 only 20 were selected, less than a 60 % selection rate.  Given this data, Plaintiff cannot credibly suggest, as he repeatedly does, that promotion boards may only rely on PIs to evaluate Plaintiff's suitability for promotion.

The Precept for the CY 1999 directed the ERSB board members to "consider the official

17

military personnel records of the Marines as their records would have appeared before the regularly scheduled selection board. That record can be compared with the records of those Marines of the same competitive category who were recommended for promotion, using the performance index." (AR at 330.) If there were any doubt about whether the ERSB properly performed its duty in following the Precept and considering both Plaintiff's PI and his OMPF, that answer was resolved when the ERSB board itself swore that it followed the rules set forth in the precept requiring it to consider the OMPF in addition to the PI. The board members' sworn signature states: "The selection board members read the Precept and received, from the Commandant of the Marine Corps, the names and records of those Marines eligible for promotion. The selection board considered the cases of all personnel presented for review and complied with all instructions . . ." (AR 332-33). Given this evidence, the presumption of regularity, and the lack of any evidence to the contrary, the BCNR properly concluded that the CY 1999 ERSB correctly followed the guidance and authority of the precept in carrying out its duties. (Suppl AR at 18-19.)

Although we will appropriately never learn the CY 1999 ERSB's exact reasons for Plaintiff's non-selection, the BCNR noted a perfectly rationale explanation for Plaintiff's non-selection, notwithstanding Plaintiff's high PI; Plaintiff had substantial negative information contained in his OMPF. (Suppl. AR at 4-5.) Much of this data relates to comments prior to 1999 and would have been reviewed by the CY 1999 ERSB. In accordance with regulations, the CY 1999 ERSB was properly conducted by assessing the PI in conjunction with the Plaintiff's OMPF. A clear and rational basis for the BCNR's decision review of the CY 1999 ERSB exists and all of Plaintiff's claims relating to it should be dismissed.

18

### b. No substantial error or prejudice exists as to the CY 2000 and CY 2001 ERSBs

In making their decision to deny Plaintiff additional relief, the BCNR reviewed the procedures, material, and regulations followed by CY 2000 and CY 2001 ERSBs. In that light, in July 2007, the BCNR considered all relevant materials before it, submitted by both parties and found the evidence insufficient to establish the existence of probable material error or injustice. (Supp. AR at 3.) The Precept for CY 2000 and CY 2001 modified the practice of the CY 1999 ERSB of relying on the performance index and required the CY 2000 and CY 2001 ERSBs to compare Plaintiff's record against the record "of the selected Marine who received the lowest number of votes among those who were selected in the same competitive category."( AR at 330.)[3] Plaintiff argues that comparing Plaintiff's application with the regular selectee with the fewest favorable votes imposes a de facto limit on who may be promoted at an ERSB. (Amended Comp. at 12); (Supp. AR at 24.) Contrary to Plaintiff's argument, such a comparison does not create a limit. (See Supp. AR 4) (BCNR rejecting Plaintiff's contention that his non-selection demonstrates de facto limit). The flaw in Plaintiff's argument is that he fails to acknowledge that ERSB board members do have discretion when selecting a "fully qualified" Marine. The Precept does not require the ERSB to determine that the Plaintiff would have received the same number of votes as the comparison Marine. (AR 330-31). The Precept also does not mandate that the Plaintiff's record compare more favorably or rank higher than the comparison Marine's record. (Id.) Instead, the comparison Marine's record provides a

---

[3] This Court recently found that it is not within the province of the Court to question personnel policy changes, which would presumably include the Marine Corps' change relating to the materials to be considered by ERSBs for CY 1999 and CY 2000. Giel v. Winter, 503 F. Supp.2d 208, 216 (D.D.C. 2007).

benchmark measurement of one Marine who was selected for promotion by a previous board, whom Plaintiff would have competed against at that year's regular board. In addition to the comparison of that one Marine's record, Plaintiff's own OMPF plays a vital role in the ERSB's promotion decision because Plaintiff's OMPF reflects his leadership experience, potential, and performance. It makes sense that the Precept requires ERSBs to consider Plaintiff's OMPF when considering whether he should be selected to the rank of a senior non-commissioned officer tasked with leading young Marines and directly advising a commander.

