# ADMINISTRATIVE RECORD

# United States  of America

## DEPARTMENT OF THE NAVY

*Washington, D. C.,* 20370-5066

**I hereby certify** *that the annexed* 70 pages constitute a true and accurate supplement to the Administrative Record of the Board for Correction of Naval Records in the case of Mr. Maurice B. Pettiford, xxx-xx-6792, such record being kept in the ordinary course of business under my official supervision and custody,

*on file in the* Board for Correction of Naval Records

W. DEAN PFEIFFER
(Official Title)
Executive Director
Board for Correction of Naval Records
Washington, D. C. 20370

OFFICE OF THE SECRETARY

**I hereby certify** *that* W. Dean Pfeiffer

*who signed the foregoing certificate, was at the time of signing*

Executive Director, Board for Correction of Naval Records

*and that full faith and credit should be given his certification as such.*

**In testimony whereof,** *I have hereunto set my hand and caused the Seal of the Navy Department to be affixed this* 26 *day of* February , *two thousand* eight

H. R. MOLINENGO, II
Captain, JAGC, U.S. Navy
(Operations and Management)
For the Secretary of the Navy

NAVJAG 5800/2 (REV. 02-07)

**To:**             Fidell, Eugene R.
**Subject:**        RE: GYSGT PETTIFORD

Gene,

You are advised that on 12 July 2007, the following Board members voted unanimously to deny your client's application:

    Ms. Juanita B. Gilbert
    Mr. Matthew S. McBride
    Mr. W. Dean Pfeiffer

It is hoped that this information is of assistance to you.

Sincerely,
Brian J. George
Board for Correction of Naval Records
Performance Section
2 Navy Annex, Ste. 2432
Washington, DC  20370-5100
(703) 614-9842 or DSN 224-9842
FAX:  (703) 614-9857 or DSN 224-9857

-----Original Message-----
From: Fidell, Eugene R. [mailto:efidell@feldesmantucker.com]
Sent: Wednesday, August 01, 2007 10:40 AM
To: George, Brian J CIV BCNR
Subject: RE: GYSGT PETTIFORD

Brian, please let me know the names and votes of the Board members.
Thanks.

Gene

-----Original Message-----
From: George, Brian J CIV BCNR [mailto:brian.j.george@navy.mil]
Sent: Wednesday, August 01, 2007 10:25 AM
To: Fidell, Eugene R.
Subject: GYSGT PETTIFORD

Gene,

As per your request.

Please open the attached document.
This document was sent to you using an HP Digital Sender.

  Digital Sender Model:       HP 9100C
  Digital Sender Name:        140.185.159.60
  Document type:              Color Document
  Number of pages:            3
  Sent by:                    BRIAN.J.GEORGE
<Brian.J.George@navy.mil>
  Attachment File Format:     Adobe PDF

To view this document you need to use the Adobe Acrobat Reader.
For more information on the HP Digital Sender, Adobe Circulate, or a free copy of the
Acrobat reader please visit:

    http://www.digitalsender.hp.com/reader-en

Brian J. George

00001

Board for Correction of Naval Records
Performance Section
2 Navy Annex, Ste. 2432
Washington, DC  20370-5100
(703) 614-9842 or DSN 224-9842
FAX:  (703) 614-9857 or DSN 224-9857

00002



DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

BJG
Docket No: 1685-06
16 July 2007

GYSGT MAURICE B PETTIFORD USMC RET
CO EUGENE R FIDELL ESQ
2001 L ST NW 2ND FL
WASHINGTON DC 20036-4910

Dear Gunnery Sergeant Pettiford:

This is in reference to your application for correction of your
naval record pursuant to the provisions of title 10 of the
United States Code, section 1552.

Your previous case, docket number 8653-01, was denied on 6 May
2004. At the request of the Office of the Judge Advocate
General of the Navy (General Litigation), your case was reopened
on the basis of an error in the information that had been
provided by the Headquarters Marine Corps (HQMC) Enlisted
Promotion Section (MMPR-2). You have renewed your request for
promotion to pay grade E-8 (master sergeant or first sergeant)
effective 1 November 1998. In the alternative, you now request
new enlisted remedial selection boards (ERSB's) for the Calendar
Year (CY) 1999, 2000 and 2001 master sergeant and first sergeant
selection boards.

A three-member panel of the Board for Correction of Naval
Records, sitting in executive session, considered your
application on 12 July 2007. Your allegations of error and
injustice were reviewed in accordance with administrative
regulations and procedures applicable to the proceedings of this
Board. Documentary material considered by the Board consisted
of your current application, together with all material
submitted in support thereof, the Board's file on your prior
case (docket number 8653-01), your naval record and applicable
statutes, regulations and policies. In addition, the Board

00003

considered the advisory opinions furnished by the HQMC Enlisted
Promotion Section (MMPR-2), dated 11 April and 2 August 2006,
and the MMPR-2 electronic mail (e-mail) dated 21 April 2006,
copies of which are attached.  The Board also considered your
counsel's rebuttal letter dated 17 August 2006 with enclosure
and his e-mail submissions, including statements in support of
your request.

After careful and conscientious consideration of the entire
record, the Board found that the evidence submitted was
insufficient to establish the existence of probable material
error or injustice.  In this connection, the Board substantially
concurred with the input provided by MMPR-2.

The Board determined that your case could be denied properly
without an evidentiary hearing; and without obtaining sanitized
copies of records of Marines against whom you competed, or a
copy of your record as it appeared for the CY 1999, 2000 and
2001 ERSB's.

The Board found it unobjectionable that a performance index (PI)
was used for the CY 1999 ERSB, noting the PI was not used alone,
but in conjunction with your Official Military Personnel File.
The Board found the information MMPR-2 provided about the use of
the PI was sufficient.  The Board found the MMPR-2 advisory
opinion dated 2 August 2006 was correct as to the number of
Marines with whom you were compared, despite the indications, in
the enclosure to your counsel's letter of 17 August 2006, that
the CY 2001 ERSB rated you against 10 other Marines.  In this
regard, the Board considered MMPR-2 a more reliable source
within HQMC, for this purpose, than the Head, Freedom of
Information/Privacy Act Sections, who provided the enclosure to
counsel's letter.  Further, the Board considered it unlikely
that MMPR-2 would have understated the number of records with
whom yours was compared, when asserting a larger number could
have bolstered the validity of the proceedings in question.  The
Board found that every Marine considered by the regular CY 2000
and 2001 First Sergeant and Master Sergeant Selection Boards who
was in your military occupational specialty was selected for
promotion, whereas the overall selection rate was much lower.
The Board did not agree with your argument that your not having
been selected by the ERSB's was inconsistent with the principle
that ERSB's are not limited to a particular number of
allocations.

Finally, the Board found your record for all three ERSB's in
question included the following substantial information

00004

supporting their determination not to select you for promotion: service record page 11 ("Administrative Remarks (1070)") counseling entries dated 12 October 1984 and 9 December 1985; derogatory fitness reports for 19 October to 20 December 1982 and 1 April to 29 October 1983; and nine fitness reports showing peers ranked above you (20 January to 31 March 1983, 16 December 1983 to 13 April 1984, 14 April to 28 August 1984, 1 April to 7 August 1985, 31 July to 31 October 1987, 17 June to 31 December 1989, 1 January to 31 December 1990, 1 January to 3 August 1993 and 1 November 1997 to 30 September 1998).

In view of the above, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records. Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

                                Sincerely,


                                W. DEAN PFEIFFER
                                Executive Director

Enclosures

Copy to:
Eugene R. Fidell, Esq.

00005



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

BJG
Docket No: 1685-06
19 July 2007

Dear Mr. Fidell:

This is in reference to your interest, as counsel, in the case of Gunnery Maurice B. Pettiford, United States Marine Corps (Retired).

Enclosed is a letter addressed to Gunnery Sergeant Pettiford informing him that his application has been denied. It is requested that you transmit the denial letter to him, a copy of which is enclosed for your records.

It is regretted that a more favorable reply cannot be made.

Sincerely,

W. DEAN PFEIFFER
Executive Director

Enclosures

00006

MEMORANDUM TO FILE

Docket No. 01685-06

Examiner: BJG    Branch/Status 8 -FMCR

Subj: GySgt    Pettiford, Maurice B.,

Personal appearance requested: NO          Reconsideration: NO YES

Action Requested: 50  Prom to E-8 off 1 Nov 98 or
grant new ERSB's for C499, 00 and 01
MSgt and 1st Sgt Sel Bds

Mr Eugene R.
Coun- Fidell

In addition to Petitioner's application (DD-149) with any attachments and any related correspondence, the Board considered the following records:

☒ Enlisted/Officer Service Record

☐ Examiner's Case Summary

☐ NDRB File                    ☐ Record of Court-Martial

☐ Medical Record              ☐ VA Records      ☐ PEB Record

☒ Advisory Opinion s. HQMC MMPR-2 memos dtd 11 Apr06 + 2 Aug06

☒ Other: Maj Williams e-mail dtd 15 Feb 06, Maj McLaughlin
e-mail dtd 21 Apr06, prior ACDR case file (doc # 8653-01)
Coun Hi dtd in Aug 06/ encl. Numerous coun email.
MESSrs: MCBRIDE + PFEIFFER +

Ms/Mr. GILBERT                              EXECUTIVE SESSION

voted on 12 JUl 07    to:              ☐ Grant relief

                                       ☐ Partial relief
☐ Grant personal appearance
                                       ☒ Deny

☐ Minority Vote: Mr/Ms_____   voted To _____

Comments: _____
_____
_____

☐ That Petitioner's naval record be corrected to show that on ----/--/-- /or_____

Petitioner was issued a honorable/general discharge by reason of misconduct/or _____
vice the discharge actually issued on that date.

00007

| | |
|---|---|
| **From:** | McLaughlin Maj James A [james.mclaughlin@usmc.mil] |
| **Sent:** | Friday, April 21, 2006 9:08 AM |
| **To:** | Williams, Anthony C Maj Code 14; George, Brian J CIV BCNR |
| **Cc:** | kevin.robataille@usdoj.gov; Rodriguez SSgt Laurie L HQMC; Richardson MSgt Gary A |
| **Subject:** | RE: Pettiford order |

Maj Williams,
    Apologize for the delay as I have been engaged in trying to kick
off the GySgt Sel Board.  Here is the information you requested via
BCNR.  In 1999 there were 179 selected out of 1080 eligible Marines for
1stSgt.  There 20 selected of 62 eligible for MSgt in his MOS of 1169.
Please let me know if you will require more information and either SSgt
Rodriguez or myself will assist in trying to get that to you.

r/s
Maj McLaughlin

-----Original Message-----
From: Williams, Anthony C Maj Code 14
[mailto:anthony.c.williams1@navy.mil]
Sent: Thursday, April 20, 2006 13:39
To: George Brian CIV; McLaughlin Maj James A
Cc: kevin.robataille@usdoj.gov
Subject: RE: Pettiford order

Is there some official correspondence from BCNR to MMPR that we can make
part of the paper trail?

-----Original Message-----
From: George, Brian J CIV BCNR
Sent: Thursday, April 20, 2006 13:33
To: Williams, Anthony C Maj Code 14; 'james.mclaughlin@usmc.mil'
Subject: RE: Pettiford order


Tony,

As you can see, I've forwarded this on to Maj Jim McLaughlin at HQMC
MMPR-2.  His phone # is DSN 278-9710.

Brian J. George
Board for Correction of Naval Records
Performance Section
2 Navy Annex, Ste. 2432
Washington, DC  20370-5100
(703) 614-9842 or DSN 224-9842
FAX:  (703) 614-9857 or DSN 224-9857


> -----Original Message-----
> From:    Williams, Anthony C Maj Code 14
> Sent:    Thursday, April 20, 2006 11:34 AM
> To: George, Brian J CIV BCNR
> Cc: 'Robitaille, Kevin (USADC)'
> Subject:  Pettiford order
>
> Brian,
>
> The judge granted our motion yesterday to voluntarily remand
> Pettiford.  The order is attached.  It basically orders what we have
> started to do already.  However, to satisfy the court's order we need
> an official document from BCNR to Enlisted Promotions stating that

1

00008

> BCNR's decision of 6 May  )04 relied on advisory opinions  om the
> Head of Enlisted Promotions, in the  May   4. They need to direct Enlisted Promotions to re-evaluate the administrative record
> and provide BCNR with an advisory opinion that clearly and succinctly
> addresses the procedures followed for GySgt Pettiford's ERSB covering
> his consideration for selection to 1stSgt and MSgt for 1999, 2000, and
> 2001.
>
> -Further, they need to articulate in detail, the comparison system
> that existed in 1999 and how it changed for 2000-01.  If they go in to
> detail about specific numbers for the performance index.  They should
> list how many Marines he was compared against for each category, how
> many were selected, and how many were not selected.
>
> -How is the performance index used?  Do they look at his ompf in
> addition to the index?  Do they look at anyone else's records for
> 1999?  Is there decision based on the numbers, plus his ompf, in
> addition to their experience as senior Marines.
>
> -Is the term "fully qualified" an arithmetic formula, or do the board
> members have the authority to use some form of discretion or
> interpretation when they discuss the cases being considered?  Did this
> remain constant from 1999-2001?
>
> -They should specify which years he was considered for 1stSgt.  Based
> on the "status" block on his fitreps, he did not request consideration
> for selection to 1stSgt for all three years, and theoretically would
> not have been considered.  They should specify that he is first looked
> at for 1stSgt, then for MSgt for eligible years.
>
> -They should specify how many records he was compared against for the
> 2000 and 2001 boards.  Was he compared to both selected and
> non-selected? Was he compared to different Marines for 2000 and 2001?
>
> -Did the board adjust his ompf to reflect only the contents that
> existed during each of the three years?
>
>
> If any of the above information is not readily apparent from the
> record, they should state what the precepts and/or
> regulations/directives require, and that absent evidence to the
> contrary, it is presumed that the board followed orders.
>
> We have 75 days from 19 April to tell the court what BCNR is going to
> do, presumably to reconsider the case based on the new advisory
> opinion.  This should be ample time to get an advisory opinion that
> answers all the questions, and should allow for response time from
> Pettiford.  While it would be ideal if BCNR could have reconsidered in
> that time frame I realize it may not be possible, and it is not
> required by the order. Thanks for your time and effort on this re-do.
>
> Tony
>
> -----Original Message-----
> From:     Robitaille, Kevin (USADC)
> [mailto:Kevin.Robitaille@usdoj.gov]
> Sent:     Wednesday, April 19, 2006 15:43
> To: Williams, Anthony C Maj Code 14
> Subject:  Here is the order
>
> << File: Order on remand.pdf >>

00099

2

CROSS SELECTION BOARD HISTORY RESEARC

PETTIFORD, MAURICE B.

