# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                               )
**MAURICE B. PETTIFORD,**        )
                               )
            **Plaintiff,**    )
                               )
        **v.**               )       **Civil Action No. 05-2082 (ESH)**
                               )
**SECRETARY OF THE NAVY,**   )
                               )
           **Defendant.**   )
_____)

## MEMORANDUM OPINION

Plaintiff Maurice B. Pettiford, a retired Gunnery Sergeant (pay grade E-7) in the United States Marines Corps, brings this action under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, against the Secretary of the Navy, seeking review of the May 18, 2010 decision of the Board for Correction of Naval Records ("BCNR" or "Corrections Board").[1]  That decision denied plaintiff's petition challenging the May 8, 2010 Enlisted Remedial Selection Board's ("ERSB" or "Remedial Selection Board") decision not to recommend plaintiff for remedial promotion to Master Sergeant or First Sergeant (pay grade E-8) as of Calendar Year 1999.

Plaintiff seeks an order setting aside both decisions and directing the Secretary of the Navy to correct his record to show that he was promoted to pay grade E-8 as of 1999.  In the alternative, he seeks an order remanding the case for further proceedings before either the Remedial Selection Board (if both decisions are set aside) or the Corrections Board (if only that

_____

[1]To simplify matters, the Court will refer to the decision of the BCNR, although "the final agency action under review is the decision of a designated representative of the Secretary of the Navy approving the recommendation of the BCNR."  *See Piersall v. Winter*, 435 F.3d 319, 320 n.* (D.C. Cir. 2006).

decision is set aside).  The matter is before the Court on defendant's motion to dismiss or, in the

alternative, for summary judgment and plaintiff's cross-motion for summary judgment.  For the

reasons explained herein,  plaintiff's claim for remedial promotion will be dismissed, the May

18, 2010 decision of the BCNR will be set aside, and the case will be remanded to the BCNR for

further proceedings in accordance with this opinion.

## BACKGROUND

The administrative record in this case is extensive and convoluted, but as plaintiff's

Fourth Amended Complaint is limited to his contention that he should have been promoted to

either Master Sergeant or First Sergeant, pay grade E-8, retroactive to Calendar Year ("CY")

1999 by the May 8, 2008 ERSB decision or the May 18, 2010 BCNR decision, only the facts and

procedural history that bear directly on that claim are set forth herein.

Plaintiff enlisted in the United States Marine Corps in May 1979.  (Administrative

Record ("AR") 138.)  By 1990, he had attained the rank of Staff Sergeant, pay grade E-6.[2]

(Def.'s Statement of Facts ¶ 2, July 2, 2010 ["Def.'s Facts"].)  In 1993, 1994, and 1995, the

regularly scheduled Staff Noncommissioned Officer Selection Board considered but did not

recommend plaintiff for promotion to Gunnery Sergeant, pay grade E-7  (Def.'s Facts ¶ 2), but

the 1996 Selection Board did promote him.  (Def.'s Facts ¶ 6; 4th Amended Compl. ¶ 10 ["4th

Compl."].)  In 2000 and 2001, the regular Selection Board considered but did not recommend

---

[2]In the Marine Corps, staff noncommissioned officers are senior enlisted personnel in pay
grades E-6 through E-9.  A Staff Sergeant is in pay grade E-6; a Gunnery Sergeant is in pay
grade E-7; both First Sergeants and Master Sergeants are in pay grade E-8; and both Master
Gunnery Sergeants and Sergeants Major are in pay grade E-9.  (4th Compl. ¶ 5).

plaintiff for promotion to First Sergeant or Master Sergeant, both at pay grade E-8.[3] (AR 269; Def.'s Facts ¶ 10.) In June 2002, due to his failure to be promoted, plaintiff was involuntarily retired from the Marines Corps. (AR 909; Def.'s Facts ¶ 20.)[4]

## I. PRE-LITIGATION ADMINISTRATIVE PROCEEDINGS

On March 31, 1994, after failing to be promoted to Gunnery Sergeant by the regular Selection Board, plaintiff petitioned the BCNR to have certain material relating to a 1992 disciplinary action removed from his file and, once the material was removed, for reconsideration for promotion by the Remedial Selection Board. (AR 610.)

As a general matter, the Remedial Selection Board, which is "constituted by authority of the Commandant," is "an advisory board that provides advice to the Commandant of the Marine Corps on Staff Noncommissioned Officer remedial promotion cases." (AR 341.) It is "authorized to review all Marine enlisted personnel records referred to it for the purpose of making recommendations concerning remedial promotion to the [Staff Noncommissioned Officer] grades." (AR 341.) The BCNR, which is composed of civilians appointed by the Secretary of the Navy, "may correct any military record ... when [the Secretary of the Navy acting through the Board] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a).