Again, the ERSB board members for CY 2000 and CY 2001 swore that they followed the rules set forth in the Precept directing board members to "consider the official military personnel records of the Marines as their records would have appeared before the regularly scheduled selection board . . . compared to the record of the selected Marine who received the lowest number of votes among those who were selected in the same competitive category. (AR 330, 332-33.) Given that the ERSB members swore they considered Plaintiff's OMPF, and followed the dictates of the Precept, it can only be presumed Plaintiff's OMPF was determined to be below the level of what the board considered sufficient for promotion to Master Sergeant (E-8).

Plaintiff submits no evidence to defeat the presumption of regularity under which the BCNR reviewed the CY 2000 and CY 2001 ERSB decisions. Plaintiff's arguments simply reflect his unwillingness to accept his non-selection and his disapproval of the process set forth in the Precept. As there is no evidence to the contrary, there can be no genuine dispute that the CY 2000 and 2001 ERSBs compared Plaintiff's record to the record of the selected Marine receiving the lowest number of votes from the CY 2000 First Sergeant regular selection board, the CY 2000 Sergeant Major regular selection board, the CY 2001 First Sergeant regular

selection board, and the CY 2001 Master Sergeant regular selection board.); (Supp. AR at 18.)
In all, Plaintiff was compared against four separate and distinct Marines for the 2000 and 2001
ERSBs. (Supp AR 19.)  Each time Plaintiff failed to persuade a majority of the ERSB board that
he was "fully qualified" for promotion.

   Of course no party knows precisely what the CY 2000 and CY 2001 ERSB board
members discussed and the exact reason why a majority voted against promoting  Plaintiff.
Those matters are appropriately confidential. ERSB members take a solemn oath not to disclose
the proceedings or recommendations of the board pertaining to the selection or non-selection of
individual staff noncommissioned officers. (Defense Ex. 2, Encl 1, ¶ 1c(1)); see also,  In re
England, 375 F.3d 1169 (D.C. Cir. 2004) (protecting the confidentiality of commissioned officer
promotion selection board proceedings from disclosure for civil litigation purposes).  The ERSB
and the BCNR are prohibited from disclosing the exact reason for non-selection other than the
fact that an impartial panel after swearing an oath to perform its duty without prejudice or
partiality, having in mind the special fitness of staff non-commissioned officers, considered
Plaintiff unqualified for promotion to the next higher rank.  Given the evidence in the record,
including the sworn report from the ERSB members, the BCNR properly concluded that the
ERSB correctly followed the Precept in the absence of evidence to the contrary.  See Emory v.
Secretary of the Navy, 708 F. Supp.2d 1335, 1343 (D.D.C. 1989).  Because the evidence
demonstrates that the CY 2000 and CY 2001 ERSBs faithfully discharged their duties, the
BCNR properly concluded the evidence was insufficient to establish substantial error or
prejudice existed.

     **c.  No dispute exists that Plaintiff was compared against four Marines, one each at the First Sergeant and Master Sergeant CY 2000 and CY 2001 ERSBs.**

Plaintiff's counsel initiated a Freedom of Information ("FOIA") request for the OMPF files of the Marines against whom Plaintiff was allegedly compared at the CY 1999, CY 2000, and CY 2001 ERSBs shortly after Plaintiff learned in 2001 of his non-selection for promotion. On July 11, 2003, the FOIA/Privacy Act Division of the U.S. Marine Corps positively responded to Plaintiff.  The letter identified ten sanitized[4] OMPF records the FOIA/Privacy Act Division of the Marines "verified" were compared against Plaintiff before the CY 2000 and CY 2001 ERSBs[5] (Supp AR at 23, 25.)  It is the FOIA Divison's use of the word "verified" upon which Plaintiff wrongly relies to allege error and prejudice.  As discussed above, Plaintiff's record was compared to the one Marine who received the least number of votes for selection before each regular selection board in CY 2000 and CY 2001. (Supp. AR at 18.)  Accordingly, Plaintiff was compared against four Marines in total: one from the CY 2000 First Sergeant regular selection board, one from the CY 2000 Master Sergeant regular selection board, one from the CY 2001 First Sergeant regular selection board, and one from the CY 2001 Master Sergeant regular selection board.(Id.)

The Marine FOIA/Privacy Act Division contacted MMPR-2 to collect the responsive documents upon receipt of Plaintiff's FOIA request.  MMPR-2 is the sole division within the United States Marine Corps responsible for establishing, coordinating, and maintaining ERSBs

---

[4] Sanitized in accordance with the Privacy Act, 5 U.S.C. §552.