## 1999 USMC MASTER SERGEANT SELECTION BOARD

| BOARD | PGRD | PMOS | IMOS | ZONE | FZONE | SEL | MEMO |
|---|---|---|---|---|---|---|---|
| RGMSGT00 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGMSGT99 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGGSGT96 | E6 | 1142 | 1169 | 1 | | (Y) Sel for E7 (by 96 regular bd - OI ERSS |
| RGGSGT95 | E6 | 1142 | 1169 | 1 | | N backdated E7, From 1 Jul 96 to |
| RGGSGT94 | E6 | 1142 | 1169 | 1 | | N 1 Nov 94) |

| SEL | N | 0 | MEMO | | | | |
|---|---|---|---|---|---|---|---|

| NAME | | | | | | ZONE | FROM |
|---|---|---|---|---|---|---|---|
| PETTIFORD | MAURICE | B | E7 | 1169 | 1169 | 3 | 11 | RGMSGT99 |

| 1996/07/01 | 1980/06/22 | 1979/05/21 | 2000/08/20 | | |
|---|---|---|---|---|---|

| Y | | | N | 9999 | 2 | | |
|---|---|---|---|---|---|---|---|

| Y | | | Y | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

## 2000 USMC MASTER SERGEANT SELECTION BOARD

| BOARD | PGRD | PMOS | IMOS | ZONE | FZONE | SEL | MEMO |
|---|---|---|---|---|---|---|---|
| RGMSGT00 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGMSGT99 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGGSGT96 | E6 | 1142 | 1169 | 1 | | Y | |
| RGGSGT95 | E6 | 1142 | 1169 | 1 | | N | |
| RGGSGT94 | E6 | 1142 | 1169 | 1 | | N | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| N | 0 | | | | | | |

| PETTIFORD | MAURICE | B | E7 | 1169 | 1169 | 3 | 11 | RGMSGT00 |
|---|---|---|---|---|---|---|---|---|

| 1996/07/01 | 1980/06/22 | 1979/05/21 | 2000/08/20 |
|---|---|---|---|

| N | No F on Fitrep | N | 9999 | 2 | | | |
|---|---|---|---|---|---|---|---|

| Y | | | | | | | y | | |
|---|---|---|---|---|---|---|---|---|---|

## 2001 USMC MASTER SERGEANT SELECTION BOARD

| BOARD | PGRD | PMOS | IMOS | ZONE | FZONE | SEL | MEMO |
|-------|------|------|------|------|-------|-----|------|
| RGMSGT01 | E7 | 1169 | 1169 | 2 | 2 | N | |
| RGMSGT00 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGMSGT99 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGGSGT96 | E6 | 1142 | 1169 | 1 | | Y | |
| RGGSGT95 | E6 | 1142 | 1169 | 1 | | N | |

| | N | 0 | | | |
|---|---|---|---|---|---|

| PETTIFORD | MAURICE | B | E7 | 1169 | 1169 | 2 | 11 | RGMSGT01 | AN: 000426-000930 |
|-----------|---------|---|----|----|----|---|----|----------|-------------------|

| 1996/07/01 | 1980/06/22 | 1979/05/21 | 2001/12/21 |
|------------|------------|------------|------------|

| N | No F on Fitrep | N | 9999 | 2 | | |
|---|----------------|---|------|---|---|---|

| Y | | Y | Y | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

00012

PETTIFORD, MAURICE B.    Zone/Allocation

## 2002 USMC MASTER SERGEANT SELECTION BOARD

| BOARD | PGRD | PMOS | IMOS | ZONE | FZONE | SEL | MEMO |
|-------|------|------|------|------|-------|-----|------|
| RGMSGT02 | E-7 | 1169 | 1169 | 1 | 2 | N | |
| RGMSGT01 | E7 | 1169 | 1169 | 2 | 2 | N | |
| RGMSGT00 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGMSGT99 | E7 | 1169 | 1169 | 3 | 2 | N | |
| RGGSGT96 | E6 | 1142 | 1169 | 1 | | Y | |

SEL N    0    MEMO

| NAME | | | | | | | | |
|------|---|---|---|---|---|---|---|---|
| PETTIFORD | MAURICE | B | E7 | 1169 | 1169 | 1 | 11 | RGMSGT02 |

| 1994/11/01 | 1980/06/22 | 1979/05/21 | 2002/05/21 |
|---|---|---|---|

| N | No F on Fitrep | N | 9999 | 2 |
|---|---|---|---|---|

| Y | | | Y | N | Y | | N | N | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

00013

## REFERENDUM

> Affix
> Barcode
> Label
> Here

Subject's Name:

__Pettiford_____ __Maurice_____ _____ _____
Last                          First               MI     Suffix

☒   REQUEST FOR RECONSIDERATION

☒  Approved:  __BGeorge_____  __Mar 06_____

☐  Disapproved:  _____  _____

                 Signature            Date

☐  ADMINISTRATIVE RE-OPEN

☐  Approved:  _____  _____

              Signature            Date

COMMENTS: _As per Maj Anthony Williams, USMC, JAG Lit_
_req. He informed me that π is in DC district ct, + that_
_the previous BCNR panel relied upon a flawed AO_
_provided by the HQMC MMPR-2._

_____

**NOTE:** Please deliver to
OIS Section with "closed"
BCNR file

NEW Docket No.

(OIS/11 1Jul86)

00014

| | |
|---|---|
| **From:** | Williams, Anthony C Maj Code 14 |
| **Sent:** | Wednesday, February 15, 2006 2:25 PM |
| **To:** | Goldsmith, Alan E CIV BCNR |
| **Cc:** | Rodriguez-Feo, Armando LCDR Code 14 |
| **Subject:** | Pettiford v. SECNAV |

Mr. Goldsmith;

I am an attorney at OJAG, General Litigation (Code 14). I am working on a case pending in D.C. District Court. We have moved for summary judgment, and plaintiff has cross-moved for summary judgment. The facts are:

Plaintiff had some adverse material removed from his record. This caused BCNR to back-date his promotion to GySgt. He failed selection to MSgt. He convinced BCNR that the adverse material was still there. He was given a remedial selection board (ERSB) for 1999, 2000 and 2001. He failed selection for all three.

He petitioned BCNR claiming many procedural flaws in the ERSB. BCNR obtained advisory opinions from the head of the Enlisted Promotions Branch HQMC as well as the SJA to CMC. The advisory opinions stated that his record was compared against comparison cases for all three years as per orders and regulations.

Plaintiff FOIA'd the comparison records. He was given ten sanitized records. Five were from 2000 and five from 2001. BCNR denied his petition and summarily asserted that they relied on the advisory opinions.

During my research into why he was given records for only 2000 and 2001, I found out that for 1999 and years prior, a "performance index" was used in comparison and not the actual physical records of other Marines. The performance index is a numerical bracket similar to a "cutting score". This was never given to Plaintiff, nor was this ever explained prior to our motion for summary judgment.

Plaintiff is suing for the BCNR decision and the ERSB decision to be set aside and for a new ERSB. He may win based on the erroneous explanation given to him.

Should be stay the proceedings and get a more thorough and accurate explanation from BCNR on how ERSB conducted it's review?

v/r
Anthony C. Williams
Major, USMC
Office of the Judge Advocate General
General Litigation Division (Code 14)
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC 20374-5066
Telephone: 202-685-4596
Facsimile: 202-685-5472



00015



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
MANPOWER AND RESERVE AFFAIRS DEPARTMENT
HARRY LEE HALL, 17 LEJEUNE ROAD
QUANTICO, VIRGINIA 22134-5104

IN REPLY REFER TO:

1400/3
MMPR-2
APR 1 1 2006

MEMORANDUM FOR THE EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
                NAVAL RECORDS

Subj:  ADVISORY OPINION IN THE CASE OF GUNNERY SERGEANT
       MAURICE B. PETTIFORD                    USMC, RETIRED

Ref:   (a) CMC MMPR-2 BCNR Memo 1400/1 MMPR-2 of 16 Jan 02
       (b) CMC MMPR-2 1420/2 MMPR-2 of 26 Sep 02
       (c) CMC MMPR-2 BCNR Memo 1400/1 MMPR-2 of 16 Oct 02
       (d) MCO P1400.32C (ENLPROMAN)

1.  Per references (a) through (c), the following clarification
is provided to address the Enlisted Remedial Selection Board
(ERSB) process.  Gunnery Sergeant Pettiford received remedial
consideration to the rank of first sergeant and master sergeant
for the CY 1999, 2000, and 2001 Sergeant Major through Master
Sergeant Selection Boards on 16 November 2001 and was not
approved for promotion selection.

2.  When Gunnery Sergeant Pettiford received remedial
consideration for the CY 1999 SgtMaj through Master Sergeant
Selection Board, his Official Military Personnel File (OMPF) was
the official record used by the board members to determine
promotion selection.  However, since the Performance Index (PI)
rating system was the performance evaluation system in use
during 1999, Gunnery Sergeant Pettiford's PI was also used to
compare his performance against that of his peers.  PI
calculates the value of fitness report marks in a Marine's
current grade not to exceed five years.  PI ratings can fall
anywhere between 9.00, being the highest, to 6.50, being the
lowest.  When Gunnery Sergeant Pettiford received remedial
consideration for the CY 1999 Sergeant Major through Master
Sergeant Selection Board, his PI value was 8.95.  There were 179
Marines selected to first sergeant in the Intended Military
Occupational Specialty (IMOS) 9999 with a PI value of 9.00-8.80
and 20 Marines selected to master sergeant in IMOS 1169 with a
PI value of 9.00-8.80.  Between the two IMOS's, only one Marine
was selected to first sergeant IMOS 9999, with a PI value of
less than (9.00-8.80).  His PI value fell in the 8.59-8.40 range.

Subj:    ADVISORY OPINION IN THE CASE OF GUNNERY SERGEANT
         MAURICE B. PETTIFORD              ?/1169 USMC, RETIRED

3.  On 1 January 1999, the Marine Corps' performance evaluation
system underwent major modifications, causing the statistical
value of fitness reports to change.  The PI rating system was
replaced with the current fitness report evaluation system we
have today.  Due to the change in the performance evaluation
system, the Enlisted Promotion Section (MMPR-2) changed the ERSB
comparison process for all boards after CY 1999.  The current
ERSB process requires board members to compare the OMPF of the
Marine being considered for remedial promotion against those
Marines who had competed for promotion within his or her
respective IMOS.  This was the process used when Gunnery
Sergeant Pettiford received remedial consideration for the CY
2000 and 2001 Sergeant Major through Master Sergeant Selection
Boards.

4.  The circumstances surrounding each Marine's request for
remedial consideration are evaluated individually, with
consistency and fairness in mind.  However, the confidentiality
of the selection board process precludes knowing the exact
reasons why Gunnery Sergeant Pettiford was not selected.  The
Board members are administered an oath of nondisclosure of
proceedings or recommendations pertaining to the selection or
non-selection of individual staff noncommissioned officers in
accordance with reference (d).  It can only be inferred that
based upon a majority vote of the board members, his record was
not competitive with the records of the Marines selected for
promotion.

J. A. MCLAUGHLIN
Major, U.S. Marine Corps
Head, Enlisted Promotion Section

00017



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
MANPOWER AND RESERVE AFFAIRS DEPARTMENT
HARRY LEE HALL, 17 LEJEUNE ROAD
QUANTICO, VIRGINIA 22134-5104

IN REPLY REFER TO:
1400/3
MMPR-2
**AUG 0 2** 2006

MEMORANDUM FOR THE EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
NAVAL RECORDS

Subj:   ADVISORY OPINION IN THE CASE OF GUNNERY SERGEANT
        MAURICE B. PETTIFORD :              /1169 USMC, RETIRED

Ref:    (a) BCNR Docket No. 1685-06 ltr BJG of 23 Jun 06

1.  Per references (a), the following clarification is provided
to address the Enlisted Remedial Selection Board (ERSB) process.
Performance Index (PI) is a statistics rating system used prior
to CY 2000 ERSBs to evaluate Marines selected to the next higher
grade in their respective Intended Military Occupation Specialty
(IMOS).  The intent of PI was to provide board members with a
tool to statically measure the performance of Marines being
considered for an ERSB in comparison to those Marines selected
for promotion.  Prior to CY 2000 ERSBs, the only Official
Military Personnel File (OMPF) the board was privileged to view
was the Marine being considered.  Therefore, the focus of effort
by board members to make a decision to promote a Marine to the
next higher grade would have been based on the Marine's OMPF and
leadership experience in their respective roles as senior
Marines.

2.  The term "fully qualified" is not an arithmetic formula. On
regularly scheduled SNCO Selection Boards, the "best and fully
qualified" are selected for promotion due to Marines competing
for a limited amount of allocations.  For example, if there are
10 allocations for a Military Occupational Specialty (MOS), only
10 Marines could be selected.  Those 10 Marines would represent
the best and fully qualified of the other eligible candidates.
Because on Marines <u>do not</u> compete for allocations on the ERSB,
there is no limitation to select only to the number of
allocations. Therefore, the criteria is fully qualified.  The
Marine must be deemed fully qualified in the opinion of the
majority of the board members.  If the majority opinion of the
board deems the Marine fully qualified when compared against his
peers, the Marine would be selected for promotion.  If there is
not a majority opinion, then the Marine will be considered not
selected for promotion as well as passed for promotion.  The
ERSB, like a regularly scheduled Staff Noncommissioned Officer

Subj:    ADVISORY OPINION IN THE CASE OF GUNNERY SERGEANT
         MAURICE B. PETTIFORD          /1169 USMC, RETIRED

(SNCO) Selection Board follows the guidance and authority of the
precept.  Under oath and guidance from the precept, ERSB members
have the authority to use some form of discretion and
interpretation when it discusses cases being considered.
This policy is current and remained constant from 1999 through
2001.

3.  Gunnery Sergeant Pettiford was considered for first sergeant
and master sergeant by the CY 1999, CY 2000, and CY 2001
Sergeant Major through Master Sergeant Selection Boards.
Normally, promotion consideration to first sergeant is based on
the Marine placing an "F" on the status block of their fitness
report(s).  Marines eligible for both first sergeant and master
sergeant are first considered for first sergeant.  If not
selected for first sergeant, those Marines who are also eligible
for master sergeant would then be considered accordingly for
master sergeant.  Although, Gunnery Sergeant Pettiford did not
request to be considered to first sergeant, his selection to
gunnery sergeant on the August 2001 ERSB to gunnery sergeant
changed his date of rank to 1 November 1994 making him eligible
for consideration to first sergeant and master sergeant.
Therefore, keeping all things fair and equitable with the ERSB
process, Gunnery Sergeant Pettiford was first considered for
first sergeant and then to master sergeant for CY 1999; to first
sergeant then to master for CY 2000; and to first sergeant and
master sergeant for the CY 2001 Sergeant Major through Master
Sergeant Selection Boards.