---

[3]At the E-8 paygrade, two positions are available for a Marine to be promoted, Master Sergeant and First Sergeant. Both positions are the same paygrade and both are Senior Non-Commissioned Officers. (AR 1089-90.)

[4]Presently, plaintiff is assigned to the Fleet Marine Corps Reserve, a status held by enlisted Marines who so desire from the time they complete 20 years of service until they are transferred to the retired list upon completion of 30 years of service. 10 U.S.C. §§ 6330-31. He is currently employed by the Department of State. (4th Compl. ¶ 1.)

On December 12, 1995, the BCNR recommended that the Secretary grant full relief, and on April 11, 1996, that recommendation was approved and the Secretary ordered the 1992 material redacted from plaintiff's file. (AR 597-98.) On May 1, 1996, plaintiff requested consideration for remedial promotion for 1993, 1994 and 1995. (AR 611-17.) It was while plaintiff was awaiting a decision on that request that the 1996 regular Selection Board, with plaintiff's corrected record before it, promoted him, effective July 1, 1996. (AR 598-99.) On June 27, 1996, however, the Remedial Selection Board decided not to recommend remedial promotion. (AR 590; Def.'s Facts ¶ 5, 7; 4th Compl. ¶ 13.) On August 21, 1996, plaintiff petitioned the BCNR for the same relief. (AR 591.) On March 18, 1997, the BCNR denied Mr. Pettiford's request to backdate his promotion to 1993. (AR 448.)

In 2001, after the 2000 and 2001 regular Selection Boards had failed to promote him to either First Sergeant or Master Sergeant, plaintiff discovered that an electronic document that reflected the 1992 disciplinary action that the Corrections Board had previously ordered redacted still remained in his record. (4th Compl. ¶ 13; Def.'s Facts ¶ 11.) Thus, plaintiff petitioned the BCNR to request removal of this document. (AR 428-433.) He also requested that his promotion to Gunnery Sergeant be backdated to 1993, and that the BCNR promote him to Master Sergeant without referring him back to the Remedial Selection Board. (AR 428-33, 471.) On May 30, 2001, the BCNR informed plaintiff that, effective May 23, 2001, all references to plaintiff's 1992 disciplinary infraction had been removed from the electronic version of his record and, therefore, that he could seek remedial consideration "for all selection boards that may have been affected" by the information. (AR 276, 422.) On July 2, 2001, plaintiff submitted his request for remedial promotion to Gunnery Sergeant as of 1993 and, if granted,

remedial promotion to Master Sergeant for the appropriate year. (AR 274.)

On August 29, 2001, the Remedial Selection Board recommended that plaintiff be remedially promoted to Gunnery Sergeant as of November 1, 1994, a recommendation that was approved on August 31, 2001. (AR 52, 55, 57.) Based on this revised promotion date, plaintiff would have been eligible for promotion to First Sergeant or Master Sergeant before the regularly scheduled 1999 Selection Board, so the Remedial Selection Board proceeded to consider whether to recommend plaintiff for calendar years 1999, 2000 and 2001. On November 16, 2001, though, the Remedial Selection Board decided not to recommend remedial promotion for 1999, 2000 or 2001. (AR 65-71.) Plaintiff thereafter requested relief from the BCNR. (AR 170-173.) After the BCNR denied relief on May 6, 2004 (AR 166), plaintiff filed his initial complaint in this Court. (Compl., Oct. 24, 2005.)

## II.    POST-LITIGATION ADMINISTRATIVE PROCEEDINGS

Since plaintiff filed his initial complaint, there have been additional administrative proceedings before both the Remedial Selection Board and the BCNR. Only the Remedial Selection Board's most recent decision, issued on May 8, 2008,[5] and the BCNR's May 18, 2010 decision denying plaintiff's application for relief from that decision are material to plaintiff's

---

[5]Between 2005, when plaintiff filed his initial complaint, and the May 8, 2010 Remedial Selection Board decision, the case was remanded for further administrative proceedings several times. (*See* Order, Apr. 16, 2006 [dkt. #16] (ordering remand at defendant's request "so that the BCNR can, if necessary, obtain a new advisory opinion from the Head of Enlisted Promotions Branch, United States Marine Corps" or "convene a new ERSB" or "undertake any other appropriate action"); Order, Apr. 15, 2008 [dkt. #33] (granting plaintiff's consent motion to remand "with instructions to refer [plaintiff's] record to the Enlisted Remedial Selection Board ("ERSB") for reconsideration with respect to CY 1999, CY 2000, and CY 2001 Master Sergeant regular selection boards, with particular reference to the board size requirement prescribed in Marine Corps Order 5420.16C").