[5] The ten OMPF records are attached as Exhibits 4-14 to Plaintiff's Cross Motion for Summary Judgment, R. #8  filed with this Court on February 9, 2006.

and their records.  It was MMPR-2, the same division that issued the Advisory Opinions to

BCNR in this case, which Plaintiff argues contradicts the Marine FOIA/Privacy Act letter, that

produced the ten Marine OMPF records to the FOIA/Privacy Act Division for release.

Plaintiff's counsel sent an email to Brian George at the BCNR on December 2, 2006.

(Supp. AR at 59-63.)  Plaintiff's counsel thanks Mr. George for forwarding an email response

from MMPR-2, sent November 27, 2006, addressing the concerns, now causes of action, of

Plaintiff as they related to his non-selection before the CY 1999, CY 2000, and CY 2001 ERSB.

Plaintiff's counsel broke MMPR-2's email response into individual issues, inserted Plaintiff's

personal responses, and then returned this email to Mr. George at BCNR for consideration. (Id.)

As detailed in that email, MMPR-2 provides a succinct explanation for the production of

the ten OMPF Marine records.  MMPR-2 explained:

> for the CY 2000 MSgt Sel Board the comparison (select) was Mcdonnell, Kevin
> J. and for CY 2001 the comparison case (select) was Herrington, Jerome.  Not
> being Head, Enlisted Promotion Section at the time, I do not know why multiple
> cases were archived at that time.  However, in order to answer, question 2(I)
> above, for the 1stSgt Selection boards, we are unable to identify which one of the
> cases archived (as indicated below) for each respective year (2000 and 2001)". (Id
> at 61.)

The email then lists the names of four Marines archived as comparison cases for the CY 2000

and the four Marines archived as comparison cases for the CY 2001 First Sergeant ERSB before

which Plaintiff's record was considered.  All eight of these archived records were released to

Plaintiff for his review.  Though the Marine Corps could not identify the exact Marine, it could

identify the archived records in which that Marine's comparison record was stored.  It therefore

released all eight of the records in a good faith effort to satisfy Plaintiff's FOIA request.  The

MMPR-2 produced all the records that were released to Plaintiff by the FOIA/Privacy Act

Division.  This straightforward explanation of why the ten Marine sanitized OMPF records were released to Plaintiff by the FOIA/Privacy Act Division is in the Administrative Record taken directly from Plaintiff's counsel's own email.  Although the FOIA/Privacy Act Division's use of the word "verified" was imprecise, the ten Marine comparison documents remain consistent with all of MMPR-2's Advisory Opinions.

While not specifically identified by name, since July 2003 Plaintiff has been in possession of the four Marines' records that he was compared against in the CY 2000 and CY 2001 ERSB.  Plaintiff submitted these ten OMPF records to the BCNR and requested they all be used as comparisons in its July 2007 review.  The BCNR correctly refused this request.  The BCNR appropriately considered, and then dismissed, any of Plaintiff's arguments focusing upon the ten records obtained under the FOIA because the 10 sanitized records would not provide the BCNR with a basis to determine that the CY 2000 and CY 2001 ERSBs' decisions resulted in an injustice.  While Plaintiff may compare, contrast, criticize, and speculate about the measure of those ten comparison records against his own, that is not the process established by the Marine Corps for conducting ERSBs.  Plaintiff has not demonstrated the Marine Corps deviated from any procedures in conducting the ERSBs.  Given the fact, Plaintiff cannot clearly establish that the BCNR's decision to uphold the confidential ERSB proceedings was arbitrary, capricious or contrary to law. Instead, Plaintiff invites this Court to simply step into the shoes of the ERSB board members and revisit the boards' decisions to see if it would come out another way.  This invitation should be rejected.

### d.  Plaintiff's Claim that the BCNR Abdicated its Statutory Responsibility is Without Merit

Plaintiff additionally argues that the BCNR "abdicated its statutory responsibility

by deferring, without notice to (Plaintiff), to the Navy's uniformed litigation counsel on the central issue of whether to require the ERSB to reconsider GySgt Pettiford's case." (Amended Compl. ¶ 45(f).)  While this matter is irrelevant to the question of whether the BCNR was arbitrary and capricious in its July 16, 2007 decision denying Plaintiff's application for relief, it is also completely inaccurate.