4.  When Gunnery Sergeant Pettiford received remedial
consideration, his OMPF was adjusted to reflect only the
contents that existed during each of the three year for which he
was considered.  For the CY 2000 First Sergeant and Master
Sergeant Boards, his OMPF was compared against only one Marine
selected to first sergeant and only one Marine selected to
master sergeant with the least amount of votes.  For the CY 2001
First Sergeant and Master Sergeant Boards, his OMPF was compared
against only one Marine selected to first sergeant and only one
Marine selected to master sergeant with the least amount of
votes.  In each instance, Gunnery Sergeant Pettiford was
compared against a different Marine, each of whom was selected
on their respective board receiving the least number of votes
that consisted of a majority opinion.  There were no non-selects
to compare Gunnery Sergeant Pettiford's OMPF on either board.

Subj:   ADVISORY OPINION IN THE CASE OF GUNNERY SERGEANT
        MAURICE B. PETTIFORD                '1169 USMC, RETIRED

5.   The circumstances surrounding each Marine's request for
remedial consideration are evaluated individually, with
consistency and fairness in mind.  However, the confidentiality
of the selection board process precludes knowing the exact
reasons why Gunnery Sergeant Pettiford was not selected.  The
Board members are administered an oath of nondisclosure of
proceedings or recommendations pertaining to the selection or
non-selection of individual staff noncommissioned officers in
accordance with reference (d).  It can only be inferred that
based upon a majority vote of the board members, his record was
not competitive with the records of the Marines selected for
promotion.

                        J. A. MCLAUGHLIN
                        Major, U.S. Marine Corps
                        Head, Enlisted Promotion Section

00020

**FELDESMAN**

**TUCKER**

**LEIFER**

**FIDELL LLP**

EUGENE R. FIDELL
efidell@feldesmantucker.com

August 17, 2006

Mr. Jonathan S. Ruskin
Head, Performance Section
Board for Correction of Naval Records
2 Navy Annex
Washington, DC 20370-5100

Re: *GySgt Maurice B. Pettiford, USMC (Ret)*, Dkt. No. 1685-06

Dear Mr. Ruskin:

*Introduction*

Thank you for your letter of August 10, 2006, transmitting the August 2, 2006 advisory opinion from the Head, Enlisted Promotion Section, Headquarters Marine Corps, as well as for the Board's June 23, 2006 letter which your office was kind enough to fax to me. For the reasons we explain below, GySgt Pettiford is clearly entitled to the relief he has previously sought from the Board.

The advisory opinion was submitted by Major J.A. McLaughlin. It is inconceivable that he was head of the Enlisted Promotion Section at the time of the events in question in 1999-2001. Can you please ask him the precise source of his information? If his source is some other person who was a participant in or otherwise contemporaneously privy to those events, the submission should come from that person. If he relied on any documents that have not previously been furnished to us, we would be grateful for copies.

Because Major McLaughlin's memorandum is inconsistent with previous official correspondence as noted below, and fails to respond to a number of the Board's questions, an evidentiary hearing should be ordered. That way the Marine Corps can present witnesses who can testify from personal knowledge and the Board can get the factual kind it needs if it is to honor its "abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Caddington v. United States*, 147 Ct. Cl. 629, 634 (1959).

00521

FELDESMAN TUCKER LEIFER FIDELL LLP

Mr. Jonathan S. Ruskin
August 17, 2006
Page 2

Over five years ago, GySgt Pettiford's command wrote: "Approval of [his request for remedial promotion will correct an unfortunate injustice. GySgt Pettiford is fully qualified to be a Master Sergeant of Marines." A.R. 126. The time has come to grant that relief.

*Discussion*

1

### Failure to Review GySgt Pettiford's Naval Record

Paragraph 2 of the Board's June 23, 2006 letter advised the Enlisted Promotions Section that, among other things, it "needs to reevaluate [GySgt Pettiford's] naval record . . . ." As I assume you noticed, the advisory opinion gives no indication, directly or by implication, that the Marine Corps did so.

2

### The 1999 ERSB

The advisory opinion makes it clear that the 1999 ERSB was invalid. No effort was made to compare GySgt Pettiford's record with any other Marine's record—a question the Board specifically (and properly) asked in ¶ 3a of its June 23, 2006 letter. That the ERSB process even then was required to be comparative is clear from evidence we previously submitted—a Marine Corps website posting on this subject, a copy of which appears in the administrative record ("A.R.") that was filed with the District Court. *See* A.R. 191-92 (board weighs Marine's overall performance "against the performance of those originally selected for promotion").

The Board can make no informed judgment about the 1999 ERSB without more information about the Performance Index ("PI"). Precisely how are PIs calculated? What was GySgt Pettiford's PI? What PI was needed to be promoted? Paragraph 3a of the Board's June 23, 2006 letter made it clear that it needed details concerning the PI. The Marine Corps has not provided any. Simply to assert, as the advisory opinion does in ¶ 1, that the PI "is a statistics rating system" the intent of which was "to provide board members with a tool to statistically measure the performance of Marine being considered for promotion" adds nothing to the conversation. (The last sentence of ¶ 1 of the advisory opinion simply parrots back the leading question posed by the Board in the last sentence of ¶ 3a of the June 23,

00022

Mr. Jonathan S. Ruskin
August 17, 2006
Page 3

2006 letter. Answers that do so are without probative value, and leading questions such as the one cited suggest that the case is in fact not being afforded a fresh look.)

3

### The 2000-2001 ERSBs

These boards were plainly invalid. They are examples of the Zen question, "What is the sound of one hand clapping?" As we read ¶ 4 of Major McLaughlin's memorandum, GySgt Pettiford's record was compared against only one Marine in respect of each of these years for First Sergeant and only one other Marine in respect of each of these years for Master Sergeant.* That makes a total of four comparison records. If so, why were we sent *10* Marines' records in 2004 when we asked for the records against which his was compared? *See* Letter from Teresa D. Ross, Head, Freedom of Information/Privacy Act Sections, Security Programs and Information Management Branch, to Eugene R. Fidell, July 11, 2003 (enclosed) (transmitting first five records; "We have *verified* that GySgt Pettiford was rated against *10* other Marines" during the ERSB held on or about November 16, 2001) (emphases added); *see also* A.R. 32 (copies of comparison records used in ERSB case of GySgt Pettiford "were already provided to Freedom of Information Act office at Headquarters Marine Corps"). This discrepancy with respect to a material fact is neither acknowledged nor resolved in the latest advisory opinion.

I request that the Board obtain from the Marine Corps and provide to us sanitized copies of the records of the Marines against which GySgt Pettiford's record was specifically compared in 2000 and 2001. I ask that the Board and we receive them in the form in which they were considered by the ERSB, and that they be labeled clearly so the Board and we can tell which were the comparison records for each of the 2000 reconsiderations (First Sergeant and Master Sergeant) and which were the comparison records for each of the 2001 reconsiderations (First Sergeant and Master Sergeant). Also, please have the Marine Corps submit separate copies of GySgt Pettiford's own record in the precise form in which it was considered by the 1999, 2000 and 2001 ERSBs.

---

* For Major McLaughlin's account to be accurate, there would have been *two* different Marines' records for each year. This is because, according to him, the comparison records were those of Marines who had been selected. If a Marine had been selected for First Sergeant, he or she would not have even been considered for Master Sergeant, and hence his or her record would not have met Major McLaughlin's description for the comparison record used.

00023

Mr. Jonathan S. Ruskin
August 17, 2006
Page 4

Do I correctly understand the last sentence of ¶ 4 of the advisory opinion to state that every single Marine considered by the regular 2000 and 2001 First Sergeant and Master Sergeant Boards *was* selected? That cannot be correct, since data already in the record indicate that the FY01 selection rate was 62.8%. A.R. 141, 172. If the cited sentence was intended to refer to the records of Marines being afforded remedial consideration in respect of the 2000 and 2001 boards, then it appears to suggest that GySgt Pettiford's record was compared not with those of staff NCOs against whom he competed at the regular 2000 and 2001 boards, but with those of staff NCOs whose cases were also receiving *remedial* consideration by the very same ERSB—which would make the entire exercise circular. The comparison had to be with those whose records *were* properly considered by the original boards, not among those receiving remedial consideration.

But let us assume that the advisory opinion means what it seems to say in this respect. That would mean that, notwithstanding a 100% selection rate, GySgt Pettiford was still not selected. If that is the case, surely the Marine Corps should be required to furnish some explanation.

Alternatively, does the cited sentence of the advisory opinion mean only that there were some non-selects, but GySgt Pettiford's record was not compared with any non-select's record in either 2000 or 2001 for either First Sergeant or Master Sergeant?

Paragraph 2 of the advisory opinion asserts that an ERSB is not confined to any particular number of allocations. If so, the fact that the ERSB ranked GySgt Pettiford below the selectee with the lowest number of favorable votes was in fact the imposition of a limit. That is, if the comparison was indeed with the promoted Marine with the fewest favorable votes, and if the Marine receiving remedial consideration is deemed below that person, then the procedure by definition imposes a limit: the number previously selected by the regular board. Whether a Marine undergoing ERSB consideration is Fully Qualified is not a function of whether he or she ranked below the lowest-ranked selectee under the Best and Fully Qualified criterion. The methodology described by the advisory opinion was therefore at war with a central assertion in the advisory opinion: that there was no limit on how many ERSB candidates could be promoted, as the limit was literally built in.

I respectfully invite your attention to ¶¶ 1-2 on pages 2-3 of my letter to Mr. George dated March 27, 2002. A.R. 10, 11-12. I will not reproduce those paragraphs

Mr. Jonathan S. Ruskin
August 17, 2006
Page 5

here, but when you review them I believe you will agree with me that the defects they identify are confirmed by the latest advisory opinion.

*Conclusion*

Based on the advisory opinion, the ERSB's decisions not to promote GySgt Pettiford cannot be sustained. Given the extreme passage of time, the continuing inadequacy or and discrepancies in the Marine Corps' submissions, and the defects that are already clear, the time has come for the BCNR either to direct a new ERSB for the 1999, 2000 and 2001 promotion boards or to recommend that the Secretary promote GySgt Pettiford to Master Sergeant effective November 1, 1998 without further delay. As indicated in ¶ 4 of my letter to you dated December 29, 2003, A.R. 24, 26, there is no rational basis, based on the comparison records previously furnished to us and supplied by us to the BCNR, on which to conclude that GySgt Pettiford would have been found in the do-not-promote category for each of the boards the ERSB was to have replicated based on his correct record.

I look forward to receiving the information and documents requested in this letter. If, notwithstanding the last sentence of the second paragraph of your letter to me, it is the Board's position that we must request documents directly from the Marine Corps, please so advise me at once and hold the case open, as experience teaches that this will entail a lengthy delay on top of that already experienced.

Thank you for your continuing courtesy and cooperation. For convenience, copies of the previously submissions referred to in this letter are enclosed.

Sincerely,

Eugene R. Fidell

Enclosure

cc(w/encl): GySgt Maurice B. Pettiford, USMC (Ret)

00025

**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380-1775

IN REPLY REFER TO:

5720
ARSE1/3U100817
July 11, 2003

MR EUGENE R FIDELL
FELDESMAN TUCKER LEIFER
FIDELL & BANK LLP
2001 L STREET NW SECOND FL
WASHINGTON DC 20036-4910

Dear Mr. Fidell:

As directed by the Judge Advocate General for General Litigation, we reevaluated the public releasability of the Official Military Personnel Files (OMPFs) of the Marines against whom GySgt Maurice Pettiford USMC was rated during the Enlisted Remedial Selection Board held on or about November 16, 2001. These records had been previously denied to you in their entirety under exemption (b)(6) of the Freedom of Information Act (FOIA).

We have verified that GySgt Pettiford was rated against 10 other Marines and we are in the process of reviewing the OMPFs of these Marines to ascertain their releasability to you under the FOIA. We have completed our review of 5 of the 10 identified records and have determined that they contain personal information that may not be disclosed to third parties without consent since to do so would be a clearly unwarranted invasion of the personal privacy of the subject Marine. As such, those portions of the reviewed OMPFs deemed to be personal in nature are denied under exemption (b)(6) of the FOIA.

However, certain portions of the identified OMPFs may be disclosed to you without consent (i.e., chronological records of duty stations, dates of service, military education and training, combat history, and decorations/awards). Accordingly, we are providing the releasable portions of the 5 OMPFs reviewed to date as enclosures (1) through (5). The releasable portions of the other 5 OMPFs will be forwarded to you in the very near future. Upon completion of all processing, we will apprise you of appeal rights and will bill you for any incurred processing fees that may apply.

Should you require further assistance, please don't hesitate to contact me or any member of my staff at (703) 614-4008. We ask that you reference our file number, HQMC-200300252, whenever corresponding on this matter.

Sincerely,

TERESA D. ROSS
Head, Freedom of Information/Privacy Act Sections
Security Programs and Information Mgmt Branch
Administrative and Resource Mgmt Division
By direction of the
Commandant of the Marine Corps

Enclosures: (1) Redacted copy of OMPF for Kevin J. McDonnell
(2) Redacted copy of OMPF for Robert P. Beith III
(3) Redacted copy of OMPF for Dwayne L. Eubanks
(4) Redacted copy of OMPF for Ildefonso Colon Jr.
(5) Redacted copy of OMPF for Sandra I. Torres

00026

**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

BJG
Docket No: 1685-06
23 June 2006

From: Chairman, Board for Correction of Naval Records (BCNR)
To:    Headquarters Marine Corps (HQMC) Enlisted Promotion Section (MMPR-2)

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE
OF GYSGT MAURICE B. PETTIFORD, USMC (RET)

Ref:  (a) 10 USC 1552

Encl: (1) BCNR File

1. Pursuant to reference (a), Subject requests a correction of his naval record as indicated
in enclosure (1).

2. In order to assist the Board in arriving at a fair and equitable decision in this case, it is
requested that your comments and recommendations be furnished. On 6 May 2004, this
Board relied on an advisory opinion from the HQMC MMPR-2 which may have been
inaccurate. MMPR-2 needs to reevaluate Subject's naval record and provide an advisory
opinion that clearly and succinctly addresses the procedures followed by his Enlisted
Remedial Selection Board's (ESRB"s) for his consideration for first sergeant (1stSgt) and
master sergeant (MSgt) for 1999, 2000, and 2001. Further, please articulate in detail, the
comparison system that existed in 1999 and how it changed for 2000 and 2001. Also,
please go into detail about the specific numbers for the performance index. Please list
how many Marines Subject was compared against for each grade, how many Marines
were selected, and how many were not selected.