Fourth Amended Complaint[6] and the pending motions.

## A.    May 8, 2008 Decision of the Enlisted Remedial Selection Board

On May 5, 2008, the Commandant issued a precept convening the Remedial Selection Board for May 8, 2008 (AR 1062-64), and on May 8, 2008, the Remedial Selection Board convened to consider 13 Marines of differing ranks, including plaintiff, who had been identified as "eligible . . . for remedial consideration for promotion" (AR 1052-53, 1058-59) and to decide whether to recommend each "for promotion to the next higher grade." (AR 1053.) Of the Marines under consideration, plaintiff was the only one being considered for remedial promotion as of calendar year 1999, 2000 or 2001.

Three documents were to guide the May 8, 2008 Remedial Selection Board's decision-making process: (1) Marine Corps Order ("MCO") 5420.16C (AR 347); (2) the "Precept Convening the CY 1999 Sergeant Major Through Master Sergeant Selection Board" (AR 1066-76 ["1999 Precept"]); and (3) the May 5, 2008 "Precept Convening the Enlisted Remedial Selection Board" for May 8, 2008 (AR 1062-64 ["2008 Remedial Precept"]).

**(1) Marine Corps Order 5420.16C**:  Marine Corps Order 5420.16C provides "information, guidance and [] assign[s] responsibilities concerning the operation and functioning of the Enlisted Remedial Selection Board." (AR 341.) "[T]he guidance and procedures contained [therein] or specifically referenced . . . are considered the sole guidance and procedures governing the ERSB." (AR 342.) "Specific Guidance Concerning Remedial

---

[6]As a result of these additional administrative proceedings, plaintiff has had to amend his complaint multiple times (*See* Amended Complaint, Jan. 23, 2008 [dkt. #23]; Third Amended and Supplemental Complaint, Jan. 12, 2010 [dkt. #40]; Fourth Amended Complaint, June 18, 2010 [dkt. #58].)

Promotions" is set forth in subsection (1)(b), which, in relevant part, states the following:

> (1)     The ERSB will consider the cases of enlisted Marines both Regular and Reserve, who, for any reason other than ineligibility, did not receive consideration or were not properly considered, when they were eligible for consideration by a regularly convened Headquarters, U.S. Marine Corps Staff Noncommissioned Officer Selection Board.
>
> . . .
>
> (3)     When considering whether or not to recommend selection of Marines whose records have been submitted to the board, *the ERSB will be guided by the precept, procedural rules, policies, and regulations in effect when the respective regularly scheduled promotion selection board was in session*. . . .
>
> (4)     The ERSB is not constrained by the selection allocations in effect at the time of the regularly scheduled board for which Marines have been granted remedial promotion consideration.  *The primary consideration of the ERSB will be a comparison of the record of the Marine granted remedial consideration to the records of the Marines selected by the regularly scheduled board before which the Marine has been granted remedial consideration.*
>
> . . . .

(AR 346 (emphasis added).)

**(2)  1999 Precept**:  According to MCO 5420.16C, the Remedial Selection Board is to be guided in part by "the precept . . . in effect when the respective regularly scheduled promotion selection board was in session."  (AR 346.)  The 1999 Precept provided, in relevant part, that:

> The function of the selection board is to recommend eligible first sergeants, master sergeants and gunnery sergeants for promotion to the next higher grade. The Marines selected will be SNCOs [Staff Noncommissioned Officers] whom a majority of the members of the board consider best qualified for promotion to meet the needs of the Marine Corps.  *In addition to the foregoing standard of best qualified, all Marines recommended for promotion must be fully qualified.*  Each Marine's qualification and performance of duty must clearly demonstrate that the Marine will be capable of performing the duties normally associated with the next higher grade.

(AR 1067 (emphasis added).)

**(3) 2008 Remedial Precept**: The 2008 Remedial Precept "directed" the Remedial

Selection Board "to comply with the instructions governing the regularly scheduled board,

except as noted."  (AR 1063.)  The material exceptions include the following:

> a.      A remedial selection board is not subject to the limitations of promotion percentage or authorized selection numbers, which are ordinarily applicable to regularly scheduled selection boards.  *The "best and fully qualified" selection standard contained in the references is therefore modified for this remedial board to "fully qualified."*

> b.      The remedial selection board shall consider the official military personnel records of the Marines as their records should have appeared before the regularly scheduled selection board.  *For CY 1999 and earlier selection boards, the record may be compared with the records of those Marines of the same competitive category who were recommended for promotion, using the performance index. . . . .*  For CY 2000 and later selection boards, the record will be compared to the record of the Marines who were considered in the same competitive category, which will be furnished along with the record of the Marine who is considered by the remedial board.  Based on the record and the other information submitted, the board *shall recommend for promotion Marines who are fully qualified for promotion* and capable of assuming the duties of the next higher grade.