While Plaintiff cites no support for his accusation that BCNR "abdicated its statutory responsibility" Defendant assumes Plaintiff is referring to a memorandum for record from Mr. Brian George,  the Performance Section Department Head at the BCNR.  (Supp. AR at 42.)  This memorandum records a conversation initiated by the Mr. George with a Navy Civil Litigation attorney, Major Williams, USMC.  According to the memo, Mr. George called Major Williams and asked if Navy Civil Litigation supported sending Plaintiff's case to yet another ERSB. Major Williams responded in the negative.  The memorandum reflects that this conversation was held on November 16, 2006 after the Plaintiff had already filed suit and this Court had remanded the case back to BCNR for reconsideration. As a result of the litigation posture of Plaintiff's application, Navy counsel had already been extensively involved in Plaintiff's case. Accordingly, it was completely appropriate for Mr. George to seek Major William's opinion on his view of the case just as Mr. George had consistently received input from Plaintiff's counsel.

Mr. George is responsible for preparing and briefing cases to the BCNR.  Mr. George is not a voting member and did not vote in Plaintiff's case.  Instead, Mr. George prepares applications, such as Plaintiff's, for review.  He then briefs each application to the BCNR which in turn votes on whether or not to grant relief.  As part of his preparation to brief the BCNR Mr. George reaches out to counsel on both sides to determine their position on the status of the case.

25

In fact, the Administrative Record is saturated with letters and emails from Plaintiff's counsel to the BCNR, many specifically addressed to Mr. George. Plaintiff had extensive opportunity to present his position to the BCNR prior to the BCNR's decision. Indeed, Plaintiff's counsel addressed the BCNR after remand was granted but before it voted in July 2007. It is obvious that in his preparation Mr. George contacted Major Williams to inquire of the Defendant's position in this case much as he consulted with Plaintiff's counsel. There is nothing in the record which indicates whether this information was even presented to the Board, nor is it in any way relevant to whether the Board's decision was proper.

It is clear that there is no support in the record for Plaintiff's position that the BCNR, including Mr. George, and the voting members of the board, deferred to Navy Civil Litigation. Even a cursory review of the voluminous administrative record and its supplement reveals an Agency extremely responsive to the inquiries and demands of this Plaintiff. Upon remand, it is clear from emails that Navy counsel's concern was to ensure the issues legitimately raised by Plaintiff were fully addressed by the BCNR regardless of the relief recommended. (Suppl. AR at 8-9, 15.) There certainly is no evidence in the record to support any conclusion other than that the actions of BCNR were those of honorable professionals diligently carrying out their duties. Plaintiff's misplaced effort to cast doubt upon the BCNR's actions are refuted by the extensive fact-gathering and careful consideration given to Plaintiff in addressing his latest petition. This latest cause of action asserted by Plaintiff is meritless and should be dismissed.

## CONCLUSION

The BCNR considered Plaintiff's full application, including his personnel record, applicable statutes, regulations and policies, advisory opinions furnished by Headquarters

Marine Corps and letters submitted by Plaintiff's counsel.  The BCNR found that the evidence

submitted was insufficient to establish the existence of probable material error or injustice.

(Supp AR 4.)  The BCNR's determination was well supported by the record, was not arbitrary

and capricious, and was not contrary to the law.  Plaintiff did not rebut the presumption of

regularity under which the BCNR operates with anything other than hollow assertions predicated

in Plaintiff's unwillingness to accept his non-selection.

 For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed.  In the

alternative, the Court should grant Defendant's Motion for Summary Judgment.

    Respectfully submitted,

    _____/s/_____
    JEFFREY A. TAYLOR, D.C.  Bar # 498610
    United States Attorney

    _____/s/_____
    RUDOLPH CONTRERAS D.C. Bar # 434122
    Assistant United States Attorney

    _____/s/_____
    BRIAN C. BALDRATE,
    Special Assistant U.S. Attorney
    555 Fourth Street, N.W., 10th Floor
    Washington, D.C.  20530
    (202) 353-9895

    *Attorneys for Defendants*

Of Counsel:
LCDR MARC S. BREWEN
Navy General Litigation Division
Washington Navy Yard, Washington, DC

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

MAURICE B. PETTIFORD       )
                                         )
                    Plaintiff,     )
                                         )
            v.                )      Civil Action No: 05-2082 (ESH)
                                         )
SECRETARY OF THE NAVY     )
                                         )
                  Defendant.    )
                                         )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## WHICH ARE NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h) and in support of Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there are no genuine disputes.