3. Please answer the following questions:

    a. How is the performance index used? Does an ESRB look at a Marine's Official
Military Personnel File (OMPF) in addition to the index? Did the 1999 ESRB look at
anyone else's OMPF? Is the ESRB's decision based on the numbers, plus a Marine's
OMPF, in addition to the ESRB members' leadership experiences in their respective rolls
as senior Marines?

    b. Is the term "fully qualified" an arithmetic formula, or does the ESRB have the
authority to use some form of discretion or interpretation when it discusses the cases
being considered? Did this remain constant from 1999 through 2001?

c. Which years was Subject considered for 1stSgt? Based on the "status" block on his fitness reports, he did not request consideration for selection to 1stSgt for all three years, and theoretically would not have been considered. Please specify that he is first looked at for 1stSgt, and then for MSgt for eligible years.

d. How many records was Subject compared against for the 2000 and 2001 ESRB's? Was he compared to both selected and non-selected Marines' records? Was he compared to different Marines for 2000 and 2001?

e. Was Subject's OMPF adjusted to reflect only the contents that existed during each of the three years?

4. If any of the above information is not readily apparent from the record, please state what precepts, regulations, and directives were required, and that absent evidence to the contrary, it is presumed that the ESRB's followed orders.

5. It is further requested that the enclosure be returned with your reply. Your cooperation in this matter is appreciated.

BRIAN J. GEORGE
By direction

00028

**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

**26 June 2006**

**MEMO FOR COMMANDANT OF THE MARINE CORPS (CODE MMER)**

**Subj:    REQUEST FOR ADVISORY OPINION(S)**

1.   Please provide advisory opinion(s) from the indicated offices for the following named petitioner(s).

2.   It is further requested that the enclosures be returned with your reply.   In the event the requested action can be granted administratively, please take action and notify the Board accordingly.

**3.   If you are unable to furnish a reply within 30 days, please notify this office, 703-614-2293/DSN 224-2293.**

| NAME | SSN/EXAMINER/DOCKET NO. | CODE | COMMENTS |
|------|-------------------------|------|----------|
| **PETTIFORD, MAURICE** | ⸻ ⸻ ⸻/BJG/01685-06 | **MMPR-2**-Pls provide new AO **plus reply** to BCNR ltr dtd 23 Jun 06. | |

X------------------------
**RECEIVED BY MMER**
**(Name and date received)**

------------------------
**PERFORMANCE SECTION**
**BCNR**

00029

**George, Brian J CIV BCNR**

| | |
|---|---|
| **From:** | Williams, Anthony C Maj Code 14 |
| **Sent:** | Friday, June 23, 2006 8:02 AM |
| **To:** | George, Brian J CIV BCNR |
| **Cc:** | Kevin Robitaille (USADC) (E-mail) |
| **Subject:** | RE: PETTIFORD REQ FOR AO |
| **Signed By:** | williamsac@mcbbutler.usmc.mil |

Brian,

The only substantive change I have is the last sentence of paragrapgh 3a.  Is the ESRB's decision based on the numbers, plus a Marine's OMPF, in addition to the Board Member's leadership experiences in their respective rolls as senior Marines?

Please send to Enlisted Promotions at your earliest convenience. Thanks.

Tony

-----Original Message-----
From: George, Brian J CIV BCNR
Sent: Wednesday, June 21, 2006 9:43
To: Williams, Anthony C Maj Code 14
Subject: PETTIFORD REQ FOR AO

1

00030



DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

7 March 2006

MEMO FOR COMMANDANT OF THE MARINE CORPS (CODE MMER)

Subj:    REQUEST FOR ADVISORY OPINION(S)

1.  Please provide advisory opinion(s) from the indicated offices for the following named petitioner(s).

2.  It is further requested that the enclosures be returned with your reply.  In the event the requested action can be granted administratively, please take action and notify the Board accordingly.

3.  If you are unable to furnish a reply within 30 days, please notify this office, 703-614-2293/DSN 224-2293.

| NAME | SSN/EXAMINER/DOCKET NO. | CODE | COMMENTS |
|---|---|---|---|
| BROWN, JESSE R. | _____/BJG/01387-06 | MIO | |
| PRICE, RALPH L. | _____/BJG/01414-06 | CMT | |
| DUESING, AARON S. | _____/BJG/01668-06 | JAD/MMOA-4 | |
| HOBSON, CHRISTOPHER | _____/BJG/01337-06 | MMOA-4-NOTE: Pet sel by FY-07 USMC Maj Sel Bd. | |
| WUJEK, JASON T. | (_____)/BJG/00056-06 | JAD/MMPR-2 | |
| PETTIFORD, MAURICE | _____/BJG/01685-06 | MMPR-2 for new AO IAW email from JAG Lit | |

X _____
-
RECEIVED BY MMER
(Name and date received)

_____
PERFORMANCE SECTION
BCNR

00031

# BOARD FOR CORRECTION
# OF
# NAVAL RECORDS
# (BCNR)

DATE: 8/16/06

PAGES SENT: 3 pgs
(including cover sheet)

TO: Eugene Fidell Esq.

OFFICE/COMMAND: _____

FAX NO: (202) 293-8103

FROM: Ms. Katie Saunder  Sec for Perf Sec ; Mr. Geo

OFFICE: Board for Correction of Naval Records

TELEPHONE NO: (703) 614-2293  FAX NO: (703)614-9857  DSN: 224-9857

REMARKS: Per your request on this document
RE: Doc# 01685-06
Gy Sgt Maurice B. Pettiford, USMC Ret.

Thank u
Ms. Saunder ; Mr.
Georg.

**IF THERE ARE ANY PROBLEMS RECEIVING THIS TRANSMISSION,
PLEASE CALL (703)614-    AS SOON AS POSSIBLE**

00032

**Ruskin, Jonathan S CIV BCNR**

| | |
|---|---|
| **From:** | Fidell, Eugene R. [e                              ] |
| **Sent:** | Tuesday, August 15, 2006 3:45 PM |
| **To:** | Ruskin, Jonathan S CIV BCNR |
| **Subject:** | GySgt Maurice B. Pettiford, USMC (Ret), No. 1685-06 |

Jon,

In assist in preparation of our response to the recent HQMC advisory opinion, would you please fax me a copy of the Board's June 23, 2006 letter to the Marine Corps, which is reference (a) to the advisory opinion.

Thanks very much.

v/r

Gene

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

CONFIDENTIALITY NOTICE:

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail and any attachments or from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

00033

8/16/2006

# ENLISTED PROMOTION SECTION
## HQMC (MMPR-2)
## QUANTICO, VIRGINIA

**TO:** Major Williams

**FROM:** SSgt Rodriguez

**SUBJ:** GySgt Pettiford

**PHONE:** 202-685-6892

**FAX#:** 202-685-5472

**NO. OF PAGES INCLUDING COVER:** 04

**DATE:** 060808

**COMMENTS:**

FOR OFFICIAL USE ONLY. This document contains ( or may contain)
Personal Data covered by the Privacy Act of 1974. Please ensure this
information is protected from unauthorized access/disclosure.

## PROMOTIONS BRANCH, ENLISTED SECTION
## COMM: (703) 784-9718/9/20
## DSN: 278-9718/9/20
## FAX COMM: (703) 784-9882
## FAX DSN: 278-9882

## HEADQUARTERS, U.S. MARINE CORPS
## HARRY LEE HALL (MMPR-2)
## 17 LEJEUNE ROAD
## QUANTICO, VA 22134

00034

**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC  20370-5100

**26 June 2006**

MEMO FOR COMMANDANT OF THE MARINE CORPS (CODE MMER)

Subj:    REQUEST FOR ADVISORY OPINION(S)

1.  Please provide advisory opinion(s) from the indicated
offices for the following named petitioner(s).

2.  It is further requested that the enclosures be returned with
your reply.  In the event the requested action can be granted
administratively, please take action and notify the Board
accordingly.

3.  If you are unable to furnish a reply within 30 days, please
notify this office, 703-614-2293/DSN 224-2293.

| NAME | SSN/EXAMINER/DOCKET NO. | CODE | COMMENTS |
|------|------------------------|------|----------|
| PETTIFORD, MAURICE _____ | /BJG/01685-06 | MMPR-2- | Pls provide new AO **plus reply** to BCNR ltr dtd 23 Jun 06. |

L_____

RECEIVED BY MMER
(Name and date received)

_____

PERFORMANCE SECTION
BCNR

00035



# FELDESMAN
# TUCKER
# LEIFER
# FIDELL LLP

2001 L Street, N.W.
Second Floor
Washington, DC 20036-4910
(202)466-8960
(202)293-8103 Facsimile
www.feldesmantucker.com

---

TO:        JONATHAN S. RUSKIN

FROM:      Eugene R. Fidell

DATE:      August 18, 2006

FAX #:     (703) 614-9857

TELEPHONE #:

# OF PAGES:    7 Including Fax Coversheet

CLIENT #:

---

## NOTES/COMMENTS:

Mr. Ruskin:

I attempted to e-mail an advance copy of the attached letter to you yesterday, however, our e-mail capabilities went down shortly thereafter. I received notification that the electronic transmission has been delayed. The original letter is forthcoming via U.S. mail and the electronic transmission will go through as soon as our internet capabilities are restored. Please let me know if you have any questions. Thank you.

*Allie L. Bernardo*

---

The information contained in this facsimile message is transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, collect if necessary, and return the original message to us at the above address via the US Postal Service (we will reimburse postage). Thank you.

Please contact Allie L. Bernardo at (202)973-0847 if you do not receive all pages.



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

BJG:kes
Docket No. 01685-06
10 August 2006

MR EUGENE FIDELL ESQ

Dear Mr. Fidell:

This is in reference to the application of your client, GySgt Maurice B. Pettiford, USMCR, for correction of his naval record.

The case has been assigned to the Board's Performance Section. All correspondence pertaining to the case should be sent to the attention of this section.

The Board has received an advisory opinion, a copy of which is enclosed. The views set forth in this opinion are those of the office that submitted it, and are not binding on the Board or its reviewing authority. If you wish to respond to the advisory opinion or submit documentary material in support of your client's application, it is requested that you do so within 30 days of the date of this letter. Your response should be sent to the Board and not to the official who furnished the advisory opinion.

If you are unable to respond within the 30-day period, you may request an extension of time. In your request, please indicate when the Board may expect to receive your response. If no response or request for an extension of time is received within the 30-day period, the case will be classified as being ready for review by the Board, and will be decided on the evidence of record as soon as the Board's crowded docket of cases permits.

As a general rule, the Board will not decide a case prior to the expiration of the 30-day period unless it has received the applicant's response to the advisory opinion. However, an exception may be made if a case warrants expeditious action.

The most common example is when an applicant who is seeking removal of a fitness report is also scheduled to be considered for promotion within the 30-day period.  Under these circumstances, the Board may, in its discretion, decide the case before the 30-day period expires and without waiting for the applicant's response to the advisory opinion.  Should the case be denied, the Board will treat the applicant's response as a request for reconsideration.

Sincerely,

JONATHAN S. RUSKIN
Head, Performance Section

For

Enclosure
MMPR-2 memo dtd 2 Aug 06

**Ruskin, Jonathan S CIV BCNR**

---

| | |
|---|---|
| **From:** | Bernardo, Allie [. |
| **Sent:** | Tuesday, August 22, 2006 9:21 AM |
| **To:** | Ruskin, Jonathan S CIV BCNR |
| **Cc:** | |
| **Subject:** | RE: GySgt Maurice B. Pettiford, USMC (Ret), Dkt No. 1685-06 |

Mr. Ruskin:

I am resending the attached message. Our e-mail and internet capabilities went down last Thursday and the message was returned to me as undeliverable. I apologize for any inconvenience this may have caused.

*Allie*

-----Original Message-----
**From:** Bernardo, Allie
**Sent:** Thursday, August 17, 2006 2:11 PM
**To:** 'Ruskin, Jonathan S CIV BCNR'
**Cc:**
**Subject:** GySgt Maurice B. Pettiford, USMC (Ret), Dkt No. 1685-06

Mr. Ruskin:

Eugene Fidell asked me to send the attached letter to you. The letter is in response to your letter of August 10, 2006.

In addition to this electronic transmission, the original letter will be forthcoming via U.S. mail.

Please call Mr. Fidell with any questions. Thank you.

*Allie L. Bernardo*
**Assistant to Eugene R. Fidell, Esq.**
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, DC 20036
(202)973-0847
(202)293-8103 Facsimile

00039

8/22/2006

**George, Brian J CIV BCNR**

| | |
|---|---|
| **From:** | Fidell, Eugene R. [efidell@feldesmantucker.com] |
| **Sent:** | Wednesday, November 15, 2006 6:11 PM |
| **To:** | George, Brian J CIV BCNR |
| **Cc:** | Pfeiffer, Dean W CIV BCNR; Zsalman, Robert D CIV BCNR; Ruskin, Jonathan S CIV BCNR; james.mclaughlin@usmc.mil; anthony.c.williams1@usmc.mil |
| **Subject:** | GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06 |

Brian,

Thank you for your prompt response to my email. I am still waiting to receive the requested three versions of GySgt Pettiford's record from the Marine Corps. Once we have these I will be able to prepare a formal response to the Marine Corps' most recent advisory opinion.

v/r

Gene

1

**George, Brian J CIV BCNR**

| | |
|---|---|
| **From:** | Fidell, Eugene R. [efidell@feldesmantucker.com] |
| **Sent:** | Thursday, November 16, 2006 3:54 PM |
| **To:** | George, Brian J CIV BCNR |
| **Cc:** | Pfeiffer, Dean W CIV BCNR; Zsalman, Robert D CIV BCNR; Ruskin, Jonathan S CIV BCNR; james.mclaughlin@usmc.mil; anthony.c.williams1@usmc.mil |
| **Subject:** | RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06 |

Brian,

Our mail today brought a CD with GySgt Pettiford's OMPF. Our request for copies of the three different versions in which his record was allegedly presented to the ERSB on Nov. 16, 2001 remains outstanding.

Gene

00041

1

## <u>MEMORANDUM FOR THE RECORD</u>

DATE:  16 Nov 06

DOCKET NO:  1685-06

PET:  GySgt M. B. Pettiford, USMC (Ret)

PARTY I CALLED:  Maj A. Williams, USMC, JAG Lit

WHAT I DID:  I discussed with Maj Williams whether or not JAG Lit would supt giving Pet another remedial consid for prom to E-8.

WHAT PARTY SAID:  Maj Williams answered in the negative.