(AR 1063 (emphasis added).)  The "Performance Index (PI) rating system was the performance

evaluation system in use during 1999."  (AR 128.)  It "calculates the value of fitness report

marks in a Marine's current grade not to exceed five years.  PI ratings can fall anywhere between

9.00, being the highest, to 6.50, being the lowest."  (AR 128.)

In considering plaintiff for remedial promotion, the Remedial Selection Board had before

it plaintiff's Performance Index rating (8.95), the range of Performance Index ratings for the

Marines considered for promotion to either Master Sergeant or First Sergeant by the 1999

regular Selection Board (all but two of the Marines recommended for promotion had ratings

between 8.80-9.00, as did many Marines not recommended for promotion), but not any particular

Marine's Performance Index rating, plaintiff's Official Military Personnel File,[7] and data from the Marine Corps Total Force System.[8]  The record of proceedings before the May 8, 2008 Remedial Selection Board states that the board members "read the [May 3, 2008] Precept," "considered the cases of all personnel presented for review and complied with all instructions contained in Marine Corps Order 5420.16."  (AR 1053.)  The Remedial Selection Board recommended six Marines for promotion – those Marines who, "in the opinion of a majority of the members . . . represent the optimum in professional achievement in all respects, and are qualified for appointment to the next higher grade."  (AR 1054, 1060.)  Plaintiff, as well as six others, was "not recommended for promotion."  (AR 1061.)  The Record of Proceedings contains no substantive information about the basis for the Remedial Selection Board's decision.

### B.     May 18, 2010 Decision of the BCNR

Following the Remedial Selection Board's May 8, 2008 decision, plaintiff applied to the BCNR, asking it to "correct" his record to show that he was promoted by the 1999 regular Selection Board.  (Def.'s Facts ¶ 28; AR 15-16.)  On May 18, 2010, the BCNR denied relief.[9]

---

[7]A Marine's official file consists of a Marine's official photograph, copies of his service record book, performance evaluations received over his career, enlistment/reenlistment contracts, copies of professional military or civilian education certificates or diplomas, awards/certificates and any derogatory information such as disciplinary or counseling statements for poor performance.  (AR 36-38.)

[8]An individual's Marine Corps Total Force System data includes his physical fitness test scores, rifle and pistol qualification scores, professional military education, personal awards, and special skills or qualifications that a Marine may have earned throughout his career.  (AR 37.)

[9]The time lapse between the May 8, 2008 Remedial Selection Board decision and the May 18, 2010 BCNR decision resulted from consented-to remands to or reconsideration by the BCNR.  For example, plaintiff first petitioned the BCNR on November 5, 2008, via email, requesting that the BCNR direct that he receive a remedial promotion. (AR 15-16.)  On September 24, 2009, the BCNR denied relief.  (AR 9-10.)  However, on February 23, 2010, the Court granted a consent motion to remand to a new BCNR panel.  (Order, Feb. 23, 2010 [dkt.

Prior to its consideration of plaintiff's case, the BCNR sought an advisory opinion from

Headquarters, United States Marine Corps. In an Advisory Opinion issued on March 18, 2010,[10]

Marine Corps Headquarters offered the following to explain the May 8, 2008 Remedial Selection

Board's decision not to recommend plaintiff for promotion:

> 1.  Performance Index (PI) is a statistics rating system used prior to CY 2000
> ERSBs to evaluate Marines selected to the next higher grade in their respective
> Intended Military Occupation Specialty (IMOS).  PI calculates the value of fitness
> report marks in a Marine's current grade not to exceed five years.  PI ratings can
> fall anywhere between 9.00, being the highest, to 6.50, being the lowest.  The
> intent of the PI was to provide board members with a tool to statistically measure
> the performance of Marines being considered for an ERSB in comparison to those
> Marines selected for promotion.  Prior to CY 2000 ERSBs, the only Official
> Military Personnel File (OMPF) the board was privileged to view was the Marine
> being considered.  Therefore, the focus of effort by board members to make a
> decision to promote a Marine to the next higher grade would have been based on
> the Marine's OMPF and leadership experience in their respective roles as senior
> Marines.  Of particular note, Gunnery Sergeant Pettiford's OMPF contains two
> derogatory page 11 counseling entries; one from [December 9, 2005] for failure to
> pay spousal support and one [from October 12, 1984] for unprofessional attitude
> toward his NCOIC.  Additionally, Gunnery Sergeant Pettiford has an adverse
> fitness report in his OMPF for the period [April 4, 1983] through [October 29,
> 1983].  All adverse material must be briefed to the board.
>
> 2.      The term "fully qualified" is not an arithmetic formula.  On regularly
> scheduled [Staff Noncommissioned Officer] Selection Boards, the "best and fully
> qualified" are selected for promotion due to Marines competing for a limited
> amount of allocations.  . . . *Because Marines do not compete for allocations on*