1. Plaintiff is a retired Gunnery Sergeant (E-7) in the United States Marine Corps. (Amended Comp. ¶ 1.)

2. In 1990, Plaintiff obtained the rank of Staff Sergeant (E-6).  Plaintiff failed to be selected for regular promotion to the next higher rank, Gunnery Sergeant (E-7), for the calendar years (CY) CY 1993, CY 1994, and CY 1995.  (Amended Compl. ¶ 4.)

3. In 1994, Plaintiff filed a petition with BCNR requesting the removal from his Official Military Performance Record ("OMPF") all records pertaining to a non-judicial punishment ("NJP") he received in 1992. (Compl. ¶ 5), see also (AR at 303.)

4. On April 16, 1996, BCNR granted Plaintiff relief and attempted to remove all documents referring to the 1992 disciplinary action from his OMPF. (AR at 321.)

5. Plaintiff petitioned U.S Marine Corps to be considered for promotion to the rank of Gunnery

Sergeant (E-7) by an Enlisted Remedial Selection Board ("ERSB") for CYs 1993, 1994, and 1995. This request was granted. (Amended Compl. ¶ 6.)

6. In 1996, the Marine Corps selected Plaintiff for promotion to Gunnery Sergeant by a regular selection board. (Amended Compl. ¶ 7.)

7. On June 27, 1996, Plaintiff was informed the Marine Corps would not backdate his promotion to (E-7) because the CY 1993, 1994, and 1995 ERSBs failed to select him for promotion to Gunnery Sergeant (E-7). (AR at 245.)

8. In August 1996, Plaintiff petitioned the BCNR to backdate his 1996 regular promotion to Gunnery Sergeant to 1993 arguing that the presence of the 1992 NJP documents prevented his certain selection to Gunnery Sergeant (E-7) in 1993. (AR at 303.)

9. On March 18, 1997, the BCNR denied Plaintiff's request to backdate his promotion to 1993. (AR at 280.)

10. In 2000 and 2001 Plaintiff was considered, but not selected, for regular promotion to Master Sergeant (E-8). (Amended Compl. ¶ 9.)

11. In 2001, Plaintiff discovered that a reference to Plaintiff's past disciplinary action that the BCNR had previously ordered removed from all of Plaintiff's files incorrectly remained in an electronic version of Plaintiff's record. (AR at 268.)

12. On April 16, 2001, Plaintiff petitioned the BCNR again to request removal of the electronic version of the disciplinary infraction that was supposed to have been previously removed from his record. Plaintiff also requested that his date of rank for Gunnery Sergeant (E-7) be backdated to 1993, and that the BCNR promote him to Master Sergeant (E-8) without the need of an additional ERSB. (AR at 267-70.)

2

13.  On April 17, 2001, the BCNR directed that the referenced disciplinary infraction be removed from the electronic version of Plaintiff's record, and invited Plaintiff to petition for an additional ERSB. (AR at 260, 321.)

14.  In September, 2001 an ERSB backdated Plaintiff's promotion to Gunnery Sergeant (E-7) to November 1, 1994 and the BCNR granted him backpay.  (Amended Compl. ¶¶ 16, 18.)

15.  With his backdated date of rank to Gunnery Sergeant (E-7), Plaintiff was considered for remedial promotion to Master Sergeant (E-8) by ERSBs for CY 1999, CY 2000, and CY 2001. (Amended Compl. ¶ 19.)

16.  At the E-8 paygrade, two positions are available for a Marine to be promoted, Master Sergeant and First Sergeant.  Both positions are the same paygrade and both are Senior Non-Commissioned Officers. Marine Corps Promotion Manual, Vol. 2, § 3200, ¶ 5.

17.  Although Plaintiff indicated a preference for Master Sergeant (E-8), to ensure equity, Plaintiff was first considered for First Sergeant (E-8), then Master Sergeant (E-8), before the CY 1999, CY 2000, and CY 2001 ERSBs. . (Supp. AR at 19.)

18.  Plaintiff failed to be selected by the CY 1999, CY 2000, and CY 2001 ERSBs. (Amended Compl.¶ 19.)

19.  In  January 1999, the Marine made significant changes in the Marine Corps Performance Evaluation System. These changes allowed fitness reports to provide a more complete description of a Marine's performance.  (Supp. AR 17.)

20.  As a result of these changes the process for all ERSBs conducted after CY 1999 changed to require board members to compare the OMPF of the Marine being considered against those who competed for performance with his respective military specialty.  (Id.)