BRIAN J. GEORGE
Performance Section
Board for Correction of Naval Records

00512

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              3537
CONNECTION TEL                 9912022938103
SUBADDRESS
CONNECTION ID
ST. TIME             11/20 11:00
USAGE T              01'11
PGS. SENT                3
RESULT               OK
```

00043

# BOARD FOR CORRECTION
# OF
# NAVAL RECORDS
# (BCNR)

**DATE:** 20 Nov 06

**PAGES SENT:** 3
(including cover sheet)

**TO:** Gene Fidell

**OFFICE/COMMAND:** _____

**FAX NO:** (202) 293-8103

**FROM:** Brian George

**OFFICE:** Board for Correction of Naval Records

**TELEPHONE NO:** (703) 614-9842    **FAX NO:** (703)614-9857 **DSN:** 224-9857

**REMARKS:** As per your req. I have no idea why this
wasn't sent to you earlier!

Brian

---

**IF THERE ARE ANY PROBLEMS RECEIVING THIS TRANSMISSION,
PLEASE CALL (703)614-9842 AS SOON AS POSSIBLE**

00044

## George, Brian J CIV BCNR

| | |
|---|---|
| **From:** | Fidell, Eugene R. [efidell@feldesmantucker.com] |
| **Sent:** | Friday, November 03, 2006 3:59 PM |
| **To:** | McLaughlin Maj James A |
| **Cc:** | Cheeseman GS-11 Michael D; Richardson MSgt Gary A; Williams, Anthony C Maj Code 14; George, Brian J CIV BCNR |
| **Subject:** | RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06 |
| **Attachments:** | Authorization.pdf |

Major:

1. Is it your claim that GySgt Pettiford's record was adjusted three times when it came before the ERSB, to reflect what it would have contained at the time of the regular 1999, 2000 and 2001 boards? If so, please state who made the adjustments, and provide contact information. If it was not adjusted three times, please so indicate. If you do not know whether it was adjusted three times, please so indicate.

2. The BCNR advised me to direct my questions to you. Please arrange for me to receive GySgt Pettiford's record. I am attaching a copy of his authorization from five and one-half years ago.

3. To all cc addressees: if you are in a position to assist, I will welcome it, but I will ask that you all coordinate however you wish so my request is addressed promptly and in full. Major McLaughlin can supply you with my prior correspondence and emails as necessary.

4. I have already had to send a fax to the Commandant once about this case because of foot-dragging. I will do so again if I continue to feel that GySgt Pettiford is not receiving the kind of forthright, prompt attention that he, as a retired Marine, has every right to expect.

v/r

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

CONFIDENTIALITY NOTICE:

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail and any attachments or from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

## George, Brian J CIV BCNR

**From:**   Fidell, Eugene R. [efidell@feldesmantucker.com]
**Sent:**   Friday, November 03, 2006 4:00 PM
**To:**     George, Brian J CIV BCNR
**Subject:** FW: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06

Please make this part of the record. I have copied you on my response.

v/r

Gene
-----Original Message-----
**From:** McLaughlin Maj James A [mailto:james.mclaughlin@usmc.mil]
**Sent:** Friday, November 03, 2006 3:25 PM
**To:** Fidell, Eugene R.
**Cc:** Cheeseman GS-11 Michael D; Richardson MSgt Gary A; Williams, Anthony C Maj Code 14
**Subject:** RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06

Sir,

   When a record goes before a remedial board it is "redacted" from the Marine's original record.  For example, if
a Marine's regular board convened 23 Jan 2001, anything after the convening date of that year's regular board
(i.e. material dated 24 Jan 2001 and after) is hidden so the remedial board only sees what would have gone
before the regular board.  After the remedial board adjourns, that redacted record is no longer maintained, but the
Marine's official record obviously is still maintained at the Support Branch.  If you need GySgt Pettiford's original
record I would recommend that you either contact FOIA, or it may even be easier if GySgt Pettiford contacts the
Support Branch directly to petition for his record.  Another option, I believe, is that the Support Branch will release
the record to you as long as you have a letter signed by GySgt Pettiford where he essentially authorizes you to
petition for his record, acting as his lawyer on his behalf.   I have listed Mr. Michael Cheeseman on this email as
well, as he is the point of contact at the Support Branch that can assist with this request.

r/s
Maj McLaughlin

---

**From:** Fidell, Eugene R. [mailto:efidell@feldesmantucker.com]
**Sent:** Wednesday, November 01, 2006 18:35
**To:** McLaughlin Maj James A
**Subject:** RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06

Major McLaughlin,

Thank you for your email. Paragraph 4 of my August 28, 2006 email asked that you carefully review the last
paragraph on page 3 of my August 17, 2006 letter to the BCNR, "to make sure all requests in it are addressed."
The last sentence of paragraph 3 of my August 17, 2006 letter to the BCNR, in turn, reads: "Also, please have the
Marine Corps submit separate copies of GySgt Pettiford's own record in the precise form in which it was
considered by the 1999, 2000 and 2001 ERSBs." Your email ignores this part of my request.

Please furnish me these "separate copies."

v/r

Gene Fidell

000 16

11/6/2006

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

CONFIDENTIALITY NOTICE:

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and
are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client
communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If
you are not a named recipient, you are prohibited from any further viewing of the e-mail and any attachments or
from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender
immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy
any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax
advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid
penalties imposed under the Internal Revenue Code.

00047

**George, Brian J CIV BCNR**

| | |
|---|---|
| **From:** | Fidell, Eugene R. [efidell@feldesmantucker.com] |
| **Sent:** | Tuesday, November 14, 2006 9:06 PM |
| **To:** | George, Brian J CIV BCNR |
| **Cc:** | Pfeiffer, Dean W CIV BCNR; Zsalman, Robert D CIV BCNR; Ruskin, Jonathan S CIV BCNR; james.mclaughlin@usmc.mil; anthony.c.williams1@usmc.mil |
| **Subject:** | RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06 |

Dear Brian,

Thank you for your email, responding to my request for an evidentiary hearing. In making that request, I took fully into account the Board's practice of not conducting such hearings. In the many years I have practiced before the Board, in fact, I cannot recall a hearing in any case in which I have been counsel. Accordingly, I want to assure you that my request was not lightly made.

The basic reason for my request on behalf of GySgt Pettiford is that the Marine Corps has left this case in a complete fog on issues that should have been clear years ago. At your suggestion, I attempted to resolve some important issues directly with the Marine Corps, but ultimately the Marine Corps refused to answer when it began to get uncomfortable. Reliance on the Marine Corps to answer key questions is therefore inadequate. Nor is the Freedom of Information Act a workable substitute since it addresses only existing documents and imposes no duty on the agency to simply answer factual questions. According to Major McLaughlin's Nov. 13, 2006 email, "[t]here is nothing further this office can provide that has not already been provided." If that is true, then GySgt Pettiford is entitled to relief because of the unanswered questions. In our view, however, there remains a perfectly feasible way to address those important issues: an evidentiary hearing at which competent, percipient witnesses can be examined by counsel for the applicant and by the Board and its Staff.

1. As you know from a review of the file, we were furnished the records of 10 Marines against whom GySgt Pettiford's record was allegedly compared. We have since learned--or so I understand--that in fact, his record was compared with only one other Marine's record for each of the four regular selection boards for which comparisons were made (2000 and 2001, Sergeant Major and Master Sergeant). I have yet to receive any explanation for why we were furnished 10 records. That question--still unresolved--makes it impossible to accept at face value the Marine Corps' subsequent representations.

2. Worse yet, the Marine Corps is unable to tell us which records GySgt Pettiford's record was actually compared against in respect of the 2000 and 2001 1stSgt regular selection boards the ERSB is said to have replicated. Without knowing which records are the ones that were actually used as the comparisand for each remedial board, it is impossible for us or the BCNR to gauge whether the ERSB's determinations were arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence. For the 2000 and 2001 MSgt regular selection boards, we at least have the names of the individual with whom GySgt Pettiford's record was compared. But for all four of these instances, the ERSB's one-on-one comparisons are inadequate because a single record can hardly be viewed as a "sampling."

3. For the ERSB's purported replication of the regular 1999 selection boards, the Marine Corps has not furnished the data from which the BCNR or we or the District Court can form any reliable judgment. Please refer to para. 2 of Major McLaughlin's Aug. 28, 2006 email.

4. Finally, I asked the Marine Corps if I correctly understood them to be representing, in effect, that GySgt Pettiford's record was groomed so that when the ERSB replicated the 1999 regular selection board, it contained only those documents that would have been in it when that regular board met; that it was groomed again when the ERSB replicated the 2000 regular board at the same ERSB sitting; and that it was groomed yet again when the ERSB replicated the 2001 regular board, also at the same ERSB sitting. It is literally inconceivable that the Marine Corps adjusted GySgt Pettiford's record three different times to accommodate the several different comparisons it allegedly conducted on a single day (Nov. 16, 2001) when the ERSB purportedly replicated the 1999, 2000, and 2001 regular boards. Accordingly, I asked for the name and contact information of the

00018

human being conducted the grooming. The Marine Corps stopped answering my questions. (It also for the first time demanded that we furnish a fresh authorization from GySgt Pettiford, even though I have represented him without interruption for years both before the BCNR and the United States District Court. We complied with that demand solely because this case has already consumed far more time than it should have.) Our request for "separate copies of GySgt Pettiford's own record in the precise form in which it was considered by the 1999, 2000 and 2001 ERSBs" remains outstanding.

In light of the foregoing and on the basis of the entire record, I do not believe the BCNR can accept the Marine Corps' email representation concerning the grooming of my client's record without affording us (and the BCNR itself) an opportunity to examine such live witnesses as can testify from personal knowledge as to what actually was done with respect to GySgt Pettiford's record happened in connection with the ERSB. According to Major McLaughlin's Nov. 8, 2006 email, he was not Head of Enlisted Promotions at the time the ERSB replicated the 1999, 2000, and 2001 regular selection boards on November 16, 2001, and therefore "do[es] not know exactly who redacted the records." A hearing at which the proper person[s] can testify is the obvious solution.

The Secretary obtained the current "voluntary" remand over our objection. Now that the case is back with the BCNR at the Department's behest, the BCNR has a special obligation to make a full inquiry into the matter, in keeping with its duty under the record-correction statute "to determine, insofar as possible, the true nature of an alleged injustice." E.g., Duhon v. United States, 461 F.2d 1278, 1281 (Ct. Cl. 1972). On the current record, that means an evidentiary hearing is required.

If the Board declines to convene a hearing, we reserve the right to supplement this email and submit a formal response to the Marine Corps most recent advisory opinion.

Very respectfully,

Gene Fidell

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

CONFIDENTIALITY NOTICE:

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail and any attachments or from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

00019

**George, Brian J CIV BCNR**

| | |
|---|---|
| From: | George, Brian J CIV BCNR |
| Sent: | Wednesday, November 15, 2006 6:32 AM |
| To: | 'Fidell, Eugene R.' |
| Cc: | Pfeiffer, Dean W CIV BCNR; Zsalman, Robert D CIV BCNR; Ruskin, Jonathan S CIV BCNR; james.mclaughlin@usmc.mil; anthony.c.williams1@usmc.mil |
| Subject: | RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06 |

Gene,

I have discussed your request for an evidentiary hearing at length with CAPT Pfeiffer. He has directed that the Board determine whether or not an evidentiary hearing is warranted in this case. Please respond to the latest unfavorable HQMC advisory opinion, and provide any other evidence you believe to be pertinent to your client's case.

Brian J. George
Board for Correction of Naval Records
Performance Section
2 Navy Annex, Ste. 2432
Washington, DC 20370-5100
(703) 614-9842 or DSN 224-9842
FAX: (703) 614-9857 or DSN 224-9857

-----Original Message-----
From: Fidell, Eugene R. [mailto:efidell@feldesmantucker.com]
Sent: Tuesday, November 14, 2006 9:06 PM
To: George, Brian J CIV BCNR
Cc: Pfeiffer, Dean W CIV BCNR; Zsalman, Robert D CIV BCNR; Ruskin, Jonathan S CIV BCNR; james.mclaughlin@usmc.mil; anthony.c.williams1@usmc.mil
Subject: RE: GySgt Maurice B. Pettiford, USMC (Ret), BCNR Dkt. No. 1685-06

Dear Brian,

Thank you for your email, responding to my request for an evidentiary hearing. In making that request, I took fully into account the Board's practice of not conducting such hearings. In the many years I have practiced before the Board, in fact, I cannot recall a hearing in any case in which I have been counsel. Accordingly, I want to assure you that my request was not lightly made.

The basic reason for my request on behalf of GySgt Pettiford is that the Marine Corps has left this case in a complete fog on issues that should have been clear years ago. At your suggestion, I attempted to resolve some important issues directly with the Marine Corps, but ultimately the Marine Corps refused to answer when it began to get uncomfortable. Reliance on the Marine Corps to answer key questions is therefore inadequate. Nor is the Freedom of Information Act a workable substitute since it addresses only existing documents and imposes no duty on the agency to simply answer factual questions. According to Major McLaughlin's Nov. 13, 2006 email, "[t]here is nothing further this office can provide that has not already been provided." If that is true, then GySgt Pettiford is entitled to relief because of the unanswered questions. In our view, however, there remains a perfectly feasible way to address those important issues: an evidentiary hearing at which competent, percipient witnesses can be examined by counsel for the applicant and by the Board and its Staff.

1. As you know from a review of the file, we were furnished the records of 10 Marines against whom GySgt Pettiford's record was allegedly compared. We have since learned--or so I understand--that in fact, his record was compared with only one other Marine's record for each of the four regular selection boards for which comparisons were made (2000 and 2001, Sergeant Major and Master Sergeant). I have yet to receive any explanation for why we were furnished 10 records. That question--still unresolved--makes it impossible to accept at face value the Marine Corps' subsequent representations.

2. Worse yet, the Marine Corps is unable to tell us which records GySgt Pettiford's record

1

was actually compared against in respect of the 2000 and 2001 MSgt regular selection
boards the ERSB is said to have replicated. Without knowing which records are the ones
that were actually used as the comparisand for each remedial board, it is impossible for
us or the BCNR to gauge whether the ERSB's determinations were arbitrary and capricious,
an abuse of discretion, or unsupported by substantial evidence. For the 2000 and 2001 MSgt
regular selection boards, we at least have the names of the individual with whom GySgt
Pettiford's record was compared. But for all four of these instances, the ERSB's one-on-
one comparisons are inadequate because a single record can hardly be viewed as a
"sampling."

3. For the ERSB's purported replication of the regular 1999 selection boards, the Marine
Corps has not furnished the data from which the BCNR or we or the District Court can form
any reliable judgment. Please refer to para. 2 of Major McLaughlin's Aug. 28, 2006 email.

4. Finally, I asked the Marine Corps if I correctly understood them to be representing, in
effect, that GySgt Pettiford's record was groomed so that when the ERSB replicated the
1999 regular selection board, it contained only those documents that would have been in it
when that regular board met; that it was groomed again when the ERSB replicated the 2000
regular board at the same ERSB sitting; and that it was groomed yet again when the ERSB