---

#47] (remanding because when the BCNR rendered its 2009 decision, it "mistakenly understood
that the Enlisted Remedial Selection Board had before it comparison Official Military Personnel
Files of other Marines in [plaintiff's] competitive category who had been considered for
promotion to E-8 by the 1999 regular selection board").  On April 9, 2010 a new three-member
panel of the BCNR denied relief (AR 1086-1087), but because those proceedings "were not
conducted in accordance with applicable regulations" this Court extended its remand to allow a
different panel of the BCNR to consider the case.  (*See* Minute Order, Apr. 23, 2010 [dkt. #48].)

[10]Marine Corps Headquarters issued its first advisory opinion on May 8, 2009 (AR 11),
which the BCNR relied on in denying relief on September 24, 2009.  (AR 09-10.)  However, as
noted above (*see supra* n.9), the matter was subsequently remanded for reconsideration.

*the ERSB, there is no limitation to select only to the number of allocations. Therefore, the criteria is "fully qualified."* The Marine must be deemed fully qualified in the opinion of the majority of the board members. *If the majority opinion of the board deems the Marine fully qualified when compared against his peers, the Marine would be selected for promotion. . . .* The ERSB, like a regularly scheduled Staff Noncommissioned Officer (SNCO) Selection Board follows the guidance and authority of the precept. Under oath and guidance from the precept, ERSB members have the authority to use some form of discretion and interpretation when it discussed cases being considered.

3.      When Gunnery Sergeant Pettiford received remedial consideration for the CY 1999 . . . Selection Board, his PI value was 8.95. . . .

. . .

5.      [For the First Sergeant regular selection board,] [t]here were 1002 Marines with a Performance Index (PI) rating between [8.80 and 9.00] . . . . Of those Marines, only 179 . . . were selected for promotion. Therefore, 830 Marines eligible for promotion with a PI rating between [9.00 and 8.80] were not selected for promotion. . . . *Gunnery Sergeant Pettiford, along with 830 Marines with a similar PI, was simply not as competitive as those selected for first sergeant.*

. . .

7.      Sixty-two Marines were considered by the CY 1999 Master Sergeant regular promotion board [within plaintiff's specialty]. Of those Marines, thirty-four possessed PI ratings between [9.00-8.80], . . . . 20 of the thirty-four Marines with a PI rating between [9.00-8.80] were selected for promotion. Therefore, 14 Marines with a PI rating between [9.00-8.80], including [plaintiff] were not selected. . . . *Gunnery Sergeant Pettiford, along with 14 other Marines, were simply not as competitive as those selected.*

8.      The circumstances surrounding each Marine's request for remedial consideration are evaluated individually, with consistency and fairness in mind. However, the confidentiality of the selection board process precludes knowing the exact reasons why Gunnery Sergeant Pettiford was not selected. *It can only be inferred that based upon a majority vote of the board members, his record was not competitive with the records of the Marines selected for promotion. Based upon the foregoing, it is the recommendation of this office that Gunnery Sergeant Pettiford's rank remain unchanged.*

(AR 1088-1090 (emphasis added).)

Plaintiff filed a "Response to the Advisory Opinion" with the BCNR on April 1, 2010.

Therein, he argued that the Advisory Opinion "does not justify the denial of [his] request that his record be corrected to show that he was promoted by the 1999 regular selection board" (AR 1100) because (1) his 8.95 Performance Index necessarily puts him above other Marines who were selected; (2) the Remedial Selection Board erred by considering plaintiff's OMPF but not any other Marine's OMPF; and (3) the cherry-picked OMPF entries cited in the advisory opinion were stale by 1999 and did not preclude [plaintiff's] selection. (4th Compl. ¶¶ 38-39) Plaintiff also submitted to the BCNR a number of statements from Marine Corps supervisors recommending his promotion, copies of which had been submitted when the case was before the Remedial Selection Board. (4th Compl. ¶ 39.)