21.  MCO 5420.16C, (Defense Ex. 2), is a Marine Corps order that set forth the procedures

governing Plaintiff's CY 1999, CY 2000, and CY 2001 ERSBs.  (Defense Ex. 2, Encl. 1.)

22.  This order mandates that the ERSB be guided in their decision by the Precept[6], procedural

rules, policies and regulations in effect when the respective regularly scheduled promotion

selection board was in session. (Defense Ex. 2, Encl. 1.)

23.  The order further states that Marines must receive a majority vote of the members of the

ERSB to be selected and requires that the ERSB complete a written report signed by all the

members stating that the board complied with all instructions and guidance furnished to the

board. (Id.)

24.  The order does not require the ERSB to provide  an explanation of specifically why a

Marine was selected or non-selected and instead prohibits board members from disclosing the

proceedings . (Id.)

 25.  The Precept, dated November 15, 2001, that convened the ERSBs in question reflected the

difference between the process for the CY 1999 ERSB with that of ERSBs in CY 2000 and CY

2001.  The pertinent section sets forth:

> The remedial selection board shall consider the official military
> personnel records of the Marines as their records would have
> appeared before the regularly scheduled selection board.  That
> record can be compared with the records of those Marines of the
> same competitive category who were recommended for
> promotion, using the performance index.  For CY 2000 and CY
> 2001 selection boards, the record will be compared to the record
> of the selected Marine who received the lowest number of votes

---

[6] A Precept is the document that assigns members to the board and instructs them on
selection criteria. The Precept followed in Plaintiff's CY 1999 CY 2000 and CY 2001 ERSBs is
found at AR 329-31.

4

among those who were selected in the same competitive category, which will be furnished along with the record of the Marine who is considered by the remedial board.  Based upon the record and other information submitted, the board shall recommend for promotion Marines who are fully qualified for promotion and capable of assuming the duties of the next higher grade.

(AR at 330.)

26.  Plaintiff petitioned the BCNR for remedial promotion to Master Sergeant (E-8) on November 23, 2001.  (Amended Compl ¶ 20.)

27.  The BCNR received three advisory opinions from Marine Corps' Headquarters dated January 16, 2002, June 20, 2002 and October 16, 2002.  (AR 17-23.)

28.  On May 6, 2004, the BCNR voted to deny Plaintiff relief finding no material error or injustice and substantially adopted the reasoning of the advisory opinions.  (Amended Compl. ¶¶ 26 27); (AR 2.)

29.  On October 24, 2005, Plaintiff filed his initial Complaint before this Court.

30.  On April 19, 2006, the Court granted the Defendant's Motion to Voluntarily Remand this action back to the BCNR.

31.  By letter dated June 23, 2006, BCNR requested comments and recommendations from the Head, Enlisted Promotion Section, regarding specific questions related to the ERSBs from 1999, 2000, and 2001.  (Supp. AR at 27-28.)

32.  On July 16, 2007, a three-member panel of the BCNR denied Plaintiff's application.  (Supp. AR at 3-5.)  In this decision, BCNR indicated that, while the performance index (PI) was used for the 1999 ERSB, the Board also considered the Official Military Personnel File (OMPF) when it made its selection decisions.  (Supp. AR at 4.)  Further, BCNR pointed out that there was substantial negative information throughout Plaintiff's OMPF to support the ERSB's decision

5

not to select him for promotion in all three years.  The information noted by BCNR was as

follows:

> [S]ervice record page 11 ("Administrative Remarks (1070")
> counseling entries dated 12 October 1984 and 9 December
> 1985; derogatory fitness reports for 19 October to 20 December
> 1982 and 1 April to 29 October 1983; and nine fitness reports
> showing peers ranked above you (20 January to 31 March 1983,
> 16 December 1983 to 13 April 1984, 14 April to 28 August
> 1984, 1 April to 7 August 1985, 31 July to 31 October 1987, 17
> June to 31 December 1989, 1 January to 31 December 1990, 1
> January to 3 August 1993 and 1 November 1997 to 30
> September 1998)."  (Supp. AR at 4-5.)

33. The BCNR decision also determined that the CY 2000 and 2001 ERSBs were properly

convened and failed to demonstrate the existence of probable material error or injustice.  (Id.)

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C.  Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
BRIAN C. BALDRATE,
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895

*Attorneys for Defendants*

Of Counsel:
LCDR MARC S. BREWEN
Navy General Litigation Division
Washington Navy Yard, Washington, DC