replicated the 2001 regular board, also at the same ERSB sitting. It is literally
inconceivable that the Marine Corps adjusted GySgt Pettiford's record three different
times to accommodate the several different comparisons it allegedly conducted on a single
day (Nov. 16, 2001) when the ERSB purportedly replicated the 1999, 2000, and
2001 regular boards. Accordingly, I asked for the name and contact information of the
human being who actually conducted that grooming. At the point the Marine Corps stopped
answering my questions. (It also for the first time demanded that we furnish a fresh
authorization from GySgt Pettiford, even though I have represented him without
interruption for years both before the BCNR and the United States District Court. We
complied with that demand solely because this case has already consumed far more time than
it should have.) Our request for "separate copies of GySgt Pettiford's own record in the
precise form in which it was considered by the 1999, 2000 and 2001 ERSBs" remains
outstanding.

In light of the foregoing and on the basis of the entire record, I do not believe the BCNR
can accept the Marine Corps' email representation concerning the grooming of my client's
record without affording us (and the BCNR itself) an opportunity to examine such live
witnesses as can testify from personal knowledge as to what actually was done with respect
to GySgt Pettiford's record happened in connection with the ERSB. According to Major
McLaughlin's Nov. 8, 2006 email, he was not Head of Enlisted Promotions at the time the
ERSB replicated the 1999, 2000, and 2001 regular selection boards on November 16, 2001,
and therefore "do[es] not know exactly who redacted the records." A hearing at which the
proper person[s] can testify is the obvious solution.

The Secretary obtained the current "voluntary" remand over our objection. Now that the
case is back with the BCNR at the Department's behest, the BCNR has a special obligation
to make a full inquiry into the matter, in keeping with its duty under the record-
correction statute "to determine, insofar as possible, the true nature of an alleged
injustice." E.g., Duhon v. United States, 461 F.2d 1278, 1281 (Ct. Cl.
1972). On the current record, that means an evidentiary hearing is required.

If the Board declines to convene a hearing, we reserve the right to supplement this email
and submit a formal response to the Marine Corps most recent advisory opinion.

Very respectfully,

Gene Fidell

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

00051

CONFIDENTIALITY NOTICE

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail and any attachments or from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

00552

## George, Brian J CIV BCNR

| | |
|---|---|
| **From:** | Fidell, Eugene R. [efidell@feldesmantucker.com] |
| **Sent:** | Monday, November 20, 2006 12:32 PM |
| **To:** | George, Brian J CIV BCNR |
| **Subject:** | GySgt Maurice B. Pettiford, USMC (Ret), No. 1685-06 |

Dear Brian:

In large measure we have already responded to the Marine Corps' August 10, 2006 advisory opinion, although, as you know, we have only today been furnished the April 11, 2006 advisory opinion. In evaluating this matter, please refer not only to this present email but also to my letter dated August 17, 2006 and the several emails I have previously either sent to you or copied you on. Our strong belief is that the BCNR must recommend that GySgt Pettiford receive remedial promotion to MSgt as he has requested. Failing that, he is certainly entitled to an evidentiary hearing given the substantial questions left unanswered by the Marine Corps' submissions.

1. By letter dated July 11, 2003, we were informed that "GySgt Pettiford was rated against 10 other Marines." A hearing is necessary to determine whether that representation (made "By direction of the Commandant of the United States Marine Corps") or the subsequent contrary representations, are accurate. If the later representations are accurate, there remains the unanswered question as to why the Marine Corps furnished us with 10 other Marines' OMPFs, when GySgt Pettiford's Official Military Personnel File (OMPF) was only compared with four, and indeed, never with more than one at a time.

2. The Marine Corps' process was defective when it caused GySgt Pettiford's OMPF to be considered by the ERSB on November 16, 2001:

a. There was no comparative process as to the replication of the 1999 regular selection board. The Marine Corps' Performance Index (PI) data do not support the ERSB's decision not to recommend GySgt Pettiford's promotion. The April 11, 2006 advisory opinion demonstrates that his PI value was 8.95, which is a hair's breadth from the top limit of 9.00. The data, which are set forth in para. 2 of the April 11, 2006 advisory opinion, reveal that 179 Marines with Intended Military Occupational Specialty (IMOS) 9999 had PIs between 8.80 and 9.00 and were selected to 1stSgt, and that 20 Marines with IMOS 1169 had PIs in that same range and were selected to MSgt. The Marine Corps has not disclosed how many of those 199 (179+20) had PIs equal to or below GySgt Pettiford's 8.95, but it would be amazing if *every single one of them* ranked above him, given anything approaching a normal distribution. The same paragraph reveals that one Marine with a PI value in the 8.59-8.40 range--substantially below GySgt Pettiford's 8.95--was selected to 1stSgt. Based on these data, GySgt Pettiford is clearly entitled to remedial promotion to MSgt as of 1999.

b. As for the ERSB's alleged replication of the 2000 and 2001 regular selection boards, we are told his OMPF was compared with only one other Marine's OMPF for the four selections there at issue. A one-against-one comparison does not provide any kind of rigor, and the BCNR should not tolerate it.

(i). As to two of those four selections (relating to remedial promotion to MSgt), we can only guess as to which Marine's OMPF GySgt Pettiford's was compared with. Section 1552 does not permit decision making based on guesswork, and here the guesswork is caused by the Marine Corps' own failure to maintain proper records of the ERSB's actions. The Marine Corps' August 10, 2006 advisory opinion recites (page 2, para. 4) that GySgt Pettiford's OMPF was compared with the OMPFs of Marines who were "selected on their respective board receiving the least number of votes that consisted of a majority opinion." That assertion obviously implies that the Marine Corps knows who, among those considered by the regular selection boards, received the lowest number of votes. But if the Marine Corps actually possesses that information, why is it unable to say which Marines' OMPFs the ERSB used as comparisons when deciding whether GySgt Pettiford should be recommended for remedial promotion to MSgt. This is especially puzzling because--as we indicate in subparagraph (ii) below--the Marine Corps *does* know who the comparison Marines were when the very same ERSB decided, on the very same day, whether to recommend GySgt Pettiford for remedial promotion to 1stSgt.

00053

11/20/2006

(ii). As to the remaining two of those four selections (relating to remedial promotion to 1stSgt), we are unable to discern from the materials made available to us (and previously furnished to the BCNR) a rational basis for the ERSB's decision not to recommend GySgt Pettiford as against either GySgt Kevin J. McDonnell or GySgt Jerome Herrington. Moreover, the materials furnished to us for each of those Marines were incomplete; they included no fitness reports. For GySgt McDonnell, the only marks page covered 1979-81, and the actual conduct and proficiency marks were redacted. Worse yet, for GySgt Herrington, there was no marks page at all--redacted or otherwise. Because of these discrepancies even as between the two Marines' OMPFs that we are told were in fact considered, it is not even possible to say what part of GySgt Pettiford's OMPF was compared with them and the OMPFs of the other two unknown Marines. In any event, an ERSB that fails to examine fitness reports cannot be sustained, since fitness reports are well-known to be the key document in competitive military promotions. Alternatively, an ERSB that examined fitness reports of the Marine being considered for remedial promotion but not those of the sole fellow Marine against which he was theoretically being compared cannot be sustained.

(iii). We have already invited the BCNR's attention to the deep improbability of the Marine Corps' assertion--for which no live witness has been identified to us or the BCNR--that GySgt Pettiford's OMPF was adjusted three times when the ERSB met on November 16, 2001. To date, the Marine Corps has not provided us with the three different states of his OMPF, as we have requested. We assume that the BCNR has his complete OMPF and that it will be made part of the record of proceedings.

3. On the available information, the ERSB's decision simply cannot be sustained. If the proceedings of the November 16, 2001 ERSB were as they have been described, we respectfully submit that it would have seriously erode confidence in the remedial promotion process among serving Marines. They deserve better, and so does GySgt Pettiford.

For the foregoing reasons and those previously stated, the BCNR should either grant the full relief GySgt Pettiford has requested or set the case down for an evidentiary hearing at which the person or persons who actually were involved in the grooming of OMPFs for the November 16, 2001 session of the ERSB will be physically present and available for examination under oath.

v/r

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

*Attorney for GySgt Maurice B. Pettiford, USMC (Ret)*

CONFIDENTIALITY NOTICE:

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail and any attachments or from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

00554

11/20/2006

**George, Brian J CIV BCNR**

| | |
|---|---|
| **From:** | McLaughlin Maj James A [james.mclaughlin@usmc.mil] |
| **Sent:** | Wednesday, November 22, 2006 12:48 PM |
| **To:** | George, Brian J CIV BCNR; George, Brian J CIV BCNR |
| **Cc:** | McLaughlin Maj James A |
| **Subject:** | Pettiford |

Mr. George,
     The below responses should assist in the matter of whether or not an evidentiary hearing is required. Most of this is nothing new, the majority of which has been provided to Mr. Fidell. Please see below for the response to the below inquiries. To reiterate, our position is that an evidentiary hearing would serve little purpose as many of the records as they appeared at the time, as indicated in the response below, have been destroyed. Please let me know if BCNR has further questions.

r/s
Maj McLaughlin
---------------------

From: Fidell, Eugene R. [mailto:efidell@feldesmantucker.com
<mailto:efidell@feldesmantucker.com> ]
Sent: Monday, November 20, 2006 12:32 PM
To: George, Brian J CIV BCNR
Subject: GySgt Maurice B. Pettiford, USMC (Ret), No. 1685-06


Dear Brian:

In large measure we have already responded to the Marine Corps' August 10, 2006 advisory opinion, although, as you know, we have only today been furnished the April 11, 2006 advisory opinion. In evaluating this matter, please refer not only to this present email but also to my letter dated August 17, 2006 and the several emails I have previously either sent to you or copied you on. Our strong belief is that the BCNR must recommend that GySgt Pettiford receive remedial promotion to MSgt as he has requested. Failing that, he is certainly entitled to an evidentiary hearing given the substantial questions left unanswered by the Marine Corps' submissions.

1. By letter dated July 11, 2003, we were informed that "GySgt Pettiford was rated against 10 other Marines." A hearing is necessary to determine whether that representation (made "By direction of the Commandant of the United States Marine Corps") or the subsequent contrary representations, are accurate. If the later representations are accurate, there remains the unanswered question as to why the Marine Corps furnished us with 10 other Marines' OMPFs, when GySgt Pettiford's Official Military Personnel File (OMPF) was only compared with four, and indeed, never with more than one at a time. Only four records were used as comparison cases, see response to par 2 subpar (ii) below.

2. The Marine Corps' process was defective when it caused GySgt Pettiford's OMPF to be considered by the ERSB on November 16, 2001:

a. There was no comparative process as to the replication of the 1999 regular selection board. The Marine Corps' Performance Index (PI) data do not support the ERSB's decision not to recommend GySgt Pettiford's promotion. The April 11, 2006 advisory opinion demonstrates that his PI value was 8.95, which is a hair's breadth from the top limit of 9.00. The data, which are set forth in para. 2 of the April 11, 2006 advisory opinion, reveal that 179 Marines with Intended Military Occupational Specialty (IMOS) 9999 had PIs between 8.80 and 9.00 and were selected to 1stSgt, and that 20 Marines with IMOS 1169 had PIs in that same range and were selected to MSgt. The Marine Corps has not disclosed how many of those 199 (179+20) had PIs equal to or below GySgt Pettiford's 8.95, but it would be amazing if every single one of them ranked above him, given anything approaching a normal distribution. The same paragraph reveals that one Marine with a PI value in the 8.59-8.40 range—substantially below GySgt Pettiford's 8.95—was selected to 1stSgt. Based on these data, GySgt Pettiford is clearly entitled to remedial promotion to MSgt as of

1

00055

1999.  As boards prior to 2000, the Performance Index is a tool used by board members and this mathematical formula is only one indicator of performance.  Board members still need to look at the Marine's overall performance evaluation and comments from reporting officials to determine who is the best and fully qualified for promotion.  The sole decision for promotion is not based on a required PI score, but promotion boards use this as a tool to indicate the performance of a Marine and there is not a required PI score that a Marine must meet in order to be promoted.  It is just one of many factors that is considered in with all other factors of performance evaluation.  It was after 1999 that the Marine Corps began using comparison cases.

b. As for the ERSB's alleged replication of the 2000 and 2001 regular selection boards, we are told his OMPF was compared with only one other Marine's OMPF for the four selections there at issue. A one-against-one comparison does not provide any kind of rigor, and the BCNR should not tolerate it.  Comparison cases provide a barometer of the Marines selected on a particular board.  GySgt Pettiford's record would still have required a majority opinion of the vote in order to be selected.

(i). As to two of those four selections (relating to remedial promotion to MSgt), we can only guess as to which Marine's OMPF GySgt Pettiford's was compared with. Section 1552 does not permit decision making based on guesswork, and here the guesswork is caused by the Marine Corps' own failure to maintain proper records of the ERSB's actions. The Marine Corps' August 10, 2006 advisory opinion recites (page 2, para. 4) that GySgt Pettiford's OMPF was compared with the OMPFs of Marines who were "selected on their respective board receiving the least number of votes that consisted of a majority opinion." That assertion obviously implies that the Marine Corps knows who, among those considered by the regular selection boards, received the lowest number of votes. But if the Marine Corps actually possesses that information, why is it unable to say which Marines' OMPFs the ERSB used as comparisons when deciding whether GySgt Pettiford should be recommended for remedial promotion to MSgt. This is especially puzzling because--as we indicate in subparagraph (ii) below--the Marine Corps does know who the comparison Marines were when the very same ERSB decided, on the very same day, whether to recommend GySgt Pettiford for remedial promotion to 1stSgt.    See below response to question (ii)

(ii). As to the remaining two of those four selections (relating to remedial promotion to 1stSgt), we are unable to discern from the materials made available to us (and previously furnished to the BCNR) a rational basis for the ERSB's decision not to recommend GySgt Pettiford as against either GySgt Kevin J. McDonnell or GySgt Jerome Herrington. Moreover, the materials furnished to us for each of those Marines were incomplete; they included no fitness reports. For GySgt McDonnell, the only marks page covered 1979-81, and the actual conduct and proficiency marks were redacted. Worse yet, for GySgt Herrington, there was no marks page at all--redacted or otherwise. Because of these discrepancies even as between the two Marines' OMPFs that we are told were in fact considered, it is not even possible to say what part of GySgt Pettiford's OMPF was compared with them and the OMPFs of the other two unknown Marines. In any event, an ERSB that fails to examine fitness reports cannot be sustained, since fitness reports are well-known to be the key document in competitive military promotions. Alternatively, an ERSB that examined fitness reports of the Marine being considered for remedial promotion but not those of the sole fellow Marine against which he was theoretically being compared cannot be sustained.  I believe Mr. Fidell meant to say MSgt vice 1stSgt here with regard to GySgt McDonnell and GySgt Herrington being used as the comparison cases for MSgt.  For the FY 2000 MSgt Sel Board the comparison case (select) was McDonnell, Kevin J. and for FY 2001 the comparison case (select) was Herrington, Jerome.  Not being the Head, Enlisted Promotion Section at the time, I do not know why multiple cases were archived at that time.  However, in order to answer, question 2(i) above, for the 1stSgt Selection boards, we are unable to identify which one of the candidates was the comparison case used for those boards other than it was one of the four cases archived (as indicated below) for each respective year (2000 and 2001).