On May 18, 2010, relying entirely on the Advisory Opinion and without expressly addressing any of plaintiff's arguments, the BCNR denied plaintiff's petition for relief. Following the BCNR's decision, plaintiff filed his Fourth Amended Complaint. Plaintiff asks the Court to: (1) set aside the May 2008 decision of the Remedial Selection Board and the May 2010 decision of the BCNR; (2) direct the Secretary to correct plaintiff's record to show that he was promoted to pay grade E-8 by the calendar year 1999 regular Selection Board or, in the alternative (and without prejudice to that relief), remand the case for further proceedings before the Remedial Selection Board and, if need be, the BCNR on plaintiff's request that his record be so corrected; and (3) grant such other and further relief as may in the circumstances be just and proper. Defendant has moved to dismiss or, in the alternative, for summary judgment. Plaintiff has moved for summary judgment.

## DISCUSSION

Plaintiff's Fourth Amended Complaint claims that the BCNR's May 18, 2010 decision is

arbitrary and capricious and contrary to law because it addressed neither the nonfrivolous arguments advanced in plaintiff's response to the advisory opinion nor the supporting statements he submitted (4th Compl. ¶ 46) and that the Remedial Selection Board's May 8, 2008 decision along with the BCNR's decision are arbitrary and capricious "for the reasons set forth in [plaintiff's] response to the advisory opinion." (4th Compl. ¶ 47). Defendant has moved to dismiss or, in the alternative, for summary judgment on the ground that plaintiff's claim for retroactive promotion is not justiciable and the BCNR's decision is not arbitrary and capricious.

## I.    LEGAL STANDARD

A final decision of the BCNR is subject to judicial review under § 706 of the Administrative Procedure Act, 5 U.S.C. § 706. *See Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997). Under the APA, a reviewing court must "defer" to an agency's decision unless it "is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Id.*; *see Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). Generally, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.' " *MD Pharm. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir.1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). "[A]n agency's decision [need not] be a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995); *Frizelle*, 111 F.3d at 176. Rather, "[a] reviewing court will uphold a decision of less than ideal clarity if the

agency's path may reasonably be discerned" *Dickson*, 68 F.3d at 1404; *Frizelle*, 111 F.3d at 176.

Reviewing the decision of a military correction board requires an "unusually deferential application of the arbitrary or capricious standard" given the language of 10 U.S.C. § 1552(a). *Kreis*, 866 F.2d at 1514; *see Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002); *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). As the Court of Appeals explained in *Kreis*:

> In practice, however, the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law, constrains agency action. While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act "*when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, i.e., that there has been an error or injustice..

*Kreis*, 866 F.2d at 1514. Thus, a court's role in reviewing the decision of a military corrections board is to determine whether "the decision making process was deficient, not whether [the] decision was correct." *Dickson*, 68 F.3d at 1405-06 (quoting *Kreis*, 866 F.2d at 1511). To enable a court to perform that review and ensure that the decision is not "utterly unreviewable," a military corrections board "must give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." *Kreis*, 866 F.2d at 1514-15. Thus, if a military board of corrections "fail[s] to address . . . . arguments that are not facially frivolous," its decision must be reversed and the matter remanded. *Frizelle*, 111 F.3d at 175, 177; *Dickson*, 68 F.3d at 1404 ("fail[ure] to provide anything approaching a reasoned explanation" rendered military correction board's decision "arbitrary and capricious"); *see also*

*Calloway v. Brownlee*, 366 F. Supp.2d 43, 53 (D.D.C. 2005) ("[A]n agency action is arbitrary and capricious if the agency ... has entirely failed to consider an important aspect of the case presented.").

## II.     JUSTICIABILITY

Defendant has moved to dismiss plaintiff's complaint as nonjusticiable on the ground that "the determination as to whether [plaintiff] should be promoted to the rank of Master Sergeant is decidedly a military personnel decision." (Def.'s Mem. in Support of Supp. Mot. to Dismiss or Summ. J. at 10, July 2, 2010 ["Def.'s Mem."][11].) To the extent plaintiff seeks retroactive promotion directly from this Court, defendant is correct. It has long been established that "a request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions." *Kreis*, 866 F.2d at 1511; *see, e.g.*, *Millican v. United States*, 744 F. Supp.2d 296, 305 (D.D.C. 2010) (no jurisdiction over claim for retroactive promotion).[12]

However, plaintiff's complaint also challenges the BCNR's decision making process. As the Court of Appeals held in *Kreis*, a claim for the correction of military records, even where plaintiff's "efforts are aimed ultimately at securing his promotion," is justiciable because such a claim "required the district court merely to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to [plaintiff's] record," and that "adjudication of [plaintiff's] claims would

---

[11]Defendant's Memorandum in Support of its Supplemental Motion to Dismiss consolidated all of defendants' arguments into a single brief.