FY2000:
TorresPinto, S.I.
Lewnes, T.J.
Hughes, M.T.
Colon Jr., I.

FY2001:

Frazier, T.A.
Beith III, R.P.
Perry Jr., W.R.

Regarding the basis for selection of other Marines, or the non-selection of GySgt Pettiford, due to the confidentiality of the board process, it is not for anyone other than the board members to discern which Marines, in the majority opinion of the board, are those Marines to be selected to the next higher grade.  As mentioned previously, comparison cases provide a barometer of the Marines selected on a particular board.  GySgt Pettiford's record would still have required a majority opinion of the vote in order to be selected.  Dissatisfaction with the results is not a basis for remedial consideration.


(iii).  We have already invited the BCNR's attention to the deep improbability of the Marine Corps' assertion--for which no live witness has been identified to us or the BCNR-- that GySgt Pettiford's OMPF was adjusted three times when the ERSB met on November 16, 2001.  To date, the Marine Corps has not provided us with the three different states of his OMPF, as we have requested.  We assume that the BCNR has his complete OMPF and that it will be made part of the record of proceedings.  Those redacted records are used for the remedial boards only.  Once the remedial board is over the redacted version of the record is destroyed.  All information used still remains in GySgt Pettiford's current record. The redaction process simply "hides" material that would not have been in the record at the time the board convened.  For example, if a Marine received an award in 2001, board members would not, and should not, see that award when the Marine was competing before the 2000 board.

3. On the available information, the ERSB's decision simply cannot be sustained. If the proceedings of the November 16, 2001 ERSB were as they have been described, we respectfully submit that it would have seriously erode confidence in the remedial promotion process among serving Marines. They deserve better, and so does GySgt Pettiford. Respectfully disagree with respect to the confidence of the remedial promotion process. *****It should be noted that, as Staff Sergeant Pettiford, this Marine did receive remedial consideration to GySgt and was in fact selected to GySgt, thereby adjusting his DOR 1 Nov 94 as a GySgt.  As a GySgt, being considered for 1stSgt or MSgt, GySgt Pettiford still would have required a majority of the vote in order to be selected.  Since he did not, he was not selected.

For the foregoing reasons and those previously stated, the BCNR should either grant the full relief GySgt Pettiford has requested or set the case down for an evidentiary hearing at which the person or persons who actually were involved in the grooming of OMPFs for the November 16, 2001 session of the ERSB will be physically present and available for examination under oath. Respectfully disagree.  While the "entire" record of a service member can be obtained through MMSB, the redacted versions of GySgt Pettiford's record have been destroyed, as well as the records, as they appeared at the time, of those Marines to whom he was compared.  As they have been destroyed, an evidentiary hearing would serve little purpose as these records, as they appeared, would not be available to provided at an evidentiary hearing.

v/r

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com <file://www.feldesmantucker.com>  <file://www.feldesmantucker.com
<file://www.feldesmantucker.com> >

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

CONFIDENTIALITY NOTICE:

This e-mail and any attachments contain information from the law firm of Feldesman Tucker Leifer Fidell LLP and are intended solely for the use of the named recipient. This e-mail may contain privileged attorney-client communications or work product. Any dissemination

00057

by anyone other than intended recipient is prohibited. If you are not named recipient, you are prohibited from any further viewing of the e-mail and any attachments or from making any use of the e-mail and attachments. If you have received this e-mail in error, notify the sender immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

IRS CIRCULAR 230 Disclosure: Under U.S. Treasury regulations, we are required to inform you that any tax advice contained in this e-mail or any attachment is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

00058

**George, Brian J CIV BCNR**

| | |
|---|---|
| **From:** | Fidell, Eugene R. [efidell@feldesmantucker.com] |
| **Sent:** | Saturday, December 02, 2006 2:52 PM |
| **To:** | George, Brian J CIV BCNR |
| **Subject:** | GySgt Maurice B. Pettiford, USMC (Ret), No. 1685-06 |

**Attachments:**     Knepler Letter.pdf; Mattocks Letter.doc

 

Knepler Letter.pdf  Mattocks Letter.doc
   (248 KB)         (25 KB)

Dear Brian:

Thank you for forwarding the Marine Corps' November 27, 2006 response to my November 20, 2006 email. I have inserted below GySgt Pettiford's comments following MMPR's responses to my earlier email. I am also attaching two letters, one from MGySgt Vonzell A. Mattocks, USMC (Ret), and the other from James E. Knepler, a retired GS-12 Marine Corps civilian employee who was GySgt Pettiford's supervisor at Camp Fuji.
These should be considered along with the numerous other documents in the record that demonstrate why GySgt Pettiford merits remedial promotion.

In the absence of any explanation of why GySgt Pettiford was not remedially promoted in respect of the regular FY1999 selection board despite the fact that his PI was higher than those of Marines who were promoted, he is entitled to be promoted retroactively as if he had been selected by that board. In that event, the BCNR would have no occasion to address whether, as we have shown, the FY2000 and FY2001 remedial considerations were also defective.

v/r

Gene Fidell

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

---

In large measure we have already responded to the Marine Corps' August 10, 2006 advisory opinion, although, as you know, we have only today been furnished the April 11, 2006 advisory opinion. In evaluating this matter, please refer not only to this present email but also to my letter dated August 17, 2006 and the several emails I have previously either sent to you or copied you on. Our strong belief is that the BCNR must recommend that GySgt Pettiford receive remedial promotion to MSgt as he has requested. Failing that, he is certainly entitled to an evidentiary hearing given the substantial questions left unanswered by the Marine Corps' submissions.

1. By letter dated July 11, 2003, we were informed that "GySgt Pettiford was rated against 10 other Marines." A hearing is necessary to determine whether that representation (made "By direction of the Commandant of the United States Marine Corps") or the subsequent contrary representations, are accurate. If the later representations are accurate, there remains the unanswered question as to why the Marine Corps furnished us with 10 other Marines' OMPFs, when GySgt Pettiford's Official Military Personnel File (OMPF) was only compared with four, and indeed, never with more than one at a time.

1

MMPR RESPONSE: Only four records were used as comparison cases, see response to par 2 subpar (ii) below.

GYSGT PETTIFORD'S COMMENT: It is now obvious that the Marine Corps' July 11, 2003 letter was false. If we understand it correctly, the Marine Corps now maintains (without a statement from any individual who was personally involved in preparing files for the November 16, 2001 ERSB) that GySgt Pettiford's OMPF was compared--
(1) with no other Marine's record for either of the two (MSgt, 1stSgt) FY1999 remedial boards;
(2) with only GySgt McDonnell's record for the FY2000 MSgt board;
(3) with only GySgt Herrington's record for the FY2001 MSgt board;
(4) with the record of one of four other named GySgts for the FY2000 1stSgt board (which one of those four being unknown); and
(5) with the record of one of four other named GySgts for the FY2001 1stSgt board (which one of those four being unknown).

On these facts, GySgt Pettiford is entitled to be deemed promoted as of the FY1999 board because his PI was above the lowest PI of those who were selected, and the FY2000 and FY2001 remedial boards need not be addressed because any issue regarding their proceedings would be rendered moot by such a promotion. In the alternative, the FY2000 and FY2001 remedial considerations were defective for the divers reasons we have previously stated.

2. The Marine Corps' process was defective when it caused GySgt Pettiford's OMPF to be considered by the ERSB on November 16, 2001:

a. There was no comparative process as to the replication of the 1999 regular selection board. The Marine Corps' Performance Index (PI) data do not support the ERSB's decision not to recommend GySgt Pettiford's promotion. The April 11, 2006 advisory opinion demonstrates that his PI value was 8.95, which is a hair's breadth from the top limit of 9.00.
The data, which are set forth in para. 2 of the April 11, 2006 advisory opinion, reveal that 179 Marines with Intended Military Occupational Specialty (IMOS) 9999 had PIs between 8.80 and 9.00 and were selected to 1stSgt, and that 20 Marines with IMOS 1169 had PIs in that same range and were selected to MSgt. The Marine Corps has not disclosed how many of those 199 (179+20) had PIs equal to or below GySgt Pettiford's 8.95, but it would be amazing if every single one of them ranked above him, given anything approaching a normal distribution. The same paragraph reveals that one Marine with a PI value in the 8.59-8.40 range--substantially below GySgt Pettiford's 8.95--was selected to 1stSgt. Based on these data, GySgt Pettiford is clearly entitled to remedial promotion to MSgt as of 1999.

MMPR RESPONSE: For boards prior to 2000, the Performance Index is a tool used by board members and this mathematical formula is only one indicator of performance. Board members still need to look at the Marine's overall performance evaluation and comments from reporting officials to determine who is the best and fully qualified for promotion. The sole decision for promotion is not based on a required PI score, but promotion boards use this as a tool to indicate the performance of a Marine and there is not a required PI score that a Marine must meet in order to be promoted. It is just one of many factors that is considered in with all other factors of performance evaluation. It was after 1999 that the Marine Corps began using comparison cases.

GYSGT PETTIFORD'S COMMENT: The Marine Corps has failed to identify any factor that would have caused GySgt Pettiford not to be recommended for promotion in the ERSB's replication of the FY1999 selection board, even though his PI was higher than those of Marines who were promoted.

b. As for the ERSB's alleged replication of the 2000 and 2001 regular selection boards, we are told his OMPF was compared with only one other Marine's OMPF for the four selections there at issue. A one-against-one comparison does not provide any kind of rigor, and the BCNR should not tolerate it.

MMPR RESPONSE: Comparison cases provide a barometer of the Marines selected on a particular board. GySgt Pettiford's record would still have required a majority opinion of the vote in order to be selected.

00060

GYSGT PETTIFORD'S COMMENT: The Marine Corps found that if the requirement for an affirmative vote were the beginning and end of the matter, ERSB decisions would be immune from review, and that is plainly not the case.

(i). As to two of those four selections (relating to remedial promotion to MSgt), we can only guess as to which Marine's OMPF GySgt Pettiford's was compared with. Section 1552 does not permit decision making based on guesswork, and here the guesswork is caused by the Marine Corps' own failure to maintain proper records of the ERSB's actions. The Marine Corps' August 10, 2006 advisory opinion recites (page 2, para. 4) that GySgt Pettiford's OMPF was compared with the OMPFs of Marines who were "selected on their respective board receiving the least number of votes that consisted of a majority opinion." That assertion obviously implies that the Marine Corps knows who, among those considered by the regular selection boards, received the lowest number of votes. But if the Marine Corps actually possesses that information, why is it unable to say which Marines' OMPFs the ERSB used as comparisons when deciding whether GySgt Pettiford should be recommended for remedial promotion to MSgt. This is especially puzzling because--as we indicate in subparagraph (ii) below--the Marine Corps does know who the comparison Marines were when the very same ERSB decided, on the very same day, whether to recommend GySgt Pettiford for remedial promotion to 1stSgt.

   MMPR RESPONSE: See below response to question (ii)

   GYSGT PETTIFORD'S COMMENT: The Marine Corps has not explained why it is unable to say which Marine's record GySgt Pettiford's OMPF was compared with for one set of promotions (FY2000 and FY2001 remedial promotion to 1stSgt) at the same time that it claims to be able to say which Marine's record his OMPF was compared with for another set of promotions (FY2000 and FY2001 remedial promotion to MSgt) on the same day and by the same ERSB.

(ii). As to the remaining two of those four selections (relating to remedial promotion to 1stSgt), we are unable to discern from the materials made available to us (and previously furnished to the BCNR) a rational basis for the ERSB's decision not to recommend GySgt Pettiford as against either GySgt Kevin J. McDonnell or GySgt Jerome Herrington. Moreover, the materials furnished to us for each of those Marines were incomplete; they included no fitness reports. For GySgt McDonnell, the only marks page covered 1979-81, and the actual conduct and proficiency marks were redacted. Worse yet, for GySgt Herrington, there was no marks page at all--redacted or otherwise. Because of these discrepancies even as between the two Marines' OMPFs that we are told were in fact considered, it is not even possible to say what part of GySgt Pettiford's OMPF was compared with them and the OMPFs of the other two unknown Marines. In any event, an ERSB that fails to examine fitness reports cannot be sustained, since fitness reports are well-known to be the key document in competitive military promotions. Alternatively, an ERSB that examined fitness reports of the Marine being considered for remedial promotion but not those of the sole fellow Marine against which he was theoretically being compared cannot be sustained.

   MMPR RESPONSE:  I believe Mr. Fidell meant to say MSgt vice 1stSgt here with regard to GySgt McDonnell and GySgt Herrington being used as the comparison cases for MSgt.  For the FY 2000 MSgt Sel Board the comparison case (select) was McDonnell, Kevin J. and for FY 2001 the comparison case (select) was Herrington, Jerome.  Not being the Head, Enlisted Promotion Section at the time, I do not know why multiple cases were archived at that time.   However, in order to answer, question 2(i) above, for the 1stSgt Selection boards, we are unable to identify which one of the candidates was the comparison case used for those boards other than it was one of the four cases archived (as indicated below) for each respective year (2000 and 2001).

FY2000:
TorresPinto, S.I.
Lewnes, T.J.
Hughes, M.T.
Colon Jr., I.

FY2001:
Eubanks, D.L.
Frazier, T.A.
Beith III, R.P.
Perry Jr., W.R.

00061

Pettiford. Due to the confidentiality of the board process, it is not for anyone other than the board members to discern which Marines, in the majority opinion of the board, are those Marines to be selected to the next higher grade. As mentioned previously, comparison cases provide a barometer of the Marines selected on a particular board. GySgt Pettiford's record would still have required a majority opinion of the vote in order to be selected. Dissatisfaction with the results is not a basis for remedial consideration. (END OF MMPR RESPONSE FOR THIS QUESTION)

GYSGT PETTIFORD'S COMMENT: The Marine Corps' November 1, 2006 email recites that GySgts McDonnell and Herrington were the comparison NCOs for the FY2000 and FY2001 MSgt selection boards, respectively. It is unable to say which Marine's record was the [sole] comparison case for the FY2000 1stSgt selection board and which Marine's record was the [sole] comparison case for the FY2001 1stSgt selection board. The records furnished to us do not permit a reader to determine which of the four archived records for FY2000 and FY2001 respectively was that comparison record. But even if that simple, key fact were known--as it is for the FY2000 and FY2001 MSgt selection boards--and even if comparison against only one individual were sufficient, nothing in the records furnished to us indicates why GySgt Pettiford was not selected by the ERSB. Nor has the Marine Corps pointed to anything in that respect.