[12]"The Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Kreis*, 866 F.2d at 1511 (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)).

require[d] the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." 866 F.2d at 1511. Indeed, defendant acknowledges that "[t]his Court would have authority to set aside the Corrections Board and Remedial Selection Board decisions as procedurally improper." (Def.'s Mem. at 13.)

Accordingly, defendant's motion to dismiss will be granted in part and the Court will dismiss plaintiff's claim to the extent he asks this Court to order the Secretary of the Navy to retroactively promote him.

## III.      THE BCNR'S MAY 18, 2010 DECISION IS ARBITRARY AND CAPRICIOUS

Plaintiff contends first that the May 8, 2008 Remedial Selection Board decision and the May 18, 2010 BCNR decision are arbitrary and capricious for the reasons set forth in plaintiff's response to the Advisory Opinion or, in the alternative, that the BCNR decision is arbitrary and capricious because it failed to address those arguments or the supporting statements plaintiff submitted along with his response to the Advisory Opinion. The Court will consider the latter contention first because only if the BCNR addressed plaintiff's arguments, either expressly or because the Court is able to "discern" its analysis from the record before it, can the Court evaluate whether its decision-making process was otherwise deficient. If the BCNR failed to address plaintiff's nonfrivolous arguments, the appropriate remedy would be a remand to the BCNR for it to do so in the first instance.

As described above, in considering plaintiff for remedial promotion, the Remedial Selection Board had before it plaintiff's Performance Index rating (8.95), the range of PI ratings for the Marines considered for promotion to either Master Sergeant or First Sergeant by the 1999 regular Selection Board (all but two of the Marines recommended for promotion had ratings

16

between 8.80-9.00, as did many Marines not recommended for promotion), plaintiff's Official

Military Personnel File, and data from the Marine Corps Total Force System. Plaintiff argues

that because MCO 5420.16C requires that the "primary consideration of the ERSB will be a

comparison of the record of the Marine granted remedial consideration to the records of the

Marines selected by the regularly scheduled board before which the Marine has been granted

remedial consideration" (AR 346), the process employed by the May 8, 2008 Remedial Selection

Board was flawed. Specifically, plaintiff criticizes the Board's process on the grounds that (1)

the only basis for comparison used by the Remedial Selection Board was the PI rating, but

plaintiff's 8.95 rating put him above at least some, and perhaps most of the Marines who were

promoted by the regularly scheduled 1999 Selection Board; (2) the Remedial Selection Board

had before it and obviously relied on information in plaintiff's Official Military Personnel File

without comparing it to the Official Military Personnel Files of any selected Marines; and (3) the

negative information in plaintiff's official file that the Advisory Opinion speculated might have

been the basis for the Remedial Selection Board's decision was too old and stale to justify that

outcome.

Defendant suggests that plaintiff's argument is meritless because it is "obvious that the

[2008 Remedial] precept *required* the Remedial Selection Board for 1999 to compare Plaintiff's

Official File to the Performance Index of other Marines selected for promotion." (Def.'s Mem.

at 21.)[13] Plaintiff counters that the 2008 Remedial Precept "must be read in light of" MCO

---

[13]Defendant also suggests that even if the Remedial Selection Board's method of
comparison was "unfair," plaintiff cannot show he was prejudiced because he was not remedially
promoted for either 2000 or 2001, when the Remedial Selection Board compared his OMPF to
the OMPF's of Marines who had been promoted. (Def.'s Mem. at 22.) However, because each
year's comparison must be a distinct inquiry, this argument is not persuasive. (AR 346

5420.16C's direction that the "primary consideration . . . be a comparison of the Marine granted remedial consideration to the records of the Marines selected by the regularly schedule board." (Pl.'s Opp'n to Mot. to Dismiss and Mem. in Support of Mot. for Summ. J. at 11, June 7, 2010 ["Pl.'s Mem."] (quoting AR 346).) Thus, plaintiff argues, the statement that "[f]or CY 1999 and earlier selection boards, the record may be compared with the records of those Marines of the same competitive category who were recommended for promotion, using the performance index" (AR 1063) is properly read to "make[] the PI a surrogate for the Marine's OMPF," not to authorize, much less require, "that the OMPF of the Marine being considered for remedial promotion would be subjected to review with a fine-tooth comb while those with whom he or she was being compared would be judged based just on their PI." (Pl.'s Mem. at 12.) Plaintiff also argues that defendant's interpretation of the 2008 Remedial precept is flawed because it would be simply illogical to try and "compare" a single Marine's OMPF with other Marines' PI ratings, given that the OMPF is a comprehensive file based on a Marine's entire career while the PI rating is statistical rating based on a Marine's fitness reports for the preceding five years.