(iii). We have already invited the BCNR's attention to the deep improbability of the Marine Corps' assertion--for which no live witness has been identified to us or the BCNR-- that GySgt Pettiford's OMPF was adjusted three times when the ERSB met on November 16, 2001. To date, the Marine Corps has not provided us with the three different states of his OMPF, as we have requested. We assume that the BCNR has his complete OMPF and that it will be made part of the record of proceedings.

MMPR RESPONSE: Those redacted records are used for the remedial boards only. Once the remedial board is over the redacted version of the record is destroyed. All information used still remains in GySgt Pettiford's current record. The redaction process simply "hides" material that would not have been in the record at the time the board convened. For example, if a Marine received an award in 2001, board members would not, and should not, see that award when the Marine was competing before the 2000 board.

GYSGT PETTIFORD'S COMMENT: The BCNR needs to know exactly how documents are "hidden" in an OMPF when a Marine is considered by the ERSB. (Indeed, did the ERSB review paper records or records that were in electronic or microfiche format?) In any event, the Marine Corps has not addressed the deep improbability of its claim that GySgt Pettiford's OMPF was adjusted different three times when the ERSB met on November 16, 2001.

3. On the available information, the ERSB's decision simply cannot be sustained. If the proceedings of the November 16, 2001 ERSB were as they have been described, we respectfully submit that it would have seriously erode confidence in the remedial promotion process among serving Marines. They deserve better, and so does GySgt Pettiford.

MMPR RESPONSE: Respectfully disagree with respect to the confidence of the remedial promotion process. *****It should be noted that, as Staff Sergeant Pettiford, this Marine did receive remedial consideration to GySgt and was in fact selected to GySgt, thereby adjusting his DOR 1 Nov 94 as a GySgt. As a GySgt, being considered for 1stSgt or MSgt, GySgt Pettiford still would have required a majority of the vote in order to be selected. Since he did not, he was not selected.

GYSGT PETTIFORD'S COMMENT: The fact that the ERSB did the right thing in recommending that GySgt Pettiford's promotion to GySgt be made retroactive is no evidence that its subsequent, entirely separate proceedings for remedial promotion to higher enlisted pay grades were conducted properly.

For the foregoing reasons and those previously stated, the BCNR should either grant the full relief GySgt Pettiford has requested or set the case down for an evidentiary hearing at which the person or persons who actually were involved in the grooming of OMPFs for the November 16, 2001 session of the ERSB will be physically present and available for examination under oath.

4

MMPR RESPONSE: Respectfully disagree.  While the "entire" record of a service member can be obtained through MMSB, the redacted versions of GySgt Pettiford's record have been destroyed, as well as the records, as they appeared at the time, of those Marines to whom he was compared.
As they have been destroyed, an evidentiary hearing would serve little purpose as these records, as they appeared, would not be available to provided at an evidentiary hearing.

     GYSGT PETTIFORD'S COMMENT: The Marine Corps has not explained why we were given stripped-down versions of the pertinent OMPFs in response to our request for the records with which GySgt Pettiford's was compared. It has also refused to disclose the name of any individual who was actually involved in the preparation of OMPFs for the November 16, 2001 ERSB. Only such an individual can testify from personal knowledge as to what the ERSB actually saw. The reasons we have given for why an evidentiary hearing is necessary remain valid.

_____

00063

November 8, 2006

To Whom It May Concern:

I am writing to provide a recommendation for GySgt Maurice B. Pettiford for promotion to Master Sergeant. GySgt Pettiford worked as Facilities Maintenance Chief at Camp Fuji, Japan, under my supervision as Facilities Management Officer. I held that position at Camp Fuji for nearly eleven years, and over that time I supervised over a dozen different Maintenance Chiefs. There is no doubt in my mind that Gunny Pettiford was the finest Maintenance Chief we ever had. His positive characteristics are legion, but I will try to summarize them as best I can here.

Gunny Pettiford is one of the brightest people in the facilities business. Besides having a wide-ranging knowledge of facilities and many other subjects, he has an in-depth, hands-on understanding of computer systems and software. Indeed, he was the founder of the Camp Fuji website, one he developed direct from HTML language, without the simpler, secondary tools that are available today.

His persistence and attention to detail, as reflected in the computer work, carries over completely to his other duties. Given any project he will always return thorough and highly polished results. Gunny Pettiford does his homework, in other words. And he takes an enviable pride in what he does.

At Camp Fuji, we worked in a diverse and challenging environment. It is one of the Marine Corps' more isolated bases, set on the side of Japan's tallest mountain, with some of Japan's most severe weather. 75% of our department consisted of Japanese nationals. Our geography meant that materials, parts, and equipment were often difficult to obtain. Gunny Pettiford's can-do spirit took these challenges in stride. He was well respected and liked by our Japanese workers for the high standards he set for himself. It took him the shortest amount of time to master this environment, to adapt and make it work for him and those he supervised.

These high standards were replicated in the Marines that he led. Gunny Pettiford got outstanding performance from each and every Marine. His leadership, and his personality, earned their respect immediately. And, in the process of working under his guidance, their own performance soared. He is a natural leader who deserves, more than most, to carry the rank of Master Sergeant.

I have supervised many others in similar positions over 35 years as a manager. No one has come close. I offer the strongest recommendation that GySgt Maurice B. Pettiford be promoted to Master Sergeant of Marines.

James E. Knepler

November 24, 2006

Vonzell A. Mattocks

Letter of recommendation,

To whom it may concern:

I have known GySgt Maurice Pettiford for more than fifteen years and would like to shed light to his character and professionalism. First, I would have to say, most Marines would not bounce back from an unjust incident. I say unjust, because the Naval Board of Corrections demanded the initial incident be expunged. Secondly, I respect his tenacity to continue to serve for more than ten years requesting that all relief be granted.

Through it all, Maurice has displayed a level of devotion to duty, Corps, and country that is unsurpassed. His appearance, attitude, and performance always exceeded expectations. He provided the moral fiber to the Corps with unwavering commitment. As a former MGySgt, I've always understood the Marine Corps' ethos. First, unlike any other organizations it requires your heart and soul 24 hours a day. Secondly, its mission of "Making Marines and Winning Battles," requires a demand Maurice proudly supported. He has maintained a noble spirit to help mankind and continues to support America with the U.S. State Department abroad. I'm proud to have this level of commitment on our side.

Semper Fidelis,

*Vonzell Mattocks*

Vonzell A. Mattocks
MGySgt (Ret) U.S.M.C.

00005

**From:**          Fidell, Eugene R. [efidell@feldesmantucker.com]
**Sent:**          Thursday, January 25, 2007 4:19 PM
**To:**            George, Brian J CIV BCNR
**Subject:**       GySgt Maurice B. Pettiford, USMC (Ret), No. 1685-06

**Attachments:**   GySgt_Pe.pdf



GySgt_Pe.pdf (367
KB)
             Dear Brian,

In further support of GySgt Pettiford's submission, I am attaching statements from Colonel
Thomas X. Hammes, USMC (Ret), Colonel F. S.
Zaborowski, USMC, and Major Carlyle P. Binns, USMC (Ret). Please make these part of the
record.

Thank you for your cooperation.

v/r

Gene

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, NW, Suite 200
Washington, DC 20036
(202) 466-8960 tel
(202) 293-8103 fax
www.feldesmantucker.com

Attorney for GySgt Maurice B. Pettiford, USMC (Ret)

1

14 January 2006

From: Colonel Thomas X. Hammes :              USMC (Ret)
To:     Whom it may concern

Subj: Promotion case of Maurice B. Pettiford

1.  Gunnery Sergeant Pettiford worked for me from July 2001 to April 2002.  During that time, the Chemical Biological Incident Response Force (CBIRF) maintained an exceptionally high operational tempo.  In addition to real world commitments to clean up anthrax on Capitol Hill, provide protection for a Presidential Address to a Joint Session of Congress and the State of the Union Address, CBIRF had to complete its transition from Camp Lejuene and engage in an intensive training program with first responders across the nation.

2.  During this time, GySgt Pettiford in effect filled two billets – as engineer chief for the Force and as logistics chief for one of the response elements.  Either job is a full challenge.  GySgt. Pettiford's ability to execute all duties entailed in both billets while pursuing off duty education set a remarkable example for all the Marines of CBIRF.

3.  Throughout the period he worked for me, GySgt Pettiford demonstrated through his leadership, attitude and performance that he was more than capable of filling the role of a master sergeant of Marines.   The requirement for CBIRF to operate in conjunction with civilian first responders in novel situations meant that GySgt Pettiford had to use creativity and initiative to fulfill the real time, high priority logistics requirements of the force.  In fact, the unique demands and requirement for independent action required by GySgt Pettiford's billets vastly exceed those demanded of most master sergeants and even many master gunnery sergeants in Marine Corps units.

4.  I fully support GySgt Pettiford's petition to be promoted to Master Sergeant.  It is long past time for the Marine Corps to correct the mistake it made in not promoting him.  Feel free to contact me at any time.

Thomas X. Hammes



**UNITED STATES MARINE CORPS**
MARINE FORCES RESERVE
COMMAND, CONTROL, COMMUNICATIONS, AND COMPUTERS DIRECTORATE
4400 DAUPHINE STREET
NEW ORLEANS, LOUISIANA 70146-5400

IN REPLY TO:
1000
fsz
17 Jan 07

MEMORANDUM FOR THE RECORD

From:  Colonel F. S. Zaborowski

Subj:  REMEDIAL PROMOTION OF GYSGT MAURICE B. PETTIFORD TO
MASTER SERGEANT

1.  From my first dealings with Gunnery Sergeant Maurice B.
Pettiford, I had no doubt that that he should have been promoted
to Master Sergeant.  He served under my command in 1999 and
2000, at 6th Communication Battalion, in Brooklyn, New York.  I
was his Site Commander and Inspector-Instructor.

2.  During my 25 year career, I observed many Gunnery Sergeants.
Few of them had his organizational skills and ability to
interact with Marines and civilians at all levels.  He
personally engaged generals, Marine officers, enlisted Marines,
store clerks, and corporate executives to meet his objectives.
His successes in the New York City Toys for Tots Campaign, for
the underprivileged children of New York, and his renovation of
the command's neglected and deteriorating facilities easily
demonstrated his qualifications for promotion to Master
Sergeant.

3.  I am sincere when I say that Gunnery Sergeant Pettiford's
success in the 1999 New York City Toys for Tots Campaign would
not have been expected of anyone below the grade of a field
grade officer.  Few officers or enlisted Marines could have
matched his success in raising the reported 300,000 toys (which
after a final review was revised to 700,000 toys) for the Toys
for Tots campaign.  His personal networking with corporate
leadership and the detailed organization, leadership, and
management of his toy collection and distribution system were a
model of efficiency that I have not seen before or since in the
Marine Corps.

4.  His renovation of the command's deteriorating facilities
would have been an overwhelming duty for most Marines.  He had
few resources and little money, but managed to repair the
facility's neglected infrastructure.  Without his attention to
duty and countless late nights, there would have been numerous

00068

Subj:  REMEDIAL PROMOTION OF GYSGT MAURICE B. PETTIFORD TO
       MASTER SERGEANT

water, fire, and electrical safety issues at the facility.
Again, his organizational and leadership skills were keys to his
success.

5.  Gunnery Sergeant Pettiford was absolutely qualified to be a
Master Sergeant, when I served with him during 1999-2000.
Correction of his record with a promotion to Master Sergeant
will rectify an unfortunate series of administrative oversights
and unwarranted delays in his promotion.  In the end, it is the
right thing to do.

                                    F. S. ZABOROWSKI
                                    Colonel      USMC
                                    AC/S G-6

19 Nov 2006

From:  Major Carlyle P. Binns USMC (Retired)
To:    Board for the Correction of Naval Records

Subj:  LETTER OF CHARACTER IN CASE OF GUNNERY SERGEANT MAURICE B. PETTIFORD USMC (RETIRED)

1. I am writing this letter on behalf of Gunnery Sergeant Maurice B. Pettiford, USMC (Retired). I have had the honor of knowing Maurice now for 25 years not only as a fellow Marine, but as a great friend, and although we took different career paths, my wife and I have maintained our friendship with him throughout the years.

2. Maurice and I first served together in 1982 as young corporals when we both attend the Broadened Opportunity for Officer Selection and Training (BOOST) School; an academic prep school for enlisted men and women who aspire to become commissioned officers that is known for its academic rigor. The BOOST School is designed to academically challenge all attendees regardless of background, and although Maurice did not graduate, oddly enough, that setback only seemed to fuel his desire to achieve.

3. I mention this, because I personally think that that setback revealed an important component of Maurice's character--an intense hatred of failure, and his academic and military records are examples that support my argument.

4. This brings me to his appeal, and I will first say that I view Maurice more as a brother than a friend, and my opinion is of course somewhat biased, but I think this is what is driving Maurice now. He has made his share of mistakes, and he will readily admit that, but haven't we all? However, if Maurice feels that he has not been treated fairly, it sticks in his craw as it would anyone of us. Now, if I know anything about him, it is that he is unashamedly blunt and honest, and is not bashful about speak up when he feels a wrong has been committed. I wonder, however, who will speak for Maurice?

5. Any Marine who has ever applied for relief understands that the burden of proof rest with the Marine petitioning for that relief, and that proof should generally take the form of either unjust treatment and/or procedural errors. In 1994, Maurice applied for relief on the grounds that his record was incorrectly constituted before the promotion board, and in 1996, the BCNR granted that relief and directed that the office hours document that caused his failures of selection to be removed from his record, and on 1 July 1996, he was promoted to Gunnery Sergeant.

6. The above event in 1994 started a chain of events that is still ongoing, and has placed Maurice and the Marine Corps at loggerheads, and judging from what I know of this case, I would say that Maurice has fought the good fight, and has even achieved concurrence on several points.

7. Nevertheless, I find it difficult to believe that a gunnery sergeant with MOS credibility who attained two associate's degrees, a bachelor's degrees, and a master's degree all while serving on active duty, and who served two successful tours on recruiting duty, among the toughest peacetime assignments in the Marine Corps, and with two meritorious promotions, one to staff sergeant, is not eligible for promotion to Master Sergeant.

8. I believe in our system, and I hope that this has just been an honest mistake perpetuated by continued administrative oversight and bureaucracy which we all can appreciate. However, if this is the case, no one, should have to endure such an oversight, and I concur wholeheartedly with his Commanding officer in his endorsement of 6 July of 2001 that this is an "unfortunate injustice."

9. Maurice will accept your judgment, and should it not be in his favor, he will move on with his life. However, I think the genesis of this petition begs for a fair and honest look at his case, and I respectfully ask that you give him all due consideration that an American who has devoted his adult life to the service of the country, and one who continues to do so at great personal risk.

10. Finally, I trust that Gunnery Sergeant Pettiford will emerge as the beneficiary of a favorable decision, and that he will not only be promoted, but made whole as well, which, in my humble opinion, can only bring honor and credit to the Navy and Marine Corps. I can be reached for further comment at binnscc@yahoo.com.

CARLYLE P. BINNS
Major USMC (Ret)

00070