Plaintiff made its argument to the BCNR (*see* Pl.'s Response to Advisory Opinion), but the BCNR never addressed it. *See, e.g., Dickson*, 68 F.3d at 1404 ("agency's explanation must minimally contain 'a rational connection between the facts found and the choice made" (internal quotations omitted)); *Kreis*, 866 F.2d at 1514 (Secretary "must give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA.") And although "[a] reviewing court will uphold a decision of less than ideal clarity if the

---

(Remedial Selection Board must compare "the record of the Marine granted remedial consideration to the records of the Marines selected by the regularly scheduled board before which the Marine has been granted remedial consideration").)

agency's path may reasonably be discerned," *Dickson*, 68 F.3d at 1404, the Court is unable to

"discern" the BCNR's rationale from the record before it.  The Advisory Opinion, upon which

the BCNR's decision entirely relies, establishes that the Remedial Selection Board had before it

plaintiff's PI rating, the range of PI ratings for the Marines promoted and not promoted by the

regular Selection Board, and plaintiff's OMPF.  It also establishes that plaintiff's PI rating was

8.95, that plaintiff's PI rating fell in the same top range as most of the Marines promoted by the

regular Selection Board and, in all likelihood was higher than some; and that a number of

Marines with PI rating's in that same range were not promoted.  However, the Advisory Opinion

fails to address in any way plaintiff's argument that to allow the Remedial Selection Board to see

plaintiff's OMPF but no others was inconsistent with MCO 5420.16C's instruction that the

primary consideration of the Remedial Selection Board should be the comparison of the referred

Marine to the Marines who were selected for promotion by a regularly scheduled Selection

Board.  And, it fails to indicate that there is any legal impediment to allowing the Remedial

Selection Board to see other Marine's OMPF's.  And nor does it explain how with only PI

rating's as a basis for comparison, the Remedial Selection Board could have concluded, as the

Advisory Opinion states, that "was simply not as competitive as those [Marines] selected [by the

1999 regular Selection Board]."  (AR 1090.)

 In any event, because the Court is reviewing the "decision making process" of the

BCNR, not whether its decision was "correct," *see Dickson*, 68 F.3d at 1405 (quoting *Kreis*, 866

F.2d at 1511), it cannot "substitute its judgment for that of the agency" or "'supply a reasoned

basis for the agency's decisions that the agency itself has not offered.'"  *Calloway*, 366 F.

Supp.2d at 53-54 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).  Rather, the BCNR's

failure to address a non-frivolous argument raised by plaintiff that could affect the BCNR's ultimate disposition renders the BCNR's decision arbitrary and requires a remand so that the BCNR can consider and respond to the argument. *See Frizelle*, 111 F.3d at 177 (remanding to Coast Guard Board for Correction of Military Records because "Board did not respond to two of [plaintiff's] arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition"); *Dickson*, 68 F.3d at 1406 (remanding to Army Board for Correction of Military Records because "boilerplate language used by the Board ma[de] it impossible to discern the Board's path"); *Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C. 2008) (remanding to Army Board for Correction of Military Records because plaintiff's argument was "non-frivolous and potentially meritorious and the [Board] failed to address it"); *Roberts v. Harvey*, 441 F. Supp.2d 111, 121 (D.D.C. 2006) (remanding to Army Board for Correction of Military Records for failure to address argument); *Calloway*, 366 F. Supp.2d at 55 (remanding to Army Board for Correction of Military Records for failure to address nonfrivolous arguments). As the Court in *Dickson* noted: a court "cannot determine whether the decision making process was deficient until [it is] allowed to understand what that process was." 68 F.3d at 1406.

The BCNR's failure to address plaintiff's argument renders its decision arbitrary. Accordingly, the Court will remand this matter to the BCNR for further consideration. On remand, the BCNR is free to reject plaintiff's argument, but "it must expressly indicate that it has done so" and "explain its rationale." *Calloway*, 366 F. Supp.2d at 55 (internal quotations omitted); *see also Calloway v. Harvey*, 590 F. Supp.2d 29, 40 (D.D.C. 2008) (military board did not act arbitrarily in denying relief after remand to address plaintiff's nonfrivolous arguments).

**CONCLUSION**

For the reasons stated above, plaintiff's claim for remedial promotion will be dismissed; the May 18, 2010 decision of the BCNR will be set aside, and the case will be remanded to the BCNR for further proceedings in accordance with this opinion.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge


DATE: March 31, 